1  | Michael E. Stone, Esq. SBN: 46016
   | Leo B. Siegel, State Bar No. 116841
2  | LAW OFFICE OF MICHAEL E. STONE
   | 3425 S. Bascom Avenue, Suite I
3  | Campbell, California 95008
   | 408/377-9899 Telephone
4  | 408/377-5270 Facsimile
   | Email: mikeestone@yahoo.com
5  |         K9esq@flash.net

**ORIGINAL
FILED**

AUG  1 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6  | Attorneys for Plaintiffs, BRENDA HICKMAN
   | and BETTY HENRY

7

8  |         IN THE UNITED STATES DISTRICT COURT

9  |         FOR THE NORTHERN DISTRICT OF CALIFORNIA                     **SC**

10 |              SAN FRANCISCO DIVISION

11 |              **CV   08          3686**

12 | BRENDA HICKMAN and BETTY HENRY,          CASE NO.

13 |              Plaintiffs,                  COMPLAINT FOR
   |                                           DAMAGES, INJUNCTIVE
14 |         vs.                               RELIEF, ACCOUNTING, AND
   |                                           DECLARATORY RELIEF
15 | TRUST DEED INVESTMENTS, INC.,
   | a California corporation; PHILIP B. GOLDSTEIN;     JURY TRIAL DEMANDED
16 | THE HASKELL PROPERTIES; NIKOS
   | GLIMIDAKIS; PENSCO TRUST COMPANY,
17 | CUSTODIAN FBO JERRY ANGEL IRA;
   | PENSCO TRUST COMPANY, CUSTODIAN
18 | FBO BARBARA SULLICAN IRA; STERLING
   | TRUST COMPANY, CUSTODIAN FBO
19 | GLEN SHAPIRO, ACCOUNT #095011; BARRY
   | BERKOWITZ; DAVID N. RICHMAN M.D.
20 | 401-K PROFIT SHARING PLAN; JOHN
   | DELLAR AND JOBYNA DELLAR
21 | REVOCABLE TRUST; ROSLYN COHN;
   | PATTI ENGLANDER; THE GILL 1995
22 | TRUST; PATTI ENGLANDER; STERLING
   | TRUST COMPANY, CUSTODIAN FBO
23 | VICKI W. SHAPIRO, ACCOUNT #095114;
   | THE GILL 1995 TRUST, and DOES 1-20,
24 | inclusive,

25 |         Defendants.
   | _____/

26

27 | /////

28 | /////

Plaintiffs BRENDA HICKMAN and BETTY HENRY allege:

### JURISDICTION AND VENUE

1. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. section 1331, in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. section 1367 to hear and determine Plaintiffs' state law claims because those claims are related to Plaintiffs' federal claims and arise out of a common nucleus of related facts and form part of the same case or controversy under Article III of the United States Constitution.

2. The Court has jurisdiction over Plaintiffs' claim for declaratory relief pursuant to 28 U.S.C. section 2201 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by 28 U.S.C. section 2203 and rule 65 of the Federal Rules of Civil Procedure.

3. Venue is proper in the Northern District of California pursuant to 28 U.S.C. section 1391(b)(2), in that the unlawful conduct that gave rise to these claims occurred within the Northern District of California.

### INTRADISTRICT ASSIGNMENT

4. Intradistrict assignment in the San Francisco division of this Court is proper because the unlawful conduct that gives rise to the alleged claims occurred in San Francisco County, and particularly because the real property that secures the loan transaction that is the subject of this action is situated in San Francisco County, California.

### PRELIMINARY ALLEGATIONS

5. Plaintiffs are informed and believe and thereon allege that Defendant, TRUST DEED INVESTMENTS, INC. (hereinafter "TDI"), is now, and at all times herein mentioned was, a California corporation, doing business in San Francisco County California as a mortgage brokerage, mortgage banker, and a licensed California Finance Lender..

6. Defendant, PHILIP B. GOLDSTEIN (hereinafter "GOLDSTEIN"), is now, and at all times herein mentioned was, licensed in the State of California as a Real Estate Broker. Defendant GOLDSTEIN is now, and at all times herein mentioned was, the President of Defendant TDI, and is Defendant TDI'S Designated Officer in the records of the California Department of Real Estate.

COMPLAINT FOR DAMAGES FOR FAILURE TO MAKE REQUIRED DISCLOSURES

7. Defendant THE HASKELL PROPERTIES (hereinafter "HASKELL"), is now, and at all times herein mentioned was, licensed in the State of California as a mortgage brokerage, and did business in San Francisco County.

8. Plaintiffs are informed and believe and thereon allege that Defendant NIKOS GLIMIDAKIS is now, and at all times herein mentioned was, licensed with the State of California as a Real Estate Sales Person, with his licensed supervised by Defendant HASKELL at the time of the loan transaction that is the subject of this action. .

9. Plaintiffs are informed and believe and thereon allege that Defendant PENSCO TRUST COMPANY was, and is, a corporation doing business in the State of California. Plaintiffs are further informed and believe and thereon allege that Defendant STERLING TRUST COMPANY was, and is, a corporation doing business in the State of California. Plaintiffs are further informed and believe and thereon allege that Defendant DAVID N. RICHMAN M.D. 401-K PROFIT SHARING PLAN is, and was, a profit sharing plan doing business in the State of California; Plaintiffs are further informed and believe and thereon allege that Defendant JOHN DELLAR AND JOBYNA DELLAR REVOCABLE TRUST was, and is, a trust doing business in the State of California; Plaintiffs are further informed and believe and thereon allege that Defendant THE GILL 1995 TRUST was, and is, a trust doing business in the State of California; Plaintiffs are further informed and believe and thereon allege that Defendants BARRY BERKOWITZ, ROSLYN COHN, and PATTI ENGLANDER were, and are, individuals doing business in the State of California.

10. This action concerns a loan transaction between Plaintiffs and Defendant TDI, which Defendant assigned the beneficial interest under a certain Construction Deed of Trust securing the loan to the following Defendants, to wit: (1) Pensco Trust Company, Custodian FBO Jerry Angel IRA, as to an undivided 53,000.00/800,000.00ths interest; (2) Pensco Trust Company, Custodian FBO Barbara Sullican IRA, as to an undivided 120,000.00/800,000.00ths interest; (3) Sterling Trust Company, Custodian FBO Glen Shapiro, Account #095011; (4) Barry Berkowitz, as to an undivided 55,381.35/800,000.00ths interest; (5) David N. Richman M.D. 401-K Profit Sharing Plan, as to an undivided 30,000.00/800,000.00ths interest; (6) David N. Richman M.D. 401-K Profit Sharing Plan, as to an undivided 31,995.75/800,000.00ths interest; (7) John Dellar and Jobyna Dellar Revocable

COMPLAINT FOR DAMAGES FOR FAILURE TO MAKE REQUIRED DISCLOSURES

1 Trust, as to an undivided 30,000.00/800,000.00ths interest; (8) Roslyn Cohn, as to an undivided

2 50,000.00/800,000.00ths interest, (9) Patti Englander, as to an undivided 55,791.44/800,000.00ths

3 interest; (10) The Gill Trust , as to an undivided 15,189.90/800,000.00ths interest; (11) Patti

4 Englander, as to an undivided 64,065.00/800,000.00ths interest; (12) Sterling Trust Company,

5 Custodian FBO Vicki W. Shapiro, Account #095114, as to an undivided 17,990.84/800,000.00ths

6 interest; and (13) The Gill Trust, as to an undivided 15,189.90/800,000.00ths interest.  These

7 Defendants are hereinafter collectively referred to as "TDI Defendants."

8      11.  Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as

9 DOES 1-20, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will

10 amend this complaint to allege their true names and capacities when ascertained.  Plaintiffs are

11 informed and believe and thereon allege that each of the fictitiously named Defendants is responsible

12 in some manner for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were

13 proximately caused by their conduct.

14      12.  Plaintiffs are informed and believe, and thereon allege that at all times material hereto,

15 each Defendant named herein, including those fictitiously designated as a DOE, was acting as the

16 agent, servant or employee of each other Defendant, and in doing the acts hereinafter alleged, was

17 acting within the course and scope of said agency, employment  or representation, with the

18 knowledge, consent, authorization and approval of the other Defendants.  To the extent any of the

19 actions of said agents, servants, or employees was not expressly authorized, said actions were ratified

20 and approved by the other Defendants.

21      13.  At all times herein mentioned, particularly on January 25, 2007, and until the present date,

22 Plaintiffs were the owners of that certain real property located in San Francisco County, California,

23 commonly known as 473 Hill Street, San Francisco, CA 94114 (hereinafter "the Property").  The

24 Property is more particularly described as:

25    BEGINNING at a point on the Southerly line of Hill Street, distant thereon 110 feet
       Easterly from the Easterly line of Noe Street; running thence Easterly along the
26    Southerly line of Hill Street 25 feet; thence at a right angle Southerly 114 feet; thence
       at a right angle Westerly 25 feet; and thence at a right angle Northerly 114 feet to the
27    Southerly line of Hill Street and the point of beginning.

28    BEING a portion of Mission Block No. 109.

4

COMPLAINT FOR DAMAGES FOR FAILURE TO MAKE REQUIRED DISCLOSURES

1    APN: Lot 038, Block 3621

2       14. The Property has been the principal residence of Plaintiff BETTY HENRY since 1943.

3   Mrs. Henry is now an 89 year old widow, and raised her family in the Property.

4       15. In or about 2004, because Mrs. Henry had been unable to adequately maintain the

5   property, the City and County of San Francisco declared it as "unsafe" and a "public nuisance" and

6   ordered Mrs. Henry to abate the nuisance by making repairs.

7       16. On or about November 17, 2005, Mrs. Henry's daughter, Plaintiff BRENDA HICKMAN

8   helped her mother obtain a $325,000 loan for the purpose of repairing and remodeling Mrs. Henry's

9   residence. At the request of the lender (or loan agent), Plaintiff HICKMAN was added to the title of

10  the Property in November of 2005, and co-signed the note and deed of trust. That loan, however, was

11  for a short term period and turned out to be insufficient to provide enough funds to accomplish the

12  purpose of completing the repairs and remodeling.

13      17. In January of 2007, Plaintiffs sought to refinance the 2005 loan and to obtain sufficient

14  funds to complete the repairs and remodeling of the Property. They contacted Defendant NIKOS

15  GLIMIDAKIS for that purpose and he introduced them to Defendant PHILIP GOLDSTEIN, President

16  of Defendant TRUST DEED INVESTMENTS, INC. (hereinafter "TDI").

17      18. At all times mentioned herein, the Defendants were made aware and had knowledge of

18  the fact that the intended purpose of the loan Plaintiffs were seeking was to complete the repairs and

19  remodeling of Plaintiff HENRY'S home so that she could continue to occupy it as her principal

20  residence.

21      19. Nevertheless, when Defendants wrote up the loan documentation, for reasons not

22  understood by Plaintiffs, Defendants GOLDSTEIN and TDI designated only Plaintiff HICKMAN as

23  "the borrower" and wrote in that the purpose of the loan was "for investment." Defendant

24  GOLDSTEIN explained that those representations and designations in the loan documents were to

25  help Plaintiffs "qualify" for the necessary loan amount, but Plaintiff HENRY was still to put up her

26  ownership interest in her principal dwelling as security for the loan.

27      20. On or about January 25, 2007, Plaintiffs did sign the loan documents and Defendant TDI

28  purported to make an $800,000 loan to Plaintiff HICKMAN (hereinafter "the Loan Transaction").

COMPLAINT FOR DAMAGES FOR FAILURE TO MAKE REQUIRED DISCLOSURES

1    However, on that date only $421,439.39 was actually loaned to Plaintiffs, paying off the $329,894.97

2    on their prior loan, $887.29 on the property taxes, and $90,659.13 to their contractor doing the repairs

3    and remodeling at that time.

4        21. Defendants GOLDSTEIN and TDI purported to have also funded, as part of the loan, the

5    sum of $118,000 to be held in a trust account for "interest reserve," and the sum of $175,286.51,

6    which was also to be held in a trust account and to be used as construction funds to complete repairs

7    and remodeling of the Property. Plaintiffs have since been informed, and on that information and

8    belief allege, those reserve monies were not funded and deposited into a trust account in January of

9    2007 as represented.

10       22. From January 25, 2007 to November 19, 2007, Defendants did make construction

11    disbursements totaling $76,628.50. No further monies have been paid to or for construction by

12    Defendants.

13       23. The balance of the $800,000 principal amount consisted of some $85,274.10 in finance

14    charges Defendants imposed on Plaintiffs, $40,000 of which was a loan commission to Defendant

15    NIKOS GLIMIDAKIS and his broker Defendant THE HASKELL PROPERTIES, and $40,000 of

16    which was a commission to Defendants GOLDSTEIN and TDI. On the $800,000 total, if Plaintiffs

17    had ever received it, those finance charges would be equal to 10.6% of the principal; but on the actual

18    principal paid to or for the benefit of Plaintiffs, the total being $498,067.28, said finance charges were

19    even more excessive, being 17.1% of the principal.

20       24. A true and correct copy of the Note Secured By Deed Of Trust (hereinafter "the Note")

21    that Plaintiff HICKMAN executed for the Loan Transaction is attached to this complaint as **Exhibit**

22    **"A,"** and made a part of this complaint by reference. The Loan Transaction further included a certain

23    Construction Loan Agreement dated on or about January 22, 2007 (hereinafter "the Agreement").

24    A true and correct copy of the Agreement is attached to this complaint as **Exhibit "B,"** and

25    incorporated herein by that reference.

26       25. The Note referred to above was secured by an instrument entitled Construction Deed of

27    Trust dated on or about January 22, 2007, which was recorded against title to the Property on January

28    25, 2007, as Instrument No. 2007-1326314-00, in the Official Records of San Francisco County,

COMPLAINT FOR DAMAGES FOR FAILURE TO MAKE REQUIRED DISCLOSURES

1  California. A true and correct copy of the Construction Deed of Trust for the Loan Transaction is

2  attached to this complaint as **Exhibit "C,"** and incorporated herein by that reference.

3      26. Attached hereto by reference as **Exhibit "D"** and made a part hereto by reference is a true

4  copy of the escrow closing statement for the Loan Transaction that was provided to Plaintiffs on or

5  about January 25, 2007.

6      27. In late 2007, Plaintiffs were having construction difficulties with their then contractor and

7  by early 2008 had terminated his services.

8      28. In April of 2008, Plaintiffs requested an accounting of the reserve funds purportedly held

9  by Defendants GOLDSTEIN and TDI. On or about May 20, 2008, they were given a wholly

10 inaccurate and incomplete "accounting," a copy of which is attached to this complaint as **Exhibit**

11 **"E,"** and incorporated herein by that reference.

12     29. After Plaintiffs objected to the sufficiency and accuracy of that "accounting," on or about

13 May 28, 2008, Defendant TDI provided another "accounting" to them, a true copy of which is

14 attached to this complaint as **Exhibit "F,"** and incorporated herein by that reference. Even that

15 "accounting" was incomplete and inaccurate, and neither informed Plaintiffs of what the balance was

16 in the reserve trust, nor the total amount of actual indebtedness on the loan.

17     30. On or about April 9, 2008, without giving Plaintiffs the 10-day prior notice required by

18 the terms of the Note for non-monetary defaults, Defendants GOLDSTEIN and TDI instituted

19 nonjudicial foreclosure proceedings and recorded a Notice of Default against the subject property.

20 A true copy of the Notice of Default is attached to this complaint as **Exhibit "G,"** and incorporated

21 herein by that reference.

22     31. Pursuant to the terms of the Notice of Default, as well as the State of California's

23 statutory foreclosure scheme, Plaintiffs were given three (3) months to cure the declared default,

24 which was stated to be the cessation of labor on the repairs and remodeling that resulted from the

25 contractor difficulties alleged above..

26     32. During the three month period after Defendants GOLDSTEIN and TDI caused the Notice

27 of Default to be recorded, Plaintiffs cured the stated "default" by engaging a new contractor, causing

28 the construction labor to be recommenced, and the deficient construction of the prior contractor

COMPLAINT FOR DAMAGES FOR FAILURE TO MAKE REQUIRED DISCLOSURES

1  repaired or replaced. Plaintiffs gave Defendants written notice of them having cured the stated default

2  during that three month period.

3      33. Despite Plaintiffs having cured the nonmonetary default claimed in the Notice of Default,

4  on or about July 11, 2008, Defendants Goldstein and TDI nevertheless, caused a Notice of Trustee's

5  Sale to be recorded and published, setting a foreclosure sale of the subject property for Tuesday,

6  August 5, 2008 at 2:00 p.m. at the Van Ness Ave. entrance to San Francisco City Hall. A true copy

7  of said Notice is attached hereto as **Exhibit "H"** to this complaint and incorporated herein by that

8  reference.

9      34. On July 14, 2008, Plaintiffs through their counsel, gave written notice to Defendants

10  GOLDSTEIN and TDI that among other problems the subject loan was in violation of the Truth In

11  Lending Act ("TILA"), that Plaintiffs had the statutory right to rescind the loan, and that Plaintiffs

12  did in fact rescind the loan and tendered return to Defendants of the monies received by them in the

13  sum of $498,067.89. A true copy of said written notice is attached to this complaint as **Exhibit "I"**

14  and incorporated herein by that reference. As stated in the notice, the loan documents contained terms

15  that were prohibited by the Truth in Lending Act ("TILA"), such as prepaid interest, default interest,

16  excessive finance charges (more than 8%) and a balloon payment.

17      35. On July 28, 2008, Defendant TDI, through its counsel, gave Plaintiffs notice that

18  it declined the tender and "intends to fully enforce the loan documents." A true copy of that notice

19  is attached to this complaint as **Exhibit "J"** and incorporated herein by that reference.

20  <u>FIRST CLAIM FOR RELIEF</u>

21  (For Damages Against Defendants GOLDSTEIN, TDI and GLIMIDAKIS and HASKELL

22  for Violations of the Truth in Lending Act)

23      36. Plaintiffs reallege and incorporate herein by reference every allegation set forth in

24  Paragraphs 1-35, inclusive, of this complaint, as if each of those allegations were set forth in full.

25      37. Plaintiffs are informed and believe, and upon such information and belief allege that

26  Defendant TDI is an organization that originates two(2) or more mortgages referred to in 15 U.S.C.

27  §1602(aa) in any 12-month period, and therefore, Defendant TDI is a "creditor" as defined in 15

28  U.S.C. §1602(f) and Federal Reserve Board's Regulation Z, 12 C.F.R. §226.2(17).

COMPLAINT FOR DAMAGES FOR FAILURE TO MAKE REQUIRED DISCLOSURES

38. The Loan Transaction underlying this action is subject to the provisions of the Truth in Lending Act, 14 U.S.C. §1601, *et seq.* ("TILA") and the Federal Reserve Board's Regulation Z, 12 C.F.R. Pt. 226, *et seq.* (hereinafter "Regulation Z"). The Loan Transaction violates the provisions of the Truth in Lending Act, and the applicable provisions of Regulation Z, for the following reasons:

A.    Despite the form of the loan indicated in the documentation, the Loan Transaction was made for the benefit of both Plaintiffs (not just Plaintiff HICKMAN) and not for "investment purposes," but for personal purposes, in that Defendants TDI were aware that the loan proceeds were to be used to make repairs and remodel Plaintiff HENRY'S personal residence, so that she could continue to live in it.

B.    15 U.S.C. §1602(aa) of the Truth in Lending Act provides as follows:

A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan, if —

\*    \*    \*    \*

(B) the total points and fees payable by the consumer at or before the closing will exceed the greater of —

(i) 8 percent of the total loan amount; or

(ii) $400.

C.    The subject loan was not a residential mortgage as defined in TILA, and the total points and fees paid by the Plaintiffs amounted to $85,2474.10, which was approximately 10.6% of the stated principal amount of the loan, and which was 17.1% of the actual principal paid for Plaintiffs' benefit at the close of escrow. Therefore, the total amount of points and fees exceeded the 8% permitted by the provisions of 15 U.S.C. §1602(aa)(B) and Regulation Z §226.32(a)(ii).

D.    15 U.S.C. §1639(d) provides in part that, "[a] mortgage referred to in section 1602(aa) of this title may not provide for an interest rate applicable after default that is higher than the interest that applies before default. . ." The Note in the subject Loan Transaction provides that in the event of a default, the interest rate increases by FIVE percent over the non-default rate of 12%, i.e., to 17%. Thus, the Note violates the

provisions of 15 U.S.C. §1639(d) and Regulation Z §236.32(d).

E.  15 U.S.C. §1639(g) provides in part that, "[a] mortgage referred to in section 1602(aa) of this title may not include terms under which more than 2 periodic payments required under the loan are consolidated and paid in advance from the loan proceeds provided to the consumer." The Loan Transaction provides for a prepaid "interest reserve," of $118,000 and thereby violates 15 U.S.C. §1639(g).

F.  15 U.S.C. §1639(e) provides that a loan with a term of less than 5 years can not have a balloon payment provision.  The subject Note does have a balloon payment provision and a term of less than five years, at paragraph 3.

39.  As a result of the above-described violations of the Federal Truth in Lending Act, pursuant to the provisions of 15 U.S.C. §1640(a) Defendants are liable to Plaintiffs in an amount equal to the sum of the following:

A.  Actual damages, inclusive of finance charges, in the sum of at least $223,000.00, sustained by the Plaintiffs, consisting of the sum of at least the following amounts:

(1) The $85,274.10 finance charges Plaintiffs were assessed at the close of escrow;

(2) The $118,000.00 interest prepaid on the loan.

B.  Twice the amount of any finance charge in connection with the transaction, limited to the sum of $2,000.00;

C.  The costs of suit, plus a reasonable attorney's fee as determined by the court; and

D.  An amount equal to the sum of all finance charges and fees paid by the Plaintiffs in the subject Loan Transaction; and

E.  An amount equal to all undisbursed construction funds held by the Defendants.

## SECOND CLAIM FOR RELIEF

(For Rescission Against Defendants GOLDSTEIN, TDI, the TDI Defendants and GLIMIDAKIS for Violations of the Truth in Lending Act)

40.  Plaintiffs reallege and incorporate herein by reference every allegation set forth in Paragraphs 1-35, inclusive, of this complaint, as if each of those allegations were set forth in full.

41.  Defendant TDI is a "person," as defined in 15 U.S.C. §1602(d), who originated 2 or more

1   mortgages referred to in section (aa) of 15 U.S.C. §1602 in any 12 month period, and is therefore,

2   considered to be a "creditor," as provided for in 15 U.S.C. §1602(f).

3       42. Plaintiffs have the right to rescind the Loan Transaction in accordance with the provisions

4   of 15 U.S.C. §1635(a) and Regulation Z §226.23(a) as a consequence of Defendant TDI'S violations

5   of the Truth in Lending Act, 15 U.S.C. §1601, *et seq.*, and in particular, their inclusion of prohibited

6   terms in the loan that is the subject of this action.

7       43. On July 14, 2008, Plaintiffs exercised their right to rescind the Loan Transaction, as set

8   forth at page 3, lines 4-5, of a letter dated July 14, 2008 from Plaintiffs' counsel, Michael E. Stone,

9   Esq., addressed Philip Goldstein, President of Defendant TDI, a copy of which letter is attached to

10  this complaint as **Exhibit "I,"** and incorporated herein by that reference.

11      44. As a result by statute, the Loan Transaction has been rescinded by Plaintiffs.

12      45. As a consequence of Plaintiffs rescinding the Loan Transaction, they are not liable for any

13  finance or other charges, and any security interest in Plaintiff HENRY'S residence that Plaintiffs

14  provided to Defendant TDI to secure the Note has become void in accordance with the provisions of

15  15 U.S.C. §1635(b) and Regulation Z §226.23(d)(1).

16      46. Defendants "rejected" the rescission however, and notified Plaintiffs on July 28, 2008,

17  that they intend to "fully enforce the loan documents." a copy of that written notice is attached to this

18  complaint as **Exhibit "J,"** and incorporated herein by that reference.

19      47. As a consequence of Defendants' refusal and failure to reconvey the deed of trust within

20  20 days of the receipt of Plaintiffs' notice (Exhibit "I"), Defendants are liable to Plaintiffs for

21  additional penalties in accordance with 15 U.S.C. §1640; said amount alleged to be an additional

22  $85,274.10 to be awarded to Plaintiffs.

23                          <u>THIRD CLAIM FOR RELIEF</u>

24          (Against Defendants GOLDSTEIN, TDI, THE HASKELL PROPERTIES

25                  and GLIMIDIKIS  For Breach of Fiduciary Duty )

26      48. Plaintiffs reallege and incorporate herein by reference every allegation set forth in

27  Paragraphs 1-35, inclusive, of this complaint, as if each of those allegations were set forth in full.

28      49. California law imposes on real estate mortgage brokers, as fiduciaries, the same obligation

COMPLAINT FOR DAMAGES FOR FAILURE TO MAKE REQUIRED DISCLOSURES

1  of undivided service and loyalty that it imposes on a trustee in favor of a beneficiary.  Real Estate

2  mortgage brokers have a fiduciary duty to parties for whom they arrange mortgages to disclose all

3  material facts which might effect their decision regarding the transaction.  *Pepitone v. Russo* (1977)

4  64 Cal.App.3d 685.  Brokers owe a fiduciary duty to borrowers at least until the loan is funded.  *Umet*

5  *v. Santa Monica Med. Inst.* (1983) 140 Cal.App.3d 864.

6      50.  As mortgage brokers, Defendants owed Plaintiffs a fiduciary duty of loyalty, honesty, and

7  a duty of care.

8      51.  Defendants violated their duties of care and loyalty, as described above, including, but

9  not limited to:

10     A.   Misleading Plaintiffs as to the documented purpose of the loan that they inserted into

11          the Loan Transaction documents, and specifically, indicating that the Loan

12          Transaction was for an investment purpose, rather than a consumer loan for personal

13          purpose, which they knew to be the case, as they were at all times aware that the

14          Plaintiffs' purpose for the loan was to provide funds with which Plaintiff HENRY was

15          to use to repair and remodel her principal residence in order to be able to continue

16          using it as her dwelling.

17     B.   Inserting loan terms in the Loan Transaction documents that violated the provisions

18          of the Truth In Lending Act and predatory lending laws of the State of California, set

19          forth at California Financial Code §4970, et seq., through which acts Defendants

20          charged Plaintiffs excessive finance charges, high interest, prepaid interest, and other

21          improper costs.

22     C.   Failing to accurately and completely account to Plaintiffs for all funds purportedly

23          retained on Plaintiffs' behalf, and the loan funds purportedly expended on Plaintiffs'

24          behalf.

25     D.   Failing to place the retained loan funds in an interest-bearing trust account for

26          Plaintiffs' benefit.

27     52.  As a proximate result of Defendants breaches of fiduciary duty, Plaintiffs have been

28  damages in an amount not yet fully ascertained and to be determined according to proof at trial.

COMPLAINT FOR DAMAGES FOR FAILURE TO MAKE REQUIRED DISCLOSURES

FOURTH CLAIM FOR RELIEF

(Against Defendants GOLDSTEIN, TDI, THE HASKELL PROPERTIES

and GLIMIDIKIS  For Violation of California Financial Code §4970 )

53.  Plaintiffs reallege and incorporate herein by reference every allegation set forth in Paragraphs 1-35, inclusive, of this complaint, as if each of those allegations were set forth in full.

54.  Defendants GOLDSTEIN and TDI were creditors who issued a high cost loan.  The finance charges associated with Plaintiffs' loan from Defendants GOLDSTEIN and TDI were more than 6% of the loan amount.

55.  Defendants THE HASKELL PROPERTIES and GLIMIDAKIS were mortgage brokers who arranged the Plaintiffs' high-cost loan from Defendants GOLDSTEIN and TDI, and who received a commission therefore.

56. Defendants violated California Financial Code §4970 by brokering the Loan Transaction and issuing the loan to Plaintiffs for the following reasons:

A.    Defendants included a balloon payment provision in the Loan Transaction although the Note states on its face that it carries a term of less than 5 years;

B.    While acting under fraudulent misrepresentations by Defendant GOLDSTEIN, Defendants represented to Plaintiffs that it was necessary to indicate in the loan application and documents that the loan was for an investment purpose, when the knew that it was intended to be a consumer loan that was to be used to repair and remodel Plaintiff HENRY'S personal residence, so that she could continue to use it as her principal dwelling.

C.    By including prepaid interest, default interest, and other prohibited terms in the loan.

57.  As a proximate result of these violations of California law, Plaintiffs were damaged an amount to be determined at trial.

FIFTH CLAIM FOR RELIEF

(Against Defendants GOLDSTEIN and TDI For Breach of Contract)

58.  Plaintiffs reallege and incorporate herein by reference every allegation set forth in Paragraphs 1-35, inclusive, of this complaint, as if each of those allegations were set forth in full.

13

59. In the event of a purported non-monetary default, Defendants had a duty under the provisions of the Loan Transaction, and specifically under the Default provisions set forth in Paragraph 4 of the Note, to provide Plaintiffs at least 10 days notice before declaring Plaintiffs in default and accelerating the maturity.

60. Defendants breached their duty to provide Plaintiffs with the required 10-day notice before they declared Plaintiffs in Default by recording the Notice of Default as alleged hereinabove.

61. Plaintiffs have performed all of the obligations they were required to perform under the terms of the Note, except for obligations they were precluded from performing by the acts and conduct of the Defendants or were excused from performing.

62. As a proximate result of the Defendants' breach of their contractual duty to Plaintiffs, as alleged herein, Plaintiffs have been damaged in a sum to be determined according to proof. Plaintiffs have also been damaged by the recordation against title to their property of a Notice of Default and a Notice of Trustee's Sale in that said instruments slander their title and impede their efforts to refinance the subject property.

## SIXTH CLAIM FOR RELIEF

(Against Defendants GOLDSTEIN, TDI and TDI Defendants For

Cancellation of Written Instrument - Notice of Trustee's Sale).

63. Plaintiffs reallege and incorporate herein by reference every allegation set forth in Paragraphs 1-35, inclusive, of this complaint, as if each of those allegations were set forth in full.

64. If Defendants' Notice of Trustee's Sale (Exhibit "H") is left outstanding and of record, it will continue to constitute a cloud upon Plaintiffs' title to the Property. Plaintiffs have been forced to pursue a lawsuit to remove that cloud upon title to the Property. Plaintiffs will not be able to refinance the property pending cancellation of the above-described instrument. On or about July 14, 2008, Plaintiffs' counsel formally demanded Defendants GOLDSTEIN and TDI to cancel the Notice of Trustee's Sale and the sale they have set for August 5, 2008, but Defendants have failed and refused and continue to fail and refuse to do so.

65. The Defendants' conduct is fraudulent, malicious and oppressive, in that they knew they had failed to provide Plaintiffs the requisite 10-day notice to cure the alleged non-monetary default

1    before they declared the purported default underlying the Notice of Trustee's Sale, and that Plaintiffs

2    cured the stated default before Defendants recorded the Notice of Trustee's Sale against title to the

3    Property, and Defendants have since recording that instrument, failed and refused, and continue to

4    fail and refuse to vacate and cancel the Instrument, and cure the damage it caused and continues to

5    cause to Plaintiffs' interests in the Property.

6                            SEVENTH CLAIM FOR RELIEF

7                    (Against All Defendants For Financial Elder Abuse)

8        66.   Plaintiffs reallege and incorporate herein by reference every allegation set forth in

9    Paragraphs 1-35, inclusive, of this complaint, as if each of those allegations were set forth in full.

10       67.  On or about January 25, 2007, at the time escrow closed for the Loan Transaction , and

11   at the time Plaintiff HENRY put her interest in the property up as security for the Note to Defendants,

12   Plaintiff HENRY was an "elder" person, as the term is defined in Welfare and Institutions Code

13   §15610.27, in that she was a resident of the State of California who was over the age of 65 years.

14       68.  On or about January 25, 2007, Defendants Construction Deed of Trust was recorded

15   against title to the Property. On July 14, 2008, Plaintiff HENRY'S legal counsel advised Defendants

16   of the defects in the Note and Construction Deed of Trust, and requested Defendants to stop the

17   nonjudicial foreclosure proceedings they had instituted under the power of sale contained in the deed

18   of trust.   Defendants failed and refused and continue to fail and refuse to do so.   In addition,

19   Defendants refuse to pay Plaintiff s back the $223,000.00 in excess finance fees, costs and interest

20   that Defendants charged Plaintiffs in the Loan Transaction while violating of Plaintiffs rights under

21   TILA and California Financial Code §4970.

22       69.  Defendants' conduct described above constitutes Financial Elder Abuse, as the term is

23   defined in the California Elder Abuse and Dependent Adult Civil Protection Act, set forth in

24   California Welfare and Institutions Code §15610.30(a)(1).

25       70.  Defendants' conduct described above has caused Plaintiff HENRY to experience

26   "mental suffering," as the term is described in California Welfare And Institutions Code §15610.53.

27       71.  Plaintiff is entitled to an award of her attorney fees incurred in prosecuting this action

28   pursuant to California Welfare and Institutions Code §15657, in addition to damages proximately

COMPLAINT FOR DAMAGES FOR FAILURE TO MAKE REQUIRED DISCLOSURES

1  cause her by such conduct, the amount to be determined according to proof.

2  EIGHTH CLAIM FOR RELIEF

3  (Against Defendants GOLDSTEIN, TDI and TDI Defendants for Declaratory Relief)

4  72. Plaintiffs reallege and incorporate herein by reference every allegation set forth in

5  Paragraphs 1-35, inclusive, of this complaint, as if each of those allegations were set forth in full.

6  73. Defendant TDI is the current trustee of the deed of trust described in this action.

7  74. Defendant TDI and the TDI Defendants are now, and at all times relevant to this

8  complaint were, the beneficiaries of the deed of trust described above.

9  75. The purported non-monetary breaches of the obligation for which the deed of trust is

10  security have been cured by Plaintiffs engaging a new contractor, causing the construction labor to

11  be recommenced, and the deficient construction of the prior contractor repaired or replaced. Plaintiffs

12  gave Defendants written notice of them having cured the stated default during that three month period

13  after Defendants caused their Notice of Default to be recorded against title to the Property.

14  Defendants have improperly noticed and scheduled the trustee's sale set for August 5, 2008, in that

15  they failed to rescind the Notice of Default within 21 days after they were provided written notice of

16  Plaintiffs having cured the purported defaults, in violation of California Civil Code §2924c(2).

17  76. An actual controversy exists between Plaintiffs and Defendants concerning their

18  respective rights and duties pertaining to the Property and the described Loan Transaction in that (a)

19  Plaintiffs contend that they have cured the purported defaults underlying Defendants' scheduled

20  nonjudicial foreclosure; and (b) Defendant dispute this contention and contend that the claimed

21  defaults under the Construction Deed of Trust have not been cured, and that they are not obligated

22  to rescind the Notice of Default nor the Notice of Trustee's Sale, and that thereby are entitled to

23  proceed with their nonjudicial foreclosure as presently scheduled for August 5, 2008.

24  77. Plaintiffs desire a judicial determination and declaration of Plaintiffs' and Defendants'

25  respective rights and duties; specifically, a judicial declaration that Plaintiffs have cured the purported

26  default of their obligations under the Note, and that the Defendants have failed to meet statutory

27  requirements for rescinding the Notice of Default and Notice of Trustee's Sale, and to otherwise

28  vacate the trustee's sale set for August 5, 2008. Such a declaration is appropriate at this time so that

16
COMPLAINT FOR DAMAGES FOR FAILURE TO MAKE REQUIRED DISCLOSURES

1   Plaintiffs may determine their rights and duties before their Property is sold at a foreclosure sale.

2                              NINTH CLAIM FOR RELIEF

3        (Against Defendants GOLDSTEIN, TDI and TDI Defendants for Injunctive Relief)

4        78.  Plaintiffs reallege and incorporate herein by reference every allegation set forth in

5   Paragraphs 1 through 35, and Paragraphs 72 through 76 of this complaint, as if those allegations were

6   set forth in full.

7        79.  Defendants intend to sell the subject Property, and unless restrained will sell or cause

8   since Property to be sold,  all to Plaintiffs' great and irreparable injury in that Defendants have given

9   notice that the trustee sale of the property will take place on  a certain date and time, and at a certain

10  address, and if the sale takes place as scheduled, Plaintiffs, having no right to redeem the Property

11  from the sale, will suffer a forfeiture, and if a third party purchases at the sale, Plaintiffs make not be

12  able to set aside the sale.

13       80.  The scheduled sale is wrongful and should be enjoined by virtue of the facts alleged in

14  the above paragraphs.  Plaintiffs have no other plain, speedy, or adequate remedy, and the injunctive

15  relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to

16  Plaintiffs' interests.

17                              TENTH CLAIM FOR RELIEF

18       (Against Defendants GOLDSTEIN, TDI, And TDI Defendants For An Accounting)

19       81.  Plaintiffs reallege and incorporate herein by reference every allegation set forth in

20  Paragraphs 1 through 35, and Paragraphs 72 through 76 of this complaint, as if those allegations were

21  set forth in full.

22       82.  The amount of money Defendant TDI and the TDI Defendants owe to Plaintiffs is

23  unknown to Plaintiffs and cannot be determined without an accounting, particularly since the

24  purported "accountings" by Defendants, as alleged above, make it unclear how much money is still

25  being held for Plaintiffs' benefit.

26       83.  Plaintiffs seek a court order for a full and complete accounting, and to the extent

27  necessary, an independent audit of TDI's trust account.

28  //

COMPLAINT FOR DAMAGES FOR FAILURE TO MAKE REQUIRED DISCLOSURES

<u>ELEVENTH CLAIM FOR RELIEF</u>

(Against All Defendants For Violation Of The Unfair Competition Act

Set Forth In California Business and Professions Code §17200, *et seq.*)

84. Plaintiffs reallege and incorporate herein by reference every allegation set forth in Paragraphs 1-81, inclusive, of this complaint, as if each of those allegations were set forth in full.

85. Defendants have been engaged in and continue to engage in, numerous acts and a pattern and practice of unfair competition within the State of California in violation of Business and Professions Code §17200, *et seq.*, proscribing deceptive business practices. These unfair business practices include without limitation, the following:

A. Engaging in predatory lending practices in dealings with Plaintiffs, including, but not limited to: (1) including a balloon payment provision in the Loan Transaction although the Note states on its face that it carries a term of less than 5 years; and (2) charging excessive finance charges; (3) providing misleading disclosures as to the true Annual Percentage Rate charged under the loan; (4) by charging prepaid interest and default interest, contrary to applicable statutes and regulations, including prohibited terms in the loans; (5) by falsely misrepresenting to Plaintiffs that it was necessary to indicate in the loan application and documents for the loan that it was for an investment purpose, when Defendants knew that it was intended to be a consumer loan that was to be used to repair and remodel Plaintiff HENRY'S personal residence, so that she could continue to use it as her principal dwelling.

B. Failing to provide required notices they were required to provide under the Note prior to declaring a default under the Note and accelerating the due date on the unpaid principal.

C. Charging and collecting fees in excess of those permitted under TILA and California Financial Code §4970.

86. The above-described unlawful, unfair and fraudulent business practices are an ongoing threat of injury to Plaintiffs and the general public. Plaintiffs and the general public continue to be financially harmed by such conduct and, unless restrained, Defendants will continue to engage in such

COMPLAINT FOR DAMAGES FOR FAILURE TO MAKE REQUIRED DISCLOSURES

1  conduct .

2      87.  Pursuant to California Business and Professions Code §17203, Plaintiffs are entitled to

3  an order of this Court enjoining Defendants from continuing to engage in unfair competition, as

4  defined in Business and Professions Code §17200, in the State of California.  Plaintiffs and the

5  general public will be irreparably harmed if such an order is not granted.

6      88.  Defendants have been unjustly enriched at the expense of the Plaintiffs, who therefore are

7  entitled to equitable restitution and disgorgement of all profits realized by Defendants.

8      WHEREFORE, plaintiffs demand judgment as follows:

9                                        RELIEF

10     1.  Against Defendants GOLDSTEIN, TRUST DEED INVESTMENTS, INC., GLIMIDAKIS,

11  and THE HASKELL PROPERTIES for (a) actual damages, inclusive of finance charges, in the sum

12  of not less than $223,000.00 in accordance with 15 U.S.C. §1640(a)(1) and (4), plus (b) statutory

13  damages not to exceed $2,000.00 in accordance with 15 U.S.C. §1640(a)(2), plus (c) costs and

14  reasonable attorney fees in accordance with 15 U.S.C. §1640(a)(3) for violations of the Truth in

15  Lending Act, as set forth in Plaintiffs' First Claim for Relief.

16     2.  Against Defendants GOLDSTEIN, TDI and the TDI Defendants, for a declaration that the

17  Deed of Trust recorded against the property is rescinded  following documents are rescinded.  In

18  addition, and pursuant to 15 U.S.C. §1640, the Court is requested to award Plaintiffs a penalty against

19  Defendants in the sum of $85,247.10, as set forth in Plaintiffs' Second Claim for Relief.

20     3.  Against the Defendants GOLDSTEIN, TDI, THE HASKELL PROPERTIES, and

21  GLIMIDAKIS for damages in the sum of $223,000.00, or such other sum to be determined according

22  to proof, as set forth in Plaintiffs' Third, Fourth, Fifth, and Seventh Claims for Relief.

23     4.  For a declaration from the Court that the Notice of Trustee's Sale recorded against the

24  Property is cancelled as of July 14, 2008, as set forth in the Plaintiffs' Sixth Claim for Relief.

25     5.  That the Court issue a declaration of the rights and duties of the parties as set forth in the

26  Eighth Claim for Relief; specifically, (a) that trustee has no right to conduct the Trustee's Sale

27  presently set for August 5, 2008, because the purported non-monetary breaches were cured within the

28  time permitted under applicable California law; (b) because the trustee has not followed required sale

COMPLAINT FOR DAMAGES FOR FAILURE TO MAKE REQUIRED DISCLOSURES

1   procedures, in that the Notice of Default was not preceded by a 10-day notice to Plaintiffs, as required

2   in the underlying Note; and (c) because the Loan Transaction, and all documents therefore, including

3   the Deed of Trust and Note, have been rescinded.

4       7.  That the Court issue a temporary restraining order, a  preliminary injunction, and a

5   permanent injunction, restraining Defendants GOLDSTEIN, TDI and the TDI Defendants, and their

6   agents, attorneys, successors, and representatives, and all persons acting in concert or participating

7   with them, from selling, attempting to sell, or causing to be sold the Property either under the power

8   of sale in the Construction Deed of Trust or by foreclosure action, as set forth in the Plaintiffs' Ninth

9   Claim for Relief.

10      8.  That the Court an accounting to be rendered between Plaintiffs and Defendants

11  GOLDSTEIN, TDI and the TDI Defendants determining the amount, if any, that Defendants actually

12  owe Plaintiffs, as set forth in Plaintiffs' Tenth Claim for Relief.

13      9.  That Defendants, and each of them, be ordered to cease the deceptive and unfair trade

14  practices alleged in Plaintiffs' Eleventh Claim for relief, and specifically, that Defendants cease

15  making loans containing finance charges and fees that exceed the amounts permitted under the Truth

16  In Lending Act, and California Finance Code Sec. 4970; and cease making the loan that contains the

17  prohibited terms under said statutes and for an order that Defendants GOLDSTEIN, TDI, THE

18  HASKELL PROPERTIES, and GLIMIDAKIS be ordered to disgorge to Plaintiffs all amounts they

19  were paid as fees and interest in the Loan Transaction.

20      10. For an award of Plaintiffs' attorney's fees incurred in prosecuting this action.

21      11. For costs of suit incurred.

22      12. For such other and further relief as the Court deems just and proper.

23  Dated: July 31, 2008              LAW OFFICE OF MICHAEL E. STONE

24

25                      By:   *Michael E. Stone*

26                            Michael E. Stone, Attorney for Plaintiffs,
                              BRENDA HICKMAN and BETTY HENRY

27

28

COMPLAINT FOR DAMAGES FOR FAILURE TO MAKE REQUIRED DISCLOSURES

<u>VERIFICATION</u>

STATE OF CALIFORNIA            )
                                              )    ss.
COUNTY OF  SAN MATEO  .    )

I, the undersigned, certify and declare that I have read the foregoing __Complaint__

__For Damages, Injunctive Relief, Accounting__ and know its contents.

The statement following the box checked below is applicable.

[ X ]    I am a party to this action. The matters stated in the document described above are true of my own knowledge and belief except as to those matters stated on information and belief, and as to those matters I believe them to be true.

[ ]    I am [ ] an officer [ ] a partner [ ] a _____ of a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.  I am informed and believe and on that ground allege that the matters stated in the document described above are true.

[ ]    I am the attorney, or one of the attorneys for _____, a party to this action.  My client is absent from the county where I or such attorneys have our office and is unable to verify the document described above.  For that reason, I am making this verification for and on behalf of that party.  I am informed and believe and on that ground allege that the matters stated in said document are true.

Executed on __July 31__, 2008, at __San Mateo__, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

By: _____
BRENDA HICKMAN

1

# EXHIBIT "A"

# NOTE SECURED BY A DEED OF TRUST

Loan Number: 4218        Date: Tuesday, January 22, 2007        SAN FRANCISCO, California

473 Hill Street, San Francisco, CA 94114
Property Address(es)

## 1. BORROWER'S PROMISE TO PAY

In Return for a loan that I have received (the "Loan"), I promise to pay U.S. $800,000.00 (this amount will be called "principal"), plus interest, to the order of TRUST DEED INVESTMENTS, INC., a California Corporation, C.F.L. License No. 6052536, (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Lender(s)."

## 2. INTEREST

I will pay interest at a yearly rate as described in Paragraph 3 below.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the below rate on the prepaid finance charges which are a part of the principal.

## 3. PAYMENTS

My payments are   [X] Interest Only   [ ] Fully Amortized   [ ] Other

I will make my payments each month as follows:

| | | | |
|---|---|---|---|
| 1 | Starting February 1, 2007 | 12.000% | * |
| 58 | Starting March 1, 2007 | 12.000% | * |
| 1 | Starting January 1, 2012 | 12.000% | ** |

*Interest only on the outstanding principal balance.

**Outstanding principal balance, plus interest and any other fees due pursuant to any loan documentation related to this loan.

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on Sunday, January 01, 2012 I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.

I will make my payments payable to Trust Deed Investments, Inc., 1255 Post Street, Suite 496, San Francisco, CA 94109, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

If Borrowers make payments under this note by check and one or more checks are returned by maker's bank, the holder may, upon 10 days' written notice to maker, require that all future payments be made by money order, cashier's check or certified funds."

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge of Overdue Payments**

If I do not pay the full amount of each monthly payment by the end of ten calendar days after the date it is due, I will pay a late charge to the Note Lender. The amount of the charge will be 10.00% of my overdue payment or U.S. $5.00, which ever is more. I will pay this late charge only once on any late payment.

**(B) Default and Acceleration**

If I do not pay the full amount of each monthly payment due under this Note by the date stated in Section 3 above, or perform any other covenant of this Note and Deed of Trust, I will be in default, and the interest rate in paragraph 2 shall, without notice, increase FIVE (5) percentage points above the rate specified therein (the "Default Rate"). If I do not pay the full amount of the outstanding balance of the loan at maturity (the "balloon balance" referenced in Section 3 above), the Default Rate will automatically apply to all interest accrued thereafter without demand by the Note Lender.

Even if, at a time when I am in default, the Note Lender does not require me to pay immediately in full as described above, the Note Lender will still have the right to do so if I am in default at a later time.

**(C) Payment of Note Lender's Costs and Expenses**

If the Note Lender has required me to pay immediately in full as described above, the Note Lender will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees and other expenses and costs provided in this Note and/or Deed of Trust. A default upon any interest of any Note Lender shall be a default upon all interests.

**(D) Interest On Late Payments and Advances**

If for any reason Borrower fails to pay when due any interest, principal, late charge, other charges or other amount under the Note or any of the other documents executed by Borrower and Lender memorializing the Loan (the "Loan Documents"), then each such delinquent payment shall also bear interest at the rate stated in paragraph 2 of this Note, including the Default Rate, commencing on the date of the delinquent payment was due and continuing for so long as the delinquency continues.

## 5. BORROWER'S PAYMENTS BEFORE THEY ARE DUE – PREPAYMENT PENALTIES

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment."

**6. BORROWER'S WAIVERS**

I waive my rights to require the Note Lender to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Lender if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**7. RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note has the same obligations as the Borrower. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Lender may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us shall be required to pay all of the amounts owed under this Note.

**8. THIS NOTE IS SECURED BY A DEED OF TRUST**

In addition to the protection given to the Note Lender under this Note, a Deed of Trust with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Lender from possible losses which might result if I do not keep the promises which I make in the Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, enter into a contract of sale, lease for a term as described in the Deed of Trust (including options to renew), lease with an option to purchase for any term, or transfer all or part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing.

**9. USURY SAVINGS CLAUSE**

The terms of this Loan are hereby expressly limited so that in no contingency or event whatsoever shall the amount paid or agreed to be paid to Lender for the use, forbearance, or detention of the money to be loaned exceed the maximum amount or rate permissible under applicable law. If, for any reason whatsoever, fulfillment of any provision of this Loan, at the time fulfillment of such provision shall be due, is prohibited by law, the obligation to be fulfilled shall be reduced to the maximum not so prohibited; and if for any reason whatsoever Lender should ever receive as interest an amount which would exceed the highest lawful rate, such amount as would be excessive interest shall be applied to the reduction of the principal of the Note and not to the payment of interest. This provision shall control every other provision contained in the Loan Documents.

**10. GENERAL PROVISIONS**

(A) Time is of the essence of this Note.

(B) This Note may not be changed, amended, or modified except by a further written agreement between Borrower and Lender.

(C) Any failure of Lender to exercise any of its rights under this Note shall not constitute a waiver of those rights by Lender or a waiver by Lender of any other rights.

(D) This Note and the rights and duties of Borrower and Lender shall be governed by the laws of the State of California for all purposes.

**11. PURPOSE OF LOAN**

Borrower represents and warrants that the proceeds of the Loan evidenced by this Note shall be used exclusively for the business and/or commercial purposes more particularly set forth in the Construction Loan Agreement and that no portion of the proceeds will be used for personal, family, or household purposes, unless authorized in writing by Lender.

**12. ADDITIONAL EVENTS OF DEFAULT AND ACCELERATION**

Beyond the default created by Borrower's failure to pay as required pursuant to paragraph 4 above, certain events may constitute additional defaults in Lender's sole discretion (a "Non-Monetary Default"). In the event Lender declares a Non-Monetary Default, all sums owed and to become owing under this Note are immediately due and payable and subject to the Default Rate of interest contained in paragraph 4(B). For purposes of this Note, a Non-Monetary Default shall mean:

(A) A breach or default in the performance of any other term, covenant, condition or agreement under this Note or the Deed of Trust, or the Construction Loan Agreement, or any of the other Loan Documents, when such breach or default is not cured within 10 days after notice of such breach or default, or if such breach or default is not reasonably capable of being cured within such date, if Borrower has not commenced in good faith the curing of such breach or default within such 10 day period or does not thereafter prosecute to completion with diligence and continuity the curing thereof, which cure must in any event be completed within 30 days after such notice to Borrower; or



(B) If Borrower applies for or consents to the appointment of a receiver, liquidator, custodian or trustee for it or any portion of its property, or if such receiver, liquidator, custodian or trustee is appointed for Borrower or its property and is not discharged within ten (10) days after the date of such appointment, or Borrower makes an assignment for the benefit of creditors, or Borrower admits in writing its inability to pay its debts as they become due, or Borrower becomes insolvent, or a petition is filed by Borrower pursuant to any of the provisions of the Bankruptcy Code, 11 U.S.C. Sections 101 et seq., as amended, or any similar or successor statute, or such a petition is filed against Borrower and is not dismissed or vacated within ten (10) days after the date of such filing; or

(C) If there is an attachment or sequestration of any of the property of Borrower and the same is not discharged or bonded within thirty (30) days; or

(D) If Borrower is a partnership, corporation or limited liability company, Borrower shall cause or institute or there shall be instituted against Borrower any proceeding for the dissolution or termination of Borrower; or

(E) If any representation, warranty or disclosure made to Lender by Borrower proves to be materially false or misleading on the date as of which made.

| Borrower   Brenda Hickman | Date | Borrower | Date |
|---|---|---|---|

**DO NOT DESTROY THIS NOTE: When paid it must be surrendered to the Trustor, together with the Deed of Trust securing same for cancellation, before reconveyance will be made.**

# EXHIBIT "B"

# CONSTRUCTION LOAN AGREEMENT

THIS CONSTRUCTION LOAN AGREEMENT between **Brenda Hickman**, jointly and severally (collectively, "Borrower" without regard to number or gender) and Trust Deed Investments, Inc., a California corporation ("Lender") is made and executed on the following terms and conditions. Borrower has applied to Lender for a loan or loans up to the sum of $800,000.00 in order to construct the improvements on the Real Property described below. Lender is willing to lend the loan amount to Borrower solely under the terms and conditions specified in this Agreement and in the Related Documents, to each of which Borrower agrees. Borrower understands and agrees that: (a) in granting, renewing, or extending any loan or loans, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; and (b) any such loan or loans shall be and remain subject to the following terms and conditions of this Agreement.

    1.    **Definitions.** The following words shall have the following meanings when used in this Agreement. Terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

    a.    **Agreement.** The word "Agreement" means this Construction Loan Agreement, as this Construction Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Construction Loan Agreement from time to time.

    b.    **Architecture Contract.** The words "Architecture Contract" mean the architect's contract relating to the Project, if any.

    c.    **Borrower.** The word "Borrower" means **Brenda Hickman**, jointly and severally.

    d.    **Collateral.** The word "Collateral" means and includes without limitation all property and assets granted as collateral security for the Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, whether granted in the form of a security interest, mortgage, deed of trust, assignment, pledge, chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

    e.    **Construction Contract.** The words "Construction Contract" mean and include the contract between Borrower and the general contractor for the Project, if any, and any subcontracts with subcontractors, materialmen, laborers, or any other person or entity for performance of work on the Project or the delivery of materials to the Project.

    f.    **Event of Default.** The words "Event of Default" mean and include any of the Events of Default set forth below in the section titled "Events of Default."

    g.    **Grantor.** The word "Grantor" means and includes each and all of the persons or entities granting a Security Interest in any Collateral for the Indebtedness, including without limitation all Borrowers granting such a Security Interest.

    h.    **Improvements.** The word "Improvements" means and includes without limitation all existing and future buildings, structures, facilities, fixtures, additions, and similar construction on the Property.

i.     **Indebtedness.** The word "Indebtedness" means and includes without limitation any loan or loans made by Lender to Borrower relating to this Project and Property, together with all other obligations, debts and liabilities of Borrower to Lender, or any one or more of them relating to this Project and Property, as well as all claims by Lender against Borrower, or any one or more of them relating to this Project and Property; whether now or hereafter existing, voluntary or involuntary, due or not due absolute or contingent, liquidated or unliquidated; whether Borrower may be liable individually or jointly with others; whether Borrower may be obligated as a guarantor, surety, or otherwise; whether recovery upon such Indebtedness may be or hereafter may become barred by any statute of limitations; and whether such Indebtedness may be or hereafter may become otherwise unenforceable.

j.     **Lender.** The word "Lender" means Trust Deed Investments, Inc., a California corporation, its successors and assigns.

k.     **Loan.** The word "Loan" means the loan made to Borrower under this Agreement and the Related Documents as described below. Lender may make more than one loan at the same time to Borrower utilizing the same Collateral, and in such event, the word "Loan" encompasses all such loans, notwithstanding the existence of separate Related Documents for each such loan.

l.     **Loan Fund.** The words "Loan Fund" mean the undisbursed proceeds of the Loan under this Agreement together with any equity funds or other deposits required from Borrower under this Agreement. Borrower understands and acknowledges that the entirety of the Loan Fund may not be funded by Lender prior to such time as funds are required for disbursement in accordance with the terms of this Agreement, and agrees that Lender is under no obligation to have the entirety of the Loan Fund set aside in a reserve account prior to the time funds are required for disbursement in accordance with the terms of this Agreement.

m.     **Note.** The word "Note" means the secured promissory note dated **January 22, 2007** in the original principal amount of **$800,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the secured promissory note.

n.     **Plans and Specifications.** The words "Plans and Specifications" mean the plans and specifications for the Project which have been approved and initialed by Lender, together with such changes and additions as may be approved by Lender in writing.

o.     **Project.** The word "Project" means the construction and completion of all Improvements contemplated by this Agreement including without limitation the erection of the buildings or structures, installation of equipment and fixtures, landscaping, and all other work necessary to make the Property usable and complete for the intended purposes.

p.     **Project Documents.** The words "Project Documents" mean the Plans and Specifications, all studies, data and drawings relating to the Project, whether prepared by or for Borrower, the Construction Contract, the Architecture Contract, and all other contracts and agreements relating to the Project or the construction of the Improvements.

q.     **Property.** The word "Property" means the Real Property together with all Improvements, all equipment, fixtures, and other articles of personal property now or subsequently attached or affixed to the real property, together with all accessions, parts, and additions to, all

replacements of, and all substitutions for any of such property, and all proceeds (including insurance proceeds and refunds of premiums) from any sale or other disposition of such property.

   r.    **Real Property.** The words "Real Property" mean the real property located in the City and County of San Francisco, State of California, commonly known as 473 Hill Street, San Francisco, CA 94114, and legally described on **Exhibit "A"** attached to the deed of trust.

   s.    **Related Documents.** The words "Related Documents" mean and include without limitation all Promissory Notes, Credit Agreements, Loan Agreements, Guaranties, Security Agreements, Mortgages, Deeds of Trust, Assignment of Contracts (Construction and Architecture), Agreement to Provide Insurance, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

   t.    **Representative.** The word "Representative" means **Trust Deed Investments, Inc. and** or/any **third party that Trust Deed Investments hires to oversee the Project.**

   u.    **Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

   v.    **Security Interest.** The words "Security Interest" mean and include without limitation any type of collateral security, whether in the form of a lien, charge, mortgage, deed of trust, assignment, pledge, chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

   2.    **Term.** This Agreement shall be effective as of the date set forth on the signature page hereof and shall continue thereafter until all indebtedness has been paid in full and all other obligations of Borrower hereunder have been performed in full and the parties terminate this Agreement in writing.

   3.    **Loan.** The Loan shall be in the principal sum set forth in the Note and shall bear interest on so much of the principal sum as shall be advanced (an "Advance") pursuant to the terms of this Agreement (including, without limitation, Lender's fees and expenses and interest advanced from the Interest Reserve, as defined below, if any) and the Related Documents. The Loan shall bear interest on each Advance from the date of the Advance in accordance with the terms of the Note. Borrower shall use the Loan Fund solely for the payment of (a) the costs of constructing the Improvements and equipping the Project in accordance with the Construction Contract and/or the Plans and Specifications; (b) other costs and expenses incurred or to be incurred in connection with the construction of the Improvements and related purposes as Lender in its sole discretion shall approve in accordance with the proformas attached hereto as Exhibit "B"; and (c) if permitted by Lender, interest due under the Note, including all expenses and all loan and commitment fees described in this Agreement. The Loan is to be drawn upon by Borrower only in compliance with the proformas attached hereto as Exhibit "B" or as changed in writing by mutual agreement.

   4.    **Fees and Expenses.** Whether or not the Project shall be consummated, Borrower shall assume and pay upon demand all out-of-pocket expenses incurred by Lender in connection with the preparation of the Related Documents and the making of the Loan, including without limitation the following: (a) all closing costs, fees, and disbursements; (b) all expenses of Lender's legal counsel; and (c) all title examination fees, title insurance premiums, appraisal fees, survey costs, required fees, and filing and recording fees. On funding of the Loan, Lender will have earned and Borrower will be obligated for a loan origination fee equal to

$80,000.00 of the principal amount of the Note. This fee will be paid out of the Loan Fund at a time or times to be decided by Lender and will bear interest at the Note rate along with any other disbursements when made.

5. **No Construction Prior to Recording of Security Document.** Borrower will not permit any work or materials to be furnished in connection with the Project until (a) Borrower has signed the Related Documents; (b) Lender's mortgage or deed of trust and other Security Interests in the Property have been duly recorded and perfected; and (c) Lender has been provided evidence, satisfactory to Lender, that Borrower has obtained all insurance required under this Agreement or any Related Documents and that Lender's liens on the Property and Improvements are valid perfected first liens, subject only to such exceptions, if any, acceptable to Lender.

6. **Representations and Warranties.** Borrower represents and warrants to the best of its knowledge to Lender as of the date of this Agreement and as of the date of each disbursement of Loan proceeds:

    a. **Financial Information.** Each financial statement of Borrower supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

    b. **Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

    c. **Title to Property.** Borrower has, or on the date of first disbursement of Loan proceeds will have, good and marketable title to the Property free and clear of all defects, liens, and encumbrances, excepting only liens for taxes, assessments, or governmental charges or levies not yet delinquent or payable without penalty or interest, and such liens and encumbrances as may be approved in writing by the Lender.

    d. **Hazardous Substances.** The terms "hazardous waste," "hazardous substance," "disposal," "release," and "threatened release," as used in this Agreement, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (a) During the period of Borrower's ownership of Borrower's properties, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance by any person on, under, or about any of the properties. (b) Borrower has no knowledge of, or reason to believe that there has been (i) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any hazardous waste or substance by any prior owners or occupants of any of the properties, or (ii) any actual or threatened litigation or claims of any kind by any person relating to such matters. (c) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the properties shall use, generate, manufacture, store, treat, dispose of, or release any hazardous waste or substance on, under, or about any of the properties; and any such activity

shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation those laws, regulations and ordinances described above. Borrower authorizes Lender and its agents to enter upon the properties to make such inspections and tests as Lender may deem appropriate to determine compliance of the properties with this section of the Agreement. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the properties for hazardous waste. Borrower hereby (a) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Borrower's ownership or interest in the properties, whether or not the same was or should have been known to Borrower. The provisions of this section of the Agreement, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the properties, whether by foreclosure or otherwise.

e.    **Project Costs.** The Project costs are true and accurate estimates of the costs necessary to complete the Improvements in a good and workmanlike manner according to the Plans and Specifications presented by Borrower to Lender, and Borrower shall take all steps necessary to prevent the actual cost of the Improvements from exceeding the Project costs.

f.    **Utility Services.** All utility services appropriate to the use of the Project after completion of construction are available at the boundaries of the Property.

g.    **Access.** The Property is contiguous to publicly dedicated streets, roads, or highways providing access to the Property.

h.    **Assessment of Property.** The Property is and will continue to be assessed and taxed as an independent parcel by all Governmental Authorities.

i.    **Compliance with Governing Authorities.** Borrower has examined and is familiar with all the easements, covenants, conditions, restrictions, reservations, building laws, regulations, zoning ordinances, and federal, state, and local requirements affecting the Project. The project will at all times and in all respects confirm to and comply with the requirements of such easements, covenants, conditions, restrictions, reservations, building laws, regulations, zoning ordinances, and federal, state, and local requirements.

j.    **Survival of Representation and Warranties.** Borrower understands and agrees that Lender is relying upon the above representations and warranties in extending Loan Advances to Borrower. Borrower further agrees that the foregoing representations and warranties shall be continuing in nature and shall remain in full force and effect until such time as Borrower's Loan and Note shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

k.    **No Violation.** The consummation of the transactions covered by this Agreement and the payment and performance of all of the obligations in this Agreement, the Note, the Deed of Trust, and the other Loan Documents, will not result in any breach of, or constitute a default under, any mortgage, deed of trust, lease, contract, loan or credit agreement, trust agreement, or other instruments to which the

Borrower is a party or by which they or the Property may be bound or affected.

l.       **Permits.**  Borrower has, or prior to the commencement of construction of the Improvements will have:

(i)      Received all requisite building permits and approvals from all applicable city, county, state, and federal governmental entity or agency ("Governmental Authorities") which has jurisdiction over the Project;

(ii)     Filed or recorded all subdivision maps, plats, and other required instruments; and

(iii)    To the best of Borrower's knowledge, comply with all other related Governmental requirements.

m.      **Utilities.**  All utility services, including without limitation gas, electric, water, storm and sanitary sewer, and telephone facilities, necessary for the construction of the improvements and the operation for their intended purposes:

(i)      Are available at or within the boundaries of the Property, or

(ii)     All necessary steps have been taken by Borrower and all applicable Governmental Authorities and utility companies to assure the complete construction, installation, and availability of same on completion of the improvements.

n.      **Roads.**  All roads necessary for the full use of the improvements for their intended purposes:

(i)      Have been completed, or

(ii)     The necessary rights-of-way have been acquired by or dedicated to public use and accepted by appropriate Governmental Authorities, and all other necessary steps have been taken by Borrower and such Governmental Authorities to assure the complete construction, installation, and availability of them on completion of the improvements.

o.      **Adequacy of Loan.**  The aggregate amount of all Loan proceeds, and any funds held by Borrower, are sufficient to pay all costs of construction of the Improvements in accordance with the Plans and Specifications.

p.      **Accuracy.**  All cash flow projections, pro forma reports, time-line reports, documents, instruments, information, and forms of evidence delivered to Lender concerning the Loan or required by this Agreement or any of the other Loan documents are accurate, correct, and sufficiently complete to give Lender true and accurate knowledge of their subject matter, and do not contain any untrue statement of a material fact or omit any material fact necessary to make them no misleading.

7.      **Conditions Precedent to Each Advance.**  Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction, in Lender's sole discretion, of all of the conditions set forth in this Agreement.

a.      **Proformas.**  Lender shall have received and approved the Proformas (including a proposed schedule for draws) attached to this Agreement as **Exhibit "B".**

b.   **Approval of Contractors, Subcontractors, and Materialmen.** Lender shall have approved a list of all contractors employed in connection with the construction of the Improvements (the "Approved List"), showing the name, address, and telephone number of each contractor, a general description of the nature of the work to be done, the labor and materials to be supplied, the names of materialmen, if known, and the approximate dollar value of the labor, work, or materials with respect to each contractor or materialman. Borrower shall not change any of the contractors on the Approved List without Lender's approval, which may be exercised in Lender's sole discretion. Lender shall have the right to communicate with any person to verify the facts disclosed by the list or by any application for any Advance, or for any other purpose.

c.   **Plans, Specifications, and Permits.** Lender shall have received and accepted a complete set of Plans and Specifications setting forth all Improvements for the Project, and Borrower shall have furnished to Lender copies of all permits and requisite approvals of any governmental body necessary for the construction and use of the Project.

d.   **Architecture and Construction Contracts.** Borrower shall have furnished in form and substance satisfactory to Lender an executed copy of the Architecture Contract and an executed copy of the Construction Contract and Assignments of same to Lender within 45 days of the first (initial) Advance hereunder.

e.   **Budget and Schedule of Estimated Advances.** Lender shall have approved detailed budget and cash flow projections of total Project costs and a schedule of the estimated amount and time of disbursements of each Advance.

f.   **Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified authorization, duly authorizing the execution and delivery of the Related Documents, and consummation of the Project, and such other authorizations and other documents as Lender in its sole discretion may require.

g.   **Bond.** If requested by Lender, Borrower shall have furnished a performance and payment bond in an amount equal to 100% of the amount of the Construction Contract, as well as a materialmen's and mechanics' payment bond, with such riders and supplements as Lender may require, each in form and substance satisfactory to Lender, naming the general contractor as principal and Lender as an additional obligee. Any required bonds and the contracts which they cover must be duly recorded or filed in accordance with California Civil Code Section 3235, if required by Lender.

h.   **Survey.** If requested by Lender, Borrower shall have furnished to Lender a survey of recent date, prepared and certified by a qualified surveyor and providing that the Improvements, if constructed in accordance with the Plans and Specifications, shall lie wholly within the boundaries of the Property without encroachment or violation of any zoning ordinances, building codes or regulations, or setback requirements, together with such other information as Lender in its sole discretion may require.

i.   **Zoning.** Borrower shall have furnished evidence satisfactory to Lender that the Property is duly and validly zoned for the construction, maintenance, and operation of the Project.

j.   **Title Insurance.** Borrower shall have provided to Lender an ALTA Lender's extended coverage policy of title insurance with such endorsements as Lender may require, issued by a title insurance company acceptable to Lender and in a form, amount, and content satisfactory to Lender,

insuring or agreeing to insure that the Mortgage or Deed of Trust on the Property is or will be upon recordation a valid first lien on the Property free and clear of all defects, liens, encumbrances, and exceptions except those as specifically accepted by Lender in writing. If requested by Lender, Borrower shall provide to Lender, at Borrower's expense, a foundation endorsement (CLTA 102.5 or its equivalent) to the title policy upon the completion of each foundation for the Improvements, showing no encroachments, and upon completion an endorsement which insures the lien-free completion of the Improvements (CLTA 101 series, as required by Lender).

k.     **Insurance.**  Unless waived by Lender in writing, Borrower shall have delivered to Lender the following insurance policies or evidence thereof:  (a) liability coverage in amounts acceptable to Lender insuring Lender as mortgagee, together with such other endorsements as may be required by Lender, including stipulations that coverages will not be canceled or diminished without at least ten (10) days' prior written notice to Lender; (b) flood insurance if required by Lender or applicable law, and (c) all other insurance required by this Agreement or by the Related Documents.

l.     **Payment of Fees and Expenses.**  Borrower shall have paid to Lender all expenses specified in this Agreement as are then due and payable.

m.     **Satisfactory Construction.**  All work usually done at the stage of construction for which disbursement is requested shall have been done in a good and workmanlike manner and all materials and fixtures usually furnished and installed at that stage of construction shall have been furnished and installed, all in compliance with the Plans and Specifications as determined by Lender or Representative in their sole discretion.  Borrower shall also have furnished to Lender such proofs as Lender may require to establish the progress of the work, compliance with applicable laws, freedom of the Property from liens, and the basis for the requested disbursement.  Borrower shall pay the fees of Lender's inspectors, which fees are currently charged at the rate of $295.00 per inspection, in addition to any out of pocket costs incurred by Lender to review any documents submitted by Borrower in support of an application for Advance, such out of pocket costs to include, without limitation, fees and expenses incurred for attorneys, accountants, design professionals or construction representatives.

n.     **Certification.**  Borrower shall have furnished to Lender a certification by Representative that the construction of the Improvements has been completed to the extent required for the disbursement and has complied and will continue to comply with all applicable statutes, ordinances, codes, regulations, and similar requirements.

o.     **Lien Waivers.**  Borrower shall have obtained and attached to each application for an Advance, including the Advance to cover final payment to the general contractor, executed acknowledgments of payments of all sums due and releases of mechanics' and materialmen's liens, satisfactory to Lender, from any party having lien rights, which acknowledgments of payment and releases of liens shall cover all work, labor, equipment, materials done, supplied, performed, or furnished prior to such application for an Advance.

p.     **Lack of Default.**  There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement.

8.     **Disbursement of Loan Proceeds.**  The following provisions relate to the disbursement of funds from the Loan Fund.

a.     **Disbursement Schedule.**  The Loan Fund shall be disbursed in various draws as requested, together with an initial disbursement as shown in Exhibit "B".

b. **Application for Advances.** Each application for a disbursement of a portion of the Loan Fund shall be stated on a standard AIA payment request form or other form approved by Lender, executed by Borrower, and supported by such evidence as Lender shall reasonably require. Borrower shall apply only for disbursement with respect to work actually done by the general contractor and for materials and equipment actually incorporated into the Project. Each application for an Advance shall be deemed a certification of Borrower that as of the date of such application, all representations and warranties contained in the Agreement are true and correct, and that Borrower is in compliance with all of the provisions of this Agreement.

c. **Payments.** At the sole option of Lender, Advances may be paid in the joint names of Borrower and the general contractor, subcontractor(s), or supplier(s) in payment of sums due under the Construction Contract. At its sole option, Lender may directly pay the general contractor and any subcontractors or other parties the sums due under the Construction Contract. Borrower appoints Lender as its attorney-in-fact to make such payments. This power shall be deemed to be coupled with an interest, shall be irrevocable, and shall survive an Event of Default under this Agreement.

d. **Projected Cost Overruns.** If Lender at any time determines in its sole discretion that the amount in the Loan Fund is insufficient, or will be insufficient, to complete fully and to pay for the Project, then within ten (10) days after receipt of a written request and supporting documentation from Lender, Borrower shall deposit in the Loan Fund an amount equal to the deficiency as determined by Lender. The judgment and determination of Lender under this section shall be final and conclusive.

e. **Final Payment to General Contractor.** Upon completion of the Project and fulfillment of the Construction Contract to the satisfaction of Lender and provided sufficient money in the Loan Fund is available, Lender shall make an Advance to cover the final payment due to the general contractor upon delivery to Lender of endorsements to the ALTA title insurance policy following the posting of the completion notice, as provided under applicable law. Construction shall not be deemed complete for purposes of final disbursement unless and until Lender shall have received all of the following:

(a) Evidence satisfactory to Lender that all work under the Construction Contract requiring inspection by any Governmental Authority with jurisdiction has been duly inspected and approved by such authority, that a certificate of occupancy has been issued, and that all parties performing work have been fully paid for such work;

(b) A certification by Representative that the Improvements have been completed substantially in accordance with the Plans and Specifications and the Construction Contract, that direct connection has been made to all utilities set forth in the Plans and Specifications, and that the Project is ready for occupancy; and

(c) Acceptance of the completed Improvements by Lender and Borrower.

f. **Construction Default.** If Borrower fails in any respect to comply with the provisions of this Agreement or if construction ceases before completion regardless of the reason, Lender, at its option, may refuse to make further Advances, may accelerate the Indebtedness under the terms of the Note, and without thereby impairing any of its rights, powers, or privileges, may enter into possession of the construction site and perform or cause to be preformed any and all work and labor necessary to complete the Improvements, substantially in accordance with the Plans and Specifications.

    g.   **Damage or Destruction.** If any of the Property or Improvements is damaged or destroyed by casualty of any nature, within sixty (60) days thereafter Borrower shall restore the Property and Improvements to the condition in which they were before such damage or destruction with funds other than those in the Loan Fund. Lender shall not be obligated to make disbursements under this Agreement until such restoration has been accomplished.

    h.   **Right to Advance Funds.** When any event occurs that Lender determines may endanger completion of the Project or the fulfillment of any condition or covenant in this Agreement, Lender may require Borrower to furnish, within ten (10) days after delivery of a written request, adequate security to eliminate, reduce, or indemnify Lender against, such danger. In addition, upon such occurrence, Lender in its sole discretion may advance funds or agree to undertake to advance funds to any party to eliminate, reduce or indemnify Lender against, such danger or to complete the Project. All sums paid by Lender pursuant to such agreements or undertakings shall be for Borrower's account and shall be without prejudice to Borrower's rights, if any, to receive such funds from the party to whom paid. All sums expended by Lender in the exercise of its option to complete the Project or protect Lender's interests shall be payable to Lender on demand together with interest from the date of the Advance at the rate applicable to the Loan. In addition, any Advance of funds under this Agreement, including without limitation direct disbursements to the general contractor or other parties in payment of sums due under the Construction Contract, shall be deemed to have been expended by or on behalf of Borrower and to have been secured by the Mortgage or Deed of Trust on the Property.

    i.   **Interest Reserve.** It is agreed that a portion of the Loan Fund (the "Interest Reserve") may be used in the sole discretion of Lender to pay interest that becomes due during the term of the Note and which has not been paid directly by Borrower from separate funds of Borrower. On the first day of each calendar month, Lender may disburse for the payment of interest due to Lender a portion of the Loan Fund to pay the regular monthly installment of interest then due and payable under the Note. Upon the occurrence of an Event of Default, Lender may make, but shall have no obligation to make, further disbursements from the Loan Fund for payment of interest due to Lender under the Note, or for any other purpose, and Borrower shall not be entitled to any such disbursements. Designation of a portion of the Loan Fund for payment of interest shall in no way relieve Borrower of its obligation to pay interest as set forth in the Note. If the Interest Reserve is exhausted before the Note maturity date, Borrower is obligated to pay all monthly interest payments on the first day of each month from Borrower's separate funds.

    9.   **Limitation of Responsibility.** The making of any Advance by Lender shall not constitute or be interpreted as either (a) an approval or acceptance by Lender of the work done through the date of the Advance, or (b) a representation or indemnity by Lender to any party against any deficiency or defect in the work or against any breach of any contract. Inspections and approvals of the Plans and Specifications, the Improvements, the workmanship and materials used in the Improvements, and exercise of any other right of inspection, approval, or inquiry granted to Lender in this Agreement are acknowledged to be solely for the protection of Lender's interests, and under no circumstances shall they be construed to impose any responsibility or liability of any nature whatsoever on Lender to any party. Neither Borrower nor any contractor, subcontractor, materialman, laborer, or any other person shall rely, or have any right to rely, upon Lender's determination of the appropriateness of any Advance. No disbursement or approval by Lender shall constitute a representation by Lender as to the nature of the Project, its construction, or its intended use for Borrower or for any other person, nor shall it constitute an indemnity by Lender to Borrower or to any other person against any deficiency or defects in the Project or against any breach of any contract.

10.  **Affirmative Covenants.** Borrower covenants and agrees with Lender that, while this Agreement is in effect, Borrower will:

a.  **Litigation.** Promptly inform Lender in writing of (a) all material adverse changes in Borrower's financial condition, and (b) all litigation and claims and all threatened litigation and claims affecting Borrower which could materially affect the financial condition of Borrower.

b.  **Financial Records.** Maintain its books and records in accordance with generally accepted accounting principles, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

c.  **Additional Information.** Furnish such additional information and statements, lists of assets and liabilities, agings of receivables and payables, inventory schedules, budgets, forecasts, tax returns, and other reports with respect to Borrower's financial condition and business operations as Lender may request from time to time.

d.  **Construction of the Project.** Cause the Improvements to be constructed and equipped in a diligent and orderly manner and in strict accordance with the Plans and Specifications approved by Lender, the Construction Contract, and all applicable laws, ordinances, codes, regulations, and rights of adjoining or concurrent property owners.

e.  **Loan Proceeds.** Use the Loan Fund solely for payment of bills and expenses directly related to the Project.

f.  **Workers' Compensation Coverage.** Provide to Lender proof of the general contractor's compliance with all applicable workers' compensation laws and regulations with regard to all work performed on the Project.

g.  **Defects.** Upon demand of Lender, promptly correct any defect in the Improvements or any departure from the Plans and Specifications not approved by Lender before further work shall be done upon the portion of the Improvements affected.

h.  **Project Claims and Litigation.** Promptly inform Lender of (a) all material adverse changes in the financial condition of the general contractor or any subcontractor; (b) any litigation and claims, actual or threatened, affecting the Project or the general contractor, which could materially affect the successful completion of the Project or the ability of the general contractor to complete the Project as agreed; and (c) any condition or event which constitutes a breach or default under any of the Related Documents or any contract related to the Project.

i.  **Payment of Claims and Removal of Liens.** (a) Cause all claims for labor done and materials and services furnished in connection with the Improvements to be fully paid and discharged in a timely manner, (b) diligently file or procure the filing of a valid notice of completion of the Improvements, or such comparable document as may be permitted under applicable lien laws, (c) diligently file or procure the filing of a notice of cessation, or such comparable document as may be permitted under applicable lien laws, upon the happening of cessation of labor on the Improvements for a continuous period of thirty (30) days or more, and (d) take all reasonable steps necessary to remove all claims of liens against the Property, the Improvements or any part of the Property or Improvements, or any rights or interests appurtenant to the Property or Improvements. Upon Lender's request, Borrower shall make such demands or claims upon or against laborers, materialmen, subcontractors, or other

persons who have furnished or claim to have furnished labor, services, or materials in connection with the Improvements, which demands or claims shall under the laws of the State of California require diligent assertions of lien claims upon penalty of loss or waiver thereof. Borrower shall, within ten (10) days after the filing of any claim of lien that is disputed or contested by Borrower, record or cause the general contractor for the construction of the Improvements to record in the Office of the San Francisco County Recorder, a surety bond pursuant to California law sufficient to release the claim of lien and, within five (5) days of Lender's demand, make suitable provision by deposit of funds with Lender in an amount satisfactory to Lender or by bond satisfactory to Lender for the possibility that the contest will be unsuccessful. If Borrower fails to remove any lien on the Property or Improvements or provide a bond or deposit pursuant to this provision, Lender may pay such lien, or may contest the validity of the lien, and Borrower shall pay all costs and expenses of such contest, including Lender's reasonable attorneys' fees.

     **j.**    **Taxes and Claims.** Pay and discharge when due all of Borrower's indebtedness, obligations, and claims that, if unpaid, might become a lien or charge upon the Property of Improvements; provided, however, that Borrower shall not be required to pay and discharge any such indebtedness, obligation, or claim so long as (a) its legality shall be contested in good faith by appropriate proceedings, (b) the indebtedness, obligation, or claim does not become a lien or charge upon the Property or Improvements, and (c) Borrower shall have established on its books adequate reserves with respect to the amount contested in accordance with generally accepted accounting practices. If the indebtedness, obligation, or claim does become a lien or charge upon the Property or Improvements, Borrower shall remove the lien or charge as provided in the preceding paragraph.

     **k.**    **Performance.** Perform and comply with all terms, conditions, and provisions set forth in this Agreement and in all other instruments and agreements between Borrower and Lender, and in all other loan agreements now or hereafter existing between Borrower and any other party. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

     **l.**    **Additional Assurances.** Make, execute, and deliver to Lender such Security Agreements, instruments, documents, and other agreements reasonably necessary to document and secure the Loan and to perfect Lender's Security Interests in the Property and Improvements.

**11.**    **Negative Covenants.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of the Lender:

     **a.**    **Indebtedness and Liens.** (a) Except for trade debt incurred in the normal course of business including without limitation the Project and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (b) sell, transfer, mortgage, assign, pledge, lease, grant a security in, or encumber any of Borrower's assets, or (c) sell with recourse any of Borrower's accounts, except to Lender.

     **b.**    **Continuity of Operations.** (a) Engage in any business activities substantially different than those in which Borrower is presently engaged or (b) cease operation, liquidate, merge, transfer, acquire or consolidate with any other entity, change ownership, dissolve or transfer or sell Collateral out of the ordinary course of business.

     **c.**    **Loans, Acquisitions and Guaranties.** (a) Loan, invest in or advance money or assets, (b) purchase, create or acquire any interest in any other enterprise or entity, or (c) incur any obligation as surety or guarantor other than in the ordinary course of business including without limitation Borrower's development of the Project.

   d.    **Modification of Contract or Change of Contractors.** Make or permit to be made any modification of the Construction Contract or change any contractor in direct privity with Borrower.

   e.    **Liens.** Create or allow to be created any lien or charge upon the Property or the Improvements.

12.    **General Project Provisions.** The following provisions relate to the construction and completion of the Project:

   a.    **Change Orders.** All requests for changes in the Plans and Specifications, other than minor changes involving costs up to One Thousand Five Hundred Dollars ($1,500), must be in writing, signed by Borrower and the architect, and delivered to Lender for its approval. Borrower will not permit the performance of any work pursuant to any change order or modification of the Construction Contract or any subcontract without the written approval of Lender. Borrower will obtain any required permits or authorizations from Governmental Authorities having jurisdiction before approving or requesting a new change order.

   b.    **Purchase of Materials; Conditional Sales Contracts.** No materials, equipment, fixtures, or articles of personal property placed in or incorporated into the Project shall be purchased or installed under any Security Agreement or other agreement whereby the seller reserves or purports to reserve title or the right of removal or repossession, or the right to consider such items as personal property after their incorporation into the Project, unless otherwise authorized by Lender in writing.

   c.    **Lender's Right of Entry and Inspection.** Lender and its agents shall have at all times the right of entry and free access to the Property and the right to inspect all work done, labor performed, and materials furnished with respect to the Project. Lender shall have unrestricted access to and the right to copy all records, accounting books, contracts, subcontracts, bills, statements, vouchers and supporting documents of Borrower relating in any way to the Project.

   d.    **Lender's Right to Stop Work.** If Lender in good faith determines that any work or materials do not conform to the approved Plans and Specifications or sound building practices, or otherwise depart from any of the requirements of this Agreement, Lender may require the work to be stopped and withhold disbursements until the matter is corrected. In such event, Borrower will promptly correct the work to Lender's satisfaction. No such action by Lender will affect Borrower's obligation to complete the Improvements on or before the Completion Date. Lender is under no duty to supervise or inspect the construction or examine any books and records. Any inspection or examination by Lender is for the sole purpose of protecting Lender's security and preserving Lender's rights under this Agreement. No default of Borrower will be waived by any inspection by Lender. In no event will any inspection by Lender be a representation that there has been or will be compliance with the Plans and Specifications or that the construction is free from defective materials or workmanship.

   e.    **Indemnity.** Borrower shall indemnify and hold Lender harmless from any and all claims asserted against Lender or the Property by any person, entity, or governmental body, or arising out of or in connection with the Property, Improvements, or Project. Lender shall be entitled to appear in any action or proceeding to defend itself against such claims, and all costs incurred by Lender in connection with such defense, including attorneys' fees, shall be paid by Borrower to Lender. Lender shall, in its sole discretion, be entitled to settle or compromise any asserted claims against it, and such settlement shall be binding upon Borrower for purposes of this indemnification. All amounts paid by Lender under this paragraph shall be secured by the Mortgage or Deed of Trust on the Property, shall be deemed an

additional principal Advance under the Loan, payable upon demand, and shall bear interest at the rate applicable to the Loan.

     f.   **Actions.** Lender shall have the right to commence, appear in, or defend any action or proceeding purporting to affect the rights, duties, or liabilities of the parties to this Agreement, or the disbursement of funds from the Loan Fund. In connection with this right, Lender may incur and pay reasonable costs and expenses, including, but not limited to, attorneys' fees, for both trial and appellate proceedings. Borrower covenants to pay to Lender on demand all such expenses, together with interest from the date Lender incurs the expense at the rate specified in the Note, and Lender is authorized to disburse funds from the Loan Fund for such purposes.

13.   **Events of Default.** Each of the following shall constitute an Event of Default under this Agreement:

     a.   **Default on Indebtedness.** Failure of Borrower to make any payment when due on the Loan.

     b.   **Other Defaults.** Failure of Borrower to comply with or to perform when due any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents, or failure of Borrower to comply with or to perform any other term, obligation, covenant or condition contained in any other agreement between Lender and Borrower relating only to this Property.

     c.   **False Statements.** Any warranty, representation, or statement made or furnished to Lender by or on behalf of Borrower or any Guarantor under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

     d.   **Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

     e.   **Insolvency.** Insolvency of Borrower or appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

     f.   **Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower, any creditor of any Grantor against any collateral securing the indebtedness, or by any governmental agency. This includes a garnishment, attachment, or levy on or of any of Borrower's deposit accounts with Lender. However, nothing herein is intended to create cross-collateralization between the Loan herein and any other loans between Lender and Borrower which exist relating to other projects or property, but including the loan relating to site work on the subdivision containing this Property.

     g.   **Breach of Construction Contract.** The Improvements are not constructed in accordance with the Plans and Specifications or in accordance with the terms of the Construction Contract.

     h.   **Cessation of Construction.** Prior to the completion of construction of the Improvements and equipping of the Project, the construction of the Improvements or the equipping of the Project is abandoned or work thereon ceases for a period of more than ten (10) days for any reason, except for cessations beyond the control of Borrower, its contractors, subcontractors or suppliers (e.g., acts of any

Governmental Authority, acts of a public enemy, unusually severe weather, or fire not due to the negligence of Borrower, its contractors, subcontractors or suppliers), or the Improvements are not completed for purposes of final payment to the general contractor prior to the completion date represented by Borrower to Lender, except as may be extended with Lender's concurrence.

    i.    **Transfer of Property.** Sale, transfer, hypothecation, assignment, or conveyance of the Property or the Improvements or any portion thereof or interest therein by Borrower or any Grantor without Lender's prior written consent.

    j.    **Condemnation.** All or any material portion of the Property is condemned, seized, or appropriated without compensation, and Borrower does not within thirty (30) days after such condemnation, seizure, or appropriation, initiate and diligently prosecute appropriate action to contest in good faith the validity of such condemnation, seizure, or appropriation.

    14.    **Effect of an Event of Default; Remedies.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may, at its option, but without any obligation to do so, and in addition to any other right Lender may have, do any one or more of the following without notice to Borrower: (a) Cancel this Agreement; (b) Institute appropriate proceedings to enforce the performance of this Agreement; (c) Withhold further disbursement from the Loan Fund; (d) Expend Loan Fund necessary to remedy the default; (e) Take possession of the Project Property and continue construction of the Project; (f) Accelerate maturity of the Note and/or Indebtedness and demand payment of all sums due under the Note and/or Indebtedness; (g) Bring an action on the Note and/or Indebtedness; (h) Foreclose the Mortgage or Deed of Trust on the Property in any manner available under law; and (i) Exercise any other right or remedy which it has under the Note or Related Documents, or which is otherwise available at law or in equity or by statute.

    15.    **Completion of Improvements by Lender.** If Lender takes possession of the Property, it may take any and all actions necessary in its judgment to complete construction of the Improvements, including but not limited to making changes in the Plans and Specifications, work, or materials and entering into, modifying or terminating any contractual arrangements, subject to Lender's right at any time to discontinue any work without liability. If Lender elects to complete the Improvements, it will not assume any liability to Borrower or any other person for completing the Improvements or for the manner or quality of construction of the Improvements, and Borrower expressly waives any such liability. Borrower irrevocably appoints Lender as its attorney-in-fact, with full power of substitution, to complete the Improvements, at Lender's option, either in Borrower's name or in its own name. In any event, all sums expended by Lender in completing the construction of the Improvements will be considered to have been disbursed to Borrower and will be secured by the collateral for the Loan. Any such sums that cause the principal amount of the Loan to exceed the face amount of the Note will be considered to be an additional Loan to Borrower, bearing interest at the Note rate and being secured by the collateral. For these purposes, Borrower assigns to Lender all of its right, title and interest in and to the Project Documents; however Lender will not have any obligation under the Project Documents unless Lender expressly hereafter agrees to assume such obligations in writing. Lender will have the right to exercise any rights of Borrower under the Project Documents upon the occurrence of an Event of Default. All rights, powers, and remedies of Lender under this Agreement are cumulative and alternative, and are in addition to all rights which Lender may have under applicable law.

    16.    **Miscellaneous Provisions.** The following miscellaneous provisions are a part of this Agreement:

    a.    **Agency.** Nothing in this Agreement shall be construed to constitute the creation of a partnership or joint venture between Lender and Borrower or any contractor. Lender is not an agent or representative of Borrower. This Agreement does not create a contractual relationship with and shall not

be construed to benefit or bind Lender in any way with or create any contractual duties by Lender to any contractor, subcontractor, materialman, laborer, or any other person.

**b.    Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**c.    Applicable Law.** This Agreement has been delivered to Lender and accepted by Lender in the State of California. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of San Francisco County, the State of California. This Agreement shall be governed by and construed in accordance with the laws of the State of California.

**d.    Authority to File Notices.** Borrower appoints and designates Lender as its attorney-in-fact to file for record any notice that Lender deems necessary to protect its interest under this Agreement. This power shall be deemed coupled with an interest and shall be irrevocable while any sum or performance remains due and owing under any of the Related Documents.

**e.    Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**f.    Multiple Parties; Corporate Authority.** All obligations of Borrower under this Agreement shall be joint and several, and all references to Borrower shall mean each and every Borrower. This means that each of the persons signing below is responsible for all obligations in this Agreement.

**g.    Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loans to one or more purchasers. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy it may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loans and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loans irrespective of the failure or insolvency of any holder of any interest in the Loans. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**h.    Costs and Expenses.** Borrower agrees to pay upon demand all of Lender's out-of-pocket expenses, including, without limitation, (1) attorneys' fees, incurred in connection with the preparation, execution, enforcement and collection of this Agreement or in connection with the Loans made pursuant to this Agreement, and (2) construction representatives, accountants, or design professionals engaged to review progress of the Project or Borrower's application for draws. Lender may pay someone else to help collect the Loans and to enforce this Agreement; and Borrower will pay that amount. This

includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also will pay any court costs, in addition to all other sums provided by law.

i. **Prevailing Party.** Should any litigation be commenced between the parties herein or any other party bound by this Agreement concerning this Agreement or the rights and duties of any of them in relation thereto, the party prevailing in such litigation shall be entitled to, in addition to such other relief as may be granted, a reasonable sum as and for attorneys' fees in such litigation, which shall be determined by the Court in such litigation or in a separate action brought for that purpose.

j. **Entire Agreement.** This Agreement and the Related Documents constitute all of the agreements between the parties relating to the Project and supersede all other prior or concurrent oral or written agreements or understandings relating to the Project.

k. **Notices.** All notices required to be given under this Agreement shall be given in writing and shall be effective when actually delivered or when deposited in the United States mail, first class, postage prepaid, addressed to the party to whom the notice is to be given at the address shown above. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. To the extent permitted by applicable law, if there is more than one Borrower, notice to any Borrower will constitute notice to all Borrowers. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address(es).

l. **Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

m. **Survival.** All warranties, representations, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement shall be considered to have been relied upon by Lender and will survive the making of the Loan and delivery to Lender of the Related Documents, regardless of any investigation made by Lender or on Lender's behalf.

n. **Time is of the Essence.** Time is of the essence in the performance of this Agreement.

o.    **Waiver.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any obligations of Borrower or of any Grantor as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent in subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**DRAW PLAN.** See attached Exhibit "B".

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS CONSTRUCTION LOAN AGREEMENT, AND BORROWER AGREES TO ITS TERMS. THIS AGREEMENT IS DATED AS OF January 22, 2007.**

**BORROWER:**

_____    _____
Borrower    *Brenda Hickman*    Date

_____    _____
Borrower    Date

**LENDER:**

TRUST DEEDS INVESTMENTS, INC.

By: _____
PHILIP GOLDSTEIN, PRESIDENT

# EXHIBIT "C"

Recording Requested By
TRUST DEED INVESTMENTS, INC.
1255 POST STREET
SUITE 496
SAN FRANCISCO CA 94109

When Recorded Mail To
TRUST DEED INVESTMENTS, INC.
1255 POST STREET
SUITE 496
SAN FRANCISCO CA 94109

APN #

Space above this line for recorder's use

# CONSTRUCTION DEED OF TRUST
## ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

Loan No. 4218

THIS DEED OF TRUST (herein "Instrument") is made this date January 22, 2007, among the Trustor/Grantor, Brenda Hickman, an unmarried woman, whose address is 909 South Norfolk, San Mateo, CA 94411 (herein "Borrower"), TRUST DEED INVESTMENTS, INC. (herein "Trustee"), and the Beneficiary, TRUST DEED INVESTMENTS, INC., a California Corporation, C.F.L. License No. 6052536, 1255 Post Street, Suite 496, San Francisco, CA  94109 (herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in San Francisco County, State of California, which has the address of 473 Hill Street, San Francisco, CA 94114 ('Property Address'), described as follows: SEE EXHIBIT "A".

TOGETHER with all buildings, improvements and tenements now or hereafter erected on the property, and all heretofore or hereafter vacated alleys and streets abutting the property, and all easements, rights, appurtenances, rents (subject however to the assignment of rents to Lender herein), royalties, mineral, oil and gas rights and profits, water, water rights, and water stock appurtenant to the property, and all fixtures, machinery, equipment, engines, boilers, incinerators, building materials and appliances, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light; and all elevators, and related machinery and equipment, fire prevention and extinguishing apparatus, security equipment and dishwashers, disposals, awnings, storm windows, storm doors, screens, mirrors, cabinets, paneling, attached floor coverings, antennas and trees; all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the real property covered by this Instrument; and all of the foregoing, together with said property (or the leasehold estate in the event this Instrument is on a leasehold) are herein referred to as the "Property":

TO SECURE TO LENDER (a) the repayment of the indebtedness evidenced by Borrower's note dated January 22, 2007 (herein "Note") in the principal sum of U.S. $800,000.00, with interest thereon, and all renewals, extensions and modifications thereof; (b) the repayment of any future advances, with interest thereon, made by Lender to Borrower (herein "Future Advances"); (c) the performance of the covenants and agreements of Borrower contained in a Construction Loan Agreement between Lender and Borrower dated January 22, 2007, if any, as provided in paragraph 25 hereof; (d) the payment of all other sums, with interest thereon advanced in accordance herewith to protect the security of this Instrument; and (e) the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant, convey and assign the Property (and, if this instrument is on a leasehold, that the ground lease is in full force and effect without modification except as noted above and without default on the part of either lessor or lessee thereunder), and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

## UNIFORM COVENANTS.

Borrower and Lender covenant and agree as follows:

1. **PAYMENT OF PRINCIPAL AND INTEREST.** Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, any prepayment and late charges provided in the Note, and all other sums secured by this Instrument or any other obligation secured by a lien which is senior in priority to this Instrument.

2. **FUNDS FOR TAXES, INSURANCE AND OTHER CHARGES–Not Applicable.**

3. **APPLICATION OF PAYMENTS.** Unless applicable law provides otherwise, all payments received by Lender from Borrower under the Note or this Instrument shall be applied by Lender in the following order of priority: (i) any late charges (ii) amounts payable to Lender by Borrower under paragraph 2 hereof if applicable; (iii) interest payable on the Note; (iv) principal of the Note; (v) interest payable on advances made pursuant to paragraph 8 hereof; (vi) principal of advances made pursuant to paragraph 8 hereof; (vii) interest payable on any Future Advance, provided that if more than one Future Advance is outstanding, Lender may apply payments received among the amounts of interest payable on the Future Advances in such order as Lender, in Lender's sole discretion, may determine; (viii) principal of any Future Advance, provided that if more than one Future Advance is outstanding, Lender may apply payments received among the principal balances of the Future Advances in such order as Lender, in Lender's sole discretion, may determine; and (ix) any other sums secured by this Instrument in such order as Lender, at Lender's option, may determine; provided, however, that Lender may, at Lender's option, apply any sums payable pursuant to paragraph 8 hereof prior to interest on and principal of the Note, but such application shall not otherwise affect the order of priority or application specified in this paragraph 3.

4. **CHARGES; LIENS.** Borrower shall promptly discharge any lien which has, or may have, priority over or equality with, the lien of this Instrument, and Borrower shall pay, when due, the claims of all persons supplying labor or materials to or in connection with the Property. Without Lender's prior written permission, Borrower shall not allow any lien inferior to this Instrument to be perfected against the Property.

5. **HAZARD INSURANCE.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured by carriers at all times satisfactory to Lender against loss by fire, hazards included within the term "extended coverage", rent loss and such other hazards, casualties, liabilities and contingencies as Lender (and, if this Instrument is on a leasehold, the ground lease) shall require and in such amounts and for such periods as Lender shall require.

All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender. Lender shall have the right to hold the policies, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums. At least thirty days prior to the expiration date of a policy, Borrower shall deliver to Lender a renewal policy in form satisfactory to Lender.

In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to Lender. Borrower hereby authorizes and empowers Lender as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Lender's expenses incurred in the collection of such proceeds; provided however, that nothing contained in this paragraph 5 shall require Lender to incur any expense or take any action hereunder. Borrower further authorizes Lender, at Lender's option, (i) to hold the balance of such proceeds to be used to reimburse Borrower for the cost of reconstruction or repair of the Property if, in its sole discretion, Lender determines that its security will not be materially

impaired,  or (ii) to apply the balance of such proceeds to the payment of the sums secured by this Instrument, whether or not then due, in the order of application set forth in paragraph 3 hereof (subject, however, to the rights of the lessor under the ground lease if this Instrument is on a leasehold).

If the insurance proceeds are held by Lender to reimburse Borrower for the cost of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition or such other condition as Lender may approve in writing. Lender may, at Lender's option, condition disbursement of said proceeds on Lender's approval of plans and specifications of an architect satisfactory to Lender, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen and such other evidence of costs, percentage completion of construction, application of payments, and satisfaction of liens as Lender may reasonably require. If the insurance proceeds are applied to the payment of the sums secured by this Instrument, any such application of proceeds to principal shall not extend or postpone the due dates of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amounts of such installments. If the Property is sold pursuant to paragraph 27 hereof or if Lender acquires title to the Property, Lender shall have all of the right, title and interest of Borrower in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Property prior to such sale or acquisition.

If Borrower obtains earthquake, flood, or any other hazard insurance or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall : (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. PRESERVATION AND MAINTENANCE OF PROPERTY; LEASEHOLDS.** Borrower (i) shall not commit waste or permit impairment or deterioration of the Property, (ii) shall not abandon the Property, (iii) shall restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, in the event of any damage, injury or loss thereto, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair, (iv) shall keep the Property, including improvements, fixtures, equipment, machinery and appliances thereon, in good repair and shall replace fixtures, equipment, machinery and appliances on the Property when necessary to keep such items in good repair, (v) shall comply with all laws, ordinances, regulations and requirements of any governmental body which are applicable to the Property, (vi) shall provide, if it is a multifamily dwelling, for professional management of the Property by a residential rental property manager satisfactory to Lender pursuant to a contract approved by Lender in writing, unless such requirement shall be waived by Lender in writing, (vii) shall generally operate and maintain the Property in a manner to ensure maximum rentals, if it is a multifamily dwelling, and (viii) shall give notice in writing to Lender of and, unless otherwise directed in writing by Lender, appear in and defend any action or proceeding purporting to affect the Property, the security of this Instrument or the rights or powers of Lender. Neither Borrower nor any tenant or other person shall remove, demolish or alter any improvement now existing or hereafter erected on the Property or any fixture, equipment, machinery or appliance in or on the Property except when incident to the replacement of fixtures, equipment, machinery and appliances with items of like kind.

If this Instrument is on a leasehold, Borrower (i) shall comply with the provisions of the ground lease, (ii) shall give immediate written notice to Lender of any default by lessor under the ground lease or of any notice received by Borrower from such lessor of any default under the ground lease by Borrower, (iii) shall exercise any option to renew or extend the ground lease and give written confirmation thereof to Lender within thirty days after such option becomes exercisable, (iv) shall give immediate written notice to Lender of the commencement of any remedial proceedings under the ground lease by any party thereto and, if required by Lender, shall permit Lender as Borrower's attorney-in-fact to control and act for Borrower in any such remedial proceedings and (v) shall within thirty days after request by Lender obtain from the lessor under the ground lease and deliver to Lender the lessor's estoppel certificate required thereunder, if any. Borrower hereby expressly transfers and assigns to Lender the benefit of all covenants contained in the ground lease, whether or not such covenants run with the land, but Lender shall have no liability with respect to such covenants nor with respect to any other covenants contained in the ground lease.

Borrower shall not surrender the leasehold estate and interests herein conveyed nor terminate or cancel the ground lease creating said estate and interests, and Borrower shall not, without the express written consent of Lender, alter or amend said ground lease. Borrower covenants and agrees that there shall not be a merger of the ground lease, or of the leasehold estate created thereby, with the fee estate covered by the ground lease by reason of said leasehold estate or said fee estate, or any part

of either, coming into common ownership, unless Lender shall consent in writing to such merger; if Borrower shall acquire such fee estate, then this Instrument shall simultaneously and without further action be spread so as to become a lien on such fee estate.

**7. USE OF PROPERTY.** Unless required by applicable law or unless Lender has otherwise agreed in writing, Borrower shall not allow changes in the use for which all or any part of the Property was intended at the time this Instrument was executed. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Property without Lender's prior written consent.

**8. PROTECTION OF LENDER'S SECURITY.** If Borrower fails to perform any of the covenants and agreements contained in this Instrument, or if any action or proceeding is commenced which affects the Property or title hereto or the interest of Lender therein, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such action as Lender deems necessary, in its sole discretion, to protect Lender's interest, including, but not limited to, (i) disbursement of attorney's fees, regardless of whether any action or proceeding is filed , (ii) costs for entry upon the Property to inspect its condition, or to inspect, supervise, or do repairs or maintenance, (iii) procurement of satisfactory insurance as provided in paragraph 5 hereof, (iv) if this Instrument is on a leasehold, exercise of any option to renew or extend the ground lease on behalf of Borrower and the curing of any default of Borrower in the terms and conditions of the ground lease, (v) to pay taxes, senior liens or other liens, and (vi) any costs and expenses to investigate or implement any workout, modification, compromise, or total or partial refinancing of the indebtedness.

Any amounts disbursed by Lender pursuant to this paragraph 8, with interest thereon, shall become additional indebtedness of Borrower secured by this Instrument. Unless Borrower and Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from Borrower of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law. Borrower hereby covenants and agrees that Lender shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the indebtedness secured hereby. Nothing contained in this paragraph 8 shall require Lender to incur any expense or take any action hereunder.

**9. INSPECTION.** Lender may make or cause to be made reasonable entries upon and inspections of the Property.

**10. BOOKS AND RECORDS.** Borrower shall keep and maintain at all times at Borrower's address stated below, or at such other place as Lender may approve in writing, complete and accurate books of account and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases and other instruments which affect the Property. Such books, records, contracts, leases and other instruments shall be subject to examination and inspection at any reasonable time by Lender. Upon Lender's request, Borrower shall furnish to Lender, within one hundred twenty days after the end of each fiscal year of Borrower, a balance sheet, a statement of income and expenses of the Property and a statement of changes in financial position, each in reasonable detail and certified by Borrower and, if Lender shall require, by an independent certified public accountant. Borrower shall furnish, together with the foregoing financial statements and at any other time upon Lender's request, a rent schedule for the Property, certified by Borrower, showing the name of each tenant, and for each tenant, the space occupied, the lease expiration date, the rent payable and the rent paid.

**11. CONDEMNATION.** Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Lender in writing. Borrower authorizes Lender, at Lender's option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Lender subject, if this Instrument is on a leasehold, to the rights of lessor under the ground lease.

Borrower authorizes Lender to apply such awards, payments, proceeds or damages, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to restoration or repair of the Property or to payment of the sums secured by this Instrument, whether or not then due, in the order of application set forth in paragraph 3 hereof, with the balance, if any, to Borrower. Unless Borrower and Lender otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amount of such installments. Borrower agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Lender may require.

**12. BORROWER AND LIEN NOT RELEASED.** From time to time, Lender may, at Lender's option, without giving notice to or obtaining the consent of Borrower, Borrower's successors or assigns or of any junior lienholder or guarantors, without liability on Lender's part and notwithstanding Borrower's breach of any covenant or agreement of Borrower in this Instrument, extend the time for payment of said indebtedness or any part thereof, reduce the payments thereon, release anyone liable on any of said indebtedness, accept a renewal note or notes therefor, modify the terms and time of payment of said indebtedness, release from the lien of this Instrument any part of the Property, take or release other or additional security, reconvey any part of the Property, consent to any map or plan of the Property, consent to the granting of any easement, join in any extension or subordination agreement, and agree in writing with Borrower to modify the rate of interest or period of amortization of the Note or change the amount of the monthly installments payable thereunder. Any actions taken by Lender pursuant to the terms of this paragraph 12 shall not affect the obligation of Borrower or Borrower's successors or assigns to pay the sums secured by this Instrument and to observe the covenants of Borrower contained herein, shall not affect the guaranty of any person, corporation, partnership or other entity for payment of the indebtedness secured hereby, and shall not affect the lien or priority of lien hereof on the Property. Borrower shall pay Lender a reasonable service charge, together with such title insurance premiums and attorney's fees as may be incurred at Lender's option, for any such action if taken at Borrower's request.

**13. FORBEARANCE BY LENDER NOT A WAIVER.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by Lender of payment of any sum secured by this Instrument after the due date of such payment shall not be a waiver of Lender's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Instrument; nor shall Lender's receipt of any awards, proceeds or damages under paragraphs 5 and 11 hereof operate to cure or waive Borrower's default in payment of sums secured by this Instrument.

**14. ESTOPPEL CERTIFICATE.** Borrower shall within ten days of a written request from Lender furnish Lender with a written statement, duly acknowledged, setting forth the sums secured by this Instrument and any right of set-off, counterclaim or other defense which exists against such sums and the obligations of this Instrument.

**15. UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.** This Instrument is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and Borrower hereby grants Lender a security interest in said items. Borrower agrees that Lender may file this Instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Instrument or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, upon Lender's request, any financing statements, as well as extensions, renewals and amendments thereof, and reproductions of this Instrument in such form as Lender may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto.

Upon Borrower's breach of any covenant or agreement of Borrower contained in this Instrument, including the covenants to pay when due all sums secured by this Instrument, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in paragraph 27 of this Instrument as to such items. In exercising any of said remedies, Lender may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in paragraph 27 of this Instrument.

**16. LEASES OF THE PROPERTY.** As used in this paragraph 16, the word "lease" shall mean "sublease" if this Instrument is on a leasehold. Borrower shall comply with and observe Borrower's obligations as landlord under all leases of the Property or any part thereof. Borrower will not lease any portion of the Property for non-residential use except with the prior written approval of Lender. Borrower, at Lender's request, shall furnish Lender with executed copies of all leases now existing or hereafter made of all or any part of the Property, and all leases now or hereafter entered into will be in form and substance subject to the approval of Lender. All leases of the Property shall specifically provide that such leases are subordinate to this Instrument; that the tenant attorns to Lender, such attornment to be effective upon Lender's acquisition of title to the Property; that the tenant agrees to execute such further evidences of attornment as Lender may from time to time request; that the attornment of the tenant shall not be terminated by foreclosure; and that Lender may, at Lender's option, accept or reject such attornments. Borrower shall not, without Lender's written consent, execute, modify, surrender or terminate, either orally or in writing, any lease now existing or hereafter made of all or any part of the Property providing for a term of three years or more, permit an assignment or sublease of such a lease without Lender's written consent, or request or consent to the subordination of any lease of all or any part of the Property to any lien subordinate to this Instrument. If Borrower becomes aware that any tenant proposes to do, or is doing, any act or thing which may give rise to any right of set-off against rent, Borrower shall (i) take such steps as shall be reasonably calculated to prevent the accrual of any right to a set-off against rent, (ii) notify Lender thereof and of the amount of said set-off, and (iii) within ten days after such accrual, reimburse the tenant who shall have acquired such right to set-off or take such other steps as shall effectively discharge such set-off and as shall assure that rents thereafter due shall continue to be payable without set-off or deduction.

Upon Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all leases now existing or hereafter made of all or any part of the Property and all security deposits made by tenants in connection with such leases of the Property. Upon assignment by Borrower to Lender of any leases of the Property, Lender shall have all of the rights and powers possessed by Borrower prior to such assignment and Lender shall have the right to modify, extend or terminate such existing lease and to execute new leases, in Lender's sole discretion.

**17. REMEDIES CUMULATIVE.** Each remedy provided in this Instrument is distinct and cumulative to all other rights or remedies under this Instrument or afforded by law or equity, and may be exercised concurrently, independently, or successively, in any order whatsoever.

**18. ACCELERATION IN CASE OF BORROWER'S INSOLVENCY.** If Borrower shall voluntarily file a petition under the Federal Bankruptcy Act, as such Act may from time to time be amended, or under any similar or successor Federal statute relating to bankruptcy, insolvency, arrangements or reorganizations, or under any state bankruptcy or insolvency act, or file an answer in an involuntary proceeding admitting insolvency or inability to pay debts, or if Borrower shall fail to obtain a vacation or stay of involuntary proceedings brought for the reorganization, dissolution or liquidation of Borrower, or if Borrower shall be adjudged a bankrupt, or if a trustee or receiver shall be appointed for Borrower or Borrower's property, or if the Property shall become subject to the jurisdiction of a Federal bankruptcy court or similar state court, or if Borrower shall make an assignment for the benefit of Borrower's creditors, or if there is an attachment, execution or other judicial seizure of any portion of Borrower's assets and such seizure is not discharged within ten days, then Lender may, at Lender's option, declare all of the sums secured by this Instrument to be immediately due and payable without prior notice to Borrower, and Lender may invoke any remedies permitted by paragraph 27 of this Instrument. Any attorney's fees and other expenses incurred by Lender in connection with Borrower's bankruptcy or any of the other aforesaid events shall be additional indebtedness of Borrower secured by this Instrument pursuant to paragraph 8 hereof.

**19. TRANSFERS OF THE PROPERTY OR BENEFICIAL INTERESTS IN BORROWER; ASSUMPTION.** On sale or transfer of (i) all or any part of the Property, or any interest therein, or (ii) beneficial interests in Borrower (if Borrower is not a natural person or persons but is a corporation, partnership, trust or other legal entity), Lender may, at Lender's option, declare all of the sums secured by this Instrument to be immediately due and payable, and Lender may invoke any remedies permitted by paragraph 27 of this Instrument. This option shall not apply in the event of the following:

(a) transfers by devise or descent or by operation of law upon the death of a joint tenant or a partner;

(b) sales or transfers when the transferee's creditworthiness and management ability are satisfactory to Lender and the transferee has executed, prior to the sale or transfer, a written assumption agreement containing such terms as Lender may require, including, if required by Lender, an increase in the rate of interest payable under the Note or an assumption fee to be determined by Lender;

(c) the grant of a leasehold interest in a part of the Property of three years or less (or such longer lease term as Lender may permit by prior written approval) not containing an option to purchase (except any interest in the ground lease, if this Instrument is on a leasehold);

(d) sales or transfers of beneficial interests in Borrower, provided that such sales or transfers, together with any prior sales or transfers of beneficial interests in Borrower, but excluding sales or transfers under paragraphs (a) and (b) above, do not result in more than 49% of the beneficial interests in Borrower having been sold or transferred since commencement of interest payments under the Note; and

(e) sales or transfers of fixtures or any personal property pursuant to the first paragraph of paragraph 6 hereof.

**20. NOTICE.** Except for any notice required under applicable law to be given in another manner, any notice to Borrower provided for in this Instrument or in the Note shall be given by mailing such notice by certified mail addressed to Borrower at Borrower's address stated above or at such other address as Borrower may designate by notice to Lender as provided herein, and any notice to Lender shall be given by certified mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Instrument or in the Note shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**21. SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; AGENTS; CAPTIONS.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 19 hereof. All covenants and agreements of Borrower shall be joint and several. In exercising any rights hereunder or taking any actions provided for herein, Lender may act through its employees, agents or independent contractors, as authorized by Lender. The captions and headings of the paragraphs of this Instrument are for convenience only and are not to be used to interpret or define the provisions hereof.

**22. DEED OF TRUST; GOVERNING LAW; SEVERABILITY.** This form of instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property and related fixtures and personal property. This Instrument shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision of this Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Instrument or the Note which can be given effect without the conflicting provisions, and to this end the provisions of this Instrument and the Note are declared to be severable. In the event that any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any charge provided for in this Instrument or in the Note, whether considered separately or together with other charges levied in connection with this Instrument and the Note, violates such law, and Borrower is entitled to the benefit of such law, such charge is hereby reduced to the extent necessary to eliminate such violation. The amounts, if any, previously paid to Lender in excess of the amounts payable to Lender pursuant to such charges as reduced shall be applied by Lender to reduce the principal of the indebtedness evidenced by the Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all indebtedness which is secured by this Instrument or evidenced by the Note and which constitutes interest, as well as all other charges levied in

connection with such indebtedness which constitute interest, shall be deemed to be allocated and spread over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest computed thereby is uniform throughout the stated term of the Note.

**23. WAIVER OF STATUTE OF LIMITATIONS.** Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce the Note or any other obligation secured by this Instrument.

**24. ORDER OF REMEDIES AND SATISFACTION OF INDEBTEDNESS; WAIVER OF MARSHALING.** Notwithstanding the existence of any other security interests in the Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. Lender shall have the right to determine the order in which any or all portions of the indebtedness secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein. Borrower, any party who consents to this Instrument, and any party who now or hereafter acquires a security interest in the Property and who has actual or constructive notice hereof hereby waive any and all right to require the marshaling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

**25. CONSTRUCTION LOAN PROVISIONS.** Borrower agrees to comply with the covenants and conditions of the Construction Loan Agreement, if any, which is hereby incorporated by reference in and made a part of this Instrument. All advances made by the Lender pursuant to the Construction Loan Agreement shall be indebtedness of Borrower secured by this Instrument, and such advance may be obligatory as provided in the Construction Loan Agreement. All sums disbursed by Lender prior to completion of the improvements to protect the security of this Instrument up to the principal amount of the Note shall be treated as such disbursements pursuant to the Construction Loan Agreement. All such sums shall bear interest from the date of disbursement at the rate stated in the Note, unless collection from Borrower of interest at such rate would be contrary to applicable law in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law and shall be payable upon notice from Lender to Borrower requesting payment therefor.

From time to time as Lender deems necessary to protect Lender's interests, Borrower shall, upon request of Lender, execute and deliver to Lender, in such form as Lender shall direct, assignments of any and all rights or claims which relate to the construction of the Property and which Borrower may have against any party supplying or who has supplied labor, materials or services in connection with construction of the Property. In case of breach by Borrower of the covenants and conditions of the Construction Loan Agreement, Lender, at Lender's option, with or without entry upon the Property, (i) may invoke any of the rights or remedies provided in the Construction Loan Agreement, (ii) may accelerate the sums secured by this Instrument and invoke those remedies provided in paragraph 27 hereof, or (iii) may do both. If, after the commencement of interest payments due under the Note, the Note and this Instrument are sold by Lender, from and after such sale the Construction Loan Agreement shall cease to be a part of this Instrument and Borrower shall not assign any right of set-off, counterclaim or other claim or defense arising out of or in connection with the Construction Loan Agreement against the obligations of the Note and this Instrument.

**26. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues of the Property, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Property, regardless of to whom the rents and revenues of the Property are payable. Borrower hereby authorizes Lender or Lender's agents to collect the aforesaid rents and revenues and hereby agrees to direct each tenant of the Property to pay such rents to Lender or Lender's agents; provided, however, that prior to written notice given by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower, to apply the rents and revenues so collected to the sums secured by this Instrument in the order provided in paragraph 3 hereof with the balance, so long as no such breach has occurred, to the account of Borrower, it being intended by Borrower and Lender that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only. Upon delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, and without the necessity of Lender entering upon and taking and maintaining full control of the Property in

person, by agent or by a court appointed receiver, Lender shall immediately be entitled to possession of all rents and revenues of the Property as specified in this paragraph 26 as the same become due and payable, including but not limited to rents then due and unpaid, and all such rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Lender only; provided, however, that the written notice by Lender to Borrower of the breach by Borrower shall contain a statement that Lender exercises its rights to such rents. Borrower agrees that commencing upon delivery of such written notice of Borrower's breach by Lender to Borrower, each tenant of the Property shall make such rents payable to and pay such rents to Lender or Lender's agents on Borrower's or Lender's written demand to each tenant therefor, delivered to each tenant personally, by mail or by delivering such demand to each rental unit, without any liability on the part of said tenant to inquire further as to the existence of a default by Borrower.

Borrower hereby covenants that Borrower has not executed any prior assignment of said rents, that Borrower has not performed, and will not perform, any act or has not executed, and will not execute, any instrument which would prevent Lender from exercising its rights under this paragraph 26, and that at the time of execution of this Instrument there has been no anticipation or prepayment of any of the rents of the Property for more than two months prior to the due dates of such rents. Borrower covenants that Borrower will not hereafter collect or accept payment of any rents of the Property more than two months prior to the due dates of such rents. Borrower further covenants that Borrower will execute and deliver to Lender such further assignments of rents and revenues of the Property as Lender may from time to time request.

Upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Lender may in person, by agent or by a court appointed receiver, regardless of the adequacy of Lender's security, enter upon and take and maintain full control of the Property in order to perform all acts necessary and appropriate for the operation and maintenance thereof including, but not limited to, the execution, cancellation or modification of leases, the collection of all rents and revenues of the Property, the making of repairs to the Property and the execution or termination of contracts providing for the management or maintenance of the Property, all on such terms as are deemed best to protect the security of this Instrument. In the event Lender elects to seek the appointment of a receiver for the Property upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Borrower hereby expressly consents to the appointment of such receiver. Lender or the receiver shall be entitled to receive a reasonable fee for so managing the Property.

All rents and revenues collected subsequent to delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument shall be applied first to the costs, if any, of taking control of and managing the Property and collecting the rents, including, but not limited to, attorneys' fees, receivers' fees, premiums on receivers' bonds, costs of repairs to the Property, premiums on insurance policies, taxes, assessments and other charges on the Property, and the costs of discharging any obligation or liability of Borrower as lessor or landlord of the Property, and then to the sums secured by this Instrument. Lender or the receiver shall have access to the books and records used in the operation and maintenance of the Property and shall be liable to account only for those rents actually received. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Property, by reason of anything done or left undone by Lender under this paragraph 26.

If the rents of the Property are not sufficient to meet the costs, if any, of taking control of and managing the Property and collecting the rents, any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by this Instrument pursuant to paragraph 8 hereof. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law.

Any entering upon and taking and maintaining of control of the Property by Lender or the receiver and any application of rents as provided herein shall not cure or waive any default hereunder or invalidate any other right or remedy of Lender under applicable law or provided herein. This assignment of rents of the Property shall terminate at such time as this Instrument ceases to secure indebtedness held by Lender.

**NON-UNIFORM COVENANTS.**

Borrower and Lender further covenant and agree as follows:

## 27. DEFAULT; RIGHTS AND REMEDIES; TRUSTEE

**A. DEFAULT.** Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Deed of Trust:

(1) **Default on Indebtedness.** Failure of Trustor to make any payment when due on the indebtedness secured by this Instrument ("Indebtedness").

(2) **Default on Other Payments.** Failure of Trustor within the time required by this Instrument to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

(3) **Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Instrument, the Note or in any of the other agreements between Trustor and Lender relating to this Instrument and the indebtedness secured hereunder, including without limitation, any applicable Construction Loan Agreement ("Related Documents").

(4) **Breaches.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Trustor under this Instrument, the Note or the Related Documents is, or at the time made or furnished was, false in any material respect.

(5) **Insolvency.** The insolvency of Trustor, appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor, or the dissolution or termination of Trustor's existence as a going business (if Trustor is a business). Except to the extent prohibited by federal law or California law, the death of Trustor (if Trustor is an individual) also shall constitute an Event of Default under this Instrument.

(6) **Foreclosure, Forfeiture, etc.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any of the Property. However, this subsection shall not apply in the event of a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the foreclosure or forfeiture proceeding, provided that Trustor gives Lender written notice of such claim and furnishes reserves or a surety bond for the claim satisfactory to Lender.

(7) **Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

(8) **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or such Guarantor dies or becomes incompetent or any Guarantor revokes any guaranty of the Indebtedness.

**B. RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Trustee or Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**(1) Foreclosure by Sale.** Upon an Event of Default under this Instrument, Beneficiary (Lender) may declare the entire Indebtedness secured by this Instrument immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all unpaid sums secured by this Instrument in such order as Beneficiary, in Beneficiary's sole discretion, directs, with accrued interest at the amount established under the Note or, if less, such amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**(2) Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclosure by judicial foreclosure in accordance with and to the full extent provided by California Law.

**(3) Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (a) pay a reasonable rental for the use of the Property, or (b) vacate the Property immediately upon the demand of the Lender.

**(4) Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Instrument or the Note or by law.

**(5) Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Instrument, Lender shall be entitled to recover reasonable attorneys' fees incurred in the trial court and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Lender which in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of expenditure until repaid. Actions shall include actions in court, any other enforcement action, arbitration, and Lender's participation in any other alternative dispute resolution. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees whether or not there is a lawsuit, including attorneys' fees and costs for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), any action between and among claimants to the title and/or possessions of the real property where Lender is named as a party regardless of whether any claimant disputes Lender's interest, appeals and any anticipated post-judgment collection services, the cost of searching records obtaining title reports (including foreclosure reports), surveyors' reports, inspection fees, appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**(6) Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**C. POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust.

**(1) Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**(2) Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**(3) Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**28. RECONVEYANCE.** Upon payment of all sums secured by this Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Instrument and all notes evidencing indebtedness secured by this Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled thereto. Such person or persons shall pay Trustee's reasonable costs incurred in so reconveying the Property.

**29. SUBSTITUTE TRUSTEE.** Lender, at Lender's option, may from time to time, by an instrument in writing, appoint a successor trustee to any Trustee appointed hereunder, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. Said

instrument shall contain the name of the original Lender, Trustee and Borrower hereunder, the book and page where this Instrument is recorded, and the name and address of the successor trustee. If notice of default has been recorded, this power of substitution cannot be exercised until after the costs, fees and expenses of the then acting Trustee have been paid to such Trustee who shall endorse receipt thereof upon such instrument of substitution. The procedure herein provided for substitution of trustee shall govern to the exclusion of all other provisions for substitution, statutory or otherwise.

30. **REQUEST FOR NOTICES.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower at Borrower's address stated above.

31. **STATEMENT OF OBLIGATION.** Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California

32. **SPOUSE'S SEPARATE PROPERTY.** Any Borrower who is a married person expressly agrees that recourse may be had against his or her separate property.

**Borrower and Lender further covenant and agree as follows:**

33. **RIDERS TO THIS SECURITY INSTRUMENT.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

34. **MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

A. **Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

B. **Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

C. **Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

E. **Applicable Law. This Deed of Trust has been delivered to Lender and accepted by Lender in the State of California. This Deed of Trust shall be governed by and construed in accordance with the laws of the State of California.**

F. **Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

G. **Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**H. Multiple Parties; Corporate Authority.** All obligations of Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor. This means that each of the persons signing below is responsible for all obligations in this Deed of Trust.

**I. Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of the Deed of Trust in all other respects shall remain valid and enforceable.

**J. Successors and Assigns.** Subject to the limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the indebtedness by way of forbearance or extension without releasing Trustor from the obligations of the Deed of Trust or liability under the indebtedness.

**K. Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**L. Waivers and Consents.** Lender shall not be deemed to have waived any rights under this Deed of Trust (or under the Related Documents) unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Deed of Trust shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or any of Trustor's obligations as to any future transactions. Whenever consent by Lender is required in this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants by contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

---

| Borrower   *Brenda Hickman*                    Date | Borrower                                      Date |

State of California
County of
On                                    before me,                                    , personally appeared

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) subscribed to the within instrument and acknowledged to me that                    executed the same in                    authorized capacity(ies), and that by                    signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

---

Signature                                                                 (Seal)

# RIDER TO DEED OF TRUST

**APPRAISAL AND PROPERTY VALUATION COSTS.** Trustor acknowledges that Beneficiary has a legitimate business need to remain apprised of the value of the real property (the "Property") described in the foregoing Deed of Trust and, in order to keep its information on the value of the property current, Beneficiary or Trustee from time to time in its sole discretion may order a valuation of the Property. Trustor shall cooperate in allowing Beneficiary or Trustee or its agents reasonable access to the Property for the purposes of performing any such valuation, whether it is in the form of an appraisal, reappraisal, updated appraisal, property evaluation, or any other method of valuing the Property. Trustor shall pay Beneficiary or Trustee, on the next Note payment due date which is at least ten (10) Business Days after Beneficiary's or Trustee's demand, the cost of a maximum of one such valuation annually.

**MAINTENANCE OF LOAN-TO-VALUE RATIO.** Borrower hereby covenants and agrees that, throughout the term of the Loan, the then outstanding principal balance of the Loan shall not exceed the percentage of the original loan to the fair market value of the Property (the "Loan-To-Value Ratio"). Trustee may, at any time and from time to time, determine the fair market value of the Property by appraisal, using an appraiser or appraisers reasonably selected by Trustee. If, as a result of any such appraisal, the Trustee determines that the Loan-To-Value Ratio exceeds the original Loan-To-Value Ratio, the Borrower shall, within thirty (30) days after receipt of written notice by Trustee accompanied by a copy of any such appraisal, pay the amount stated in such notice as being the amount necessary to reestablish the Loan to Value Ratio at the original loan percentage. Borrower's failure to make payment within the thirty (30) day period shall be deemed a material default under this Agreement.

**BORROWER'S INITIALS:**

Brenda Hickman

ORDER NO. : 0224009660-NS

# EXHIBIT A

The land referred to is situated in the County of SAN FRANCISCO, City of SAN FRANCISCO, State of California, and is described as follows:

BEGINNING at a point on the Southerly line of Hill Street, distant thereon 110 feet Easterly from the Easterly line of Noe Street; running thence Easterly along the Southerly line of Hill Street 25 feet; thence at a right angle Southerly 114 feet; thence at a right angle Westerly 25 feet; and thence at a right angle Northerly 114 feet to the Southerly line of Hill Street and the point of beginning.

BEING a portion of Mission Block No. 109.

APN: Lot 038, Block 3621

# EXHIBIT "D"

 **REPUBLIC TITLE COMPANY**

265 Montgomery Street • San Francisco CA • 94104 • (415) 421-9770 • FAX (415) 788-4237

Brenda Hickman

Date: January 25, 2007
Escrow No.: 0224009650-NS
Escrow Officer: Nick Shanta
Closing Date: 1/25/2007

Property: 473 Hill Street, San Francisco, CA 94114-2918

### Borrower's Closing Statement

| Item | | Debits | Credits |
|---|---|---|---|
| New 1st loan from Trust Deed Investments, Inc. | | | 800,000.00 |
| Processing Fee | | 100.00 | |
| Document Preparation Fee | | 1,500.00 | |
| Interest Reserve | | 118,000.00 | |
| Funds retained by lender for future draws | | 175,286.51 | |
| Commission | | 40,000.00 | |
| Loan payoff to Preferred Financial Group, Inc. ($329,994.97) | | | |
| Current Principal | | 322,285.77 | |
| Interest 01/26/07 through 01/27/07; 1 day @ $89.52 | | | 89.52 |
| Interest from 12/1/06 thru 1/26/07 | | 7,698.72 | |
| Demand Fee | | 100.00 | |
| signing fee to TL Signing Service, Inc. | | 150.00 | |
| Foundation work to Stephen Stack | | 20,000.00 | |
| Wages to Stephen Stack | | 9,240.00 | |
| Reimbursement for materials to Stephen Stack | | 14,509.13 | |
| Permits & Inspections to Stephen Stack | | 1,108.00 | |
| Plumbing work to Excellent Plumbing | | 25,000.00 | |
| Glass work to Celtic Glass | | 2,580.00 | |
| Engineer work to A & J Designs Structural Engineers | | 2,350.00 | |
| Heating work to Guy Kubowitz Heating | | 10,000.00 | |
| Architect work to Tom Davick - Architect | | 1,250.00 | |
| Wages to Francis Lannane | | 3,120.00 | |
| Roofing work to Kang's Roofing Co., Inc. | | 1,500.00 | |
| Brokerage Commission to The Haskell Properties | | 40,000.00 | |
| R.E. Taxes (Lot 038; Block 3621) | | 887.29 | |
| All 2006-2007 | 845.04 | | |
| Penalty | 42.25 | | |
| Escrow Fees | | 843.60 | |
| Additional Charges | | 350.00 | |
| Loan Edoc/Processing Fee | 50.00 | | |
| Wire Service Fee | 50.00 | | |
| Overnight Service Fee | 50.00 | | |
| Doc Prep Deed | 100.00 | | |
| Doc Prep Indemnity Agreement | 100.00 | | |
| Notary Fees | | 50.00 | |
| ALTA Loan Policy | | 1,802.00 | |
| Endorsements: | | | |
| Form 8.1 Environmental Protection Lien | | 25.00 | |
| 122 Priority to Advance Over Inter | | 263.50 | |
| 100 Restrictions, etc., 116 Designation of Improvements, L | | 0.00 | |
| Recording Fees | | 90.00 | |
| Deed | 18.00 | | |
| Deed of Trust | 54.00 | | |
| Deed | 18.00 | | |
| Due To Borrower | | | 0.00 |

Page 1

NS/ab



# OLD REPUBLIC TITLE COMPANY

265 Montgomery Street • San Francisco CA • 94104 • (415) 421-8770 • FAX (415) 788-4237

Brenda Hickman

Date: January 23, 2007
Escrow No.: 0224009660-NS
Escrow Officer: Nick Shanta
Closing Date: 1/25/2007

Property: 473 Hill Street, San Francisco, CA 94114-2918

## Borrower's Estimated Closing Statement

| Item | | Debits | Credits |
|---|---|---|---|
| Recording Fees | | 90.00 | |
| Deed | 18.00 | | |
| Deed of Trust | 54.00 | | |
| Deed | 18.00 | | |
| Due To Borrower (est.) | | 0.00 | |
| Total | | $800,089.52 | $800,089.52 |

Brenda Hickman

NS/ab

# EXHIBIT "E"

TRUST DEED INVESTMENTS, INC.
The Mortgage Office
Trust Account Register

Date: 5/20/2008
Time: 02:24 PM
Page: 1

Trust 1 City National Bank
4216-Brenda Hickman
City National Bank
0450013587

| Received Date | Check# or Reference | Source or Reference | From Whom Received or To Whom Paid | Clr | Amount Paid Out | Amount Received | Daily Balance |
|---|---|---|---|---|---|---|---|
| | | | | | | | 0.00 |
| | | | Balance Forward | | | | -12,500.00 |
| 09/11/07 | 10312 | | Brenda Hickman | R | 12,500.00 | 0.00 | -12,500.00 |
| 09/11/07 | 10313 | | Brenda Hickman & | R | | | -17,000.00 |
| 09/11/07 | 10314 | | Brenda Hickman & | R | 4,500.00 | | -25,000.00 |
| 09/11/07 | 10315 | | Brenda Hickman & Manual Jimenez | R | 8,000.00 | 25,000.00 | 0.00 |
| 09/11/07 | FUNDING | | Trust Deed Investments, Inc. | R | | | -10,000.00 |
| 10/31/07 | 10323 | | Brenda Hickman | R | 10,000.00 | 10,000.00 | 0.00 |
| 10/31/07 | FUNDDRAW | | Philip Goldstein | R | | | -21,750.00 |
| 11/19/07 | 10326 | | Brenda Hickman | R | 21,750.00 | 21,750.00 | 0.00 |
| 11/19/07 | LOANDRAW | | Philip Goldstein | R | | | |

                                                    56,750.00    56,750.00

(9) End of Report



monies paid out

source of money paid out

# EXHIBIT "F"

## TRUST DEED IN / MENTS, INC.

| Date Received | Date Due | Reference | Payment Code | Total Amount Received | Applied To Interest | Applied To Principal | Applied To Late Charges | Applied To Trust | Prepayment Penalty | Charges Principal | Charges Interest | Fees Paid To Broker |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/07/2007 | 02/01/2007 | ODODAYSNT | RegPmt | $0.00 | $1,643.31 | $0.00 | $0.00 | -$1,643.31 | $0.00 | $0.00 | $0.00 | $0.00 |
| 03/09/2007 | 03/01/2007 | PAYMENT | RegPmt | $0.00 | $5,248.03 | $0.00 | $0.00 | -$5,248.03 | $0.00 | $0.00 | $0.00 | $0.00 |
| 04/04/2007 | 04/01/2007 | PAYMENT | RegPmt | $0.00 | $6,248.03 | $0.00 | $0.00 | -$5,248.03 | $0.00 | $0.00 | $0.00 | $0.00 |
| 04/25/2007 | 04/28/2007 | | Manual | $0.00 | $0.00 | -$19,978.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 05/04/2007 | 05/01/2007 | PAYMENT | RegPmt | $0.00 | $6,261.22 | $0.00 | $0.00 | -$5,261.22 | $0.00 | $0.00 | $0.00 | $0.00 |
| 06/11/2007 | 05/09/2007 | PAYMENT | RegPmt | $0.00 | $5,446.80 | $0.00 | $0.00 | -$5,446.80 | $0.00 | $0.00 | $0.00 | $0.00 |
| 07/05/2007 | 07/01/2007 | PAYMENT | RegPmt | $0.00 | $5,446.80 | $0.00 | $0.00 | -$5,446.80 | $0.00 | $0.00 | $0.00 | $0.00 |
| 08/07/2007 | 08/01/2007 | | RegPmt | $0.00 | $5,446.80 | $0.00 | $0.00 | -$5,446.80 | $0.00 | $0.00 | $0.00 | $0.00 |
| 09/11/2007 | 09/01/2007 | | RegPmt | $0.00 | $5,446.80 | $0.00 | $0.00 | -$5,446.80 | $0.00 | $0.00 | $0.00 | $0.00 |
| 09/11/2007 | 09/11/2007 | FUND ADVAM | Funding | $0.00 | $0.00 | $25,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/09/2007 | 10/01/2007 | TRACCTTRAN | RegPmt | $0.00 | $5,613.53 | $0.00 | $0.00 | -$5,613.53 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/31/2007 | 10/31/2007 | | Funding | $0.00 | $0.00 | -$10,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/31/2007 | 11/01/2007 | | RegPmt | $0.00 | $5,700.75 | $0.00 | $0.00 | -$5,700.76 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/19/2007 | 11/19/2007 | LOANDRAW | Funding | $0.00 | $0.00 | -$21,759.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/07/2007 | 12/01/2007 | | RegPmt | $0.00 | $5,882.61 | $0.00 | $0.00 | -$5,882.61 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/27/2007 | 12/17/2007 | | Funding | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 01/04/2008 | 01/01/2008 | | RegPmt | $0.00 | $7,014.30 | $0.00 | $0.00 | -$7,014.30 | $0.00 | $0.00 | $0.00 | $0.00 |
| 02/07/2008 | 02/01/2008 | | RegPmt | $0.00 | $7,014.30 | $0.00 | $0.00 | -$7,014.30 | $0.00 | $0.00 | $0.00 | $0.00 |
| 02/28/2008 | 03/01/2008 | | RegPmt | $0.00 | $7,014.30 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 03/11/2008 | 03/11/2008 | | Funding | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 04/01/2008 | 04/01/2008 | | RegPmt | $0.00 | $7,014.30 | $0.00 | $0.00 | -$7,014.30 | $0.00 | $0.00 | $0.00 | $0.00 |
| | | | | $0.00 | $94,481.86 | -$76,629.50 | $0.00 | -$84,461.88 | $0.00 | $0.00 | $0.00 | $0.00 |

# EXHIBIT "G"

RECORDING REQUESTED BY

Trust Deed Investments, Inc.

AND WHEN RECORDED MAIL TO

Trust Deed Investments, Inc.
1255 Post Street, Suite 496
San Francisco, CA 94109

CONFORMED COPY of document recorded on,

04/09/2008, 20081563797

as No. _____

This document has not been compared with the original

SAN FRANCISCO ASSESSOR RECORDER

Space above this line for recorder's use only

Trustee Sale No.    4218 (Hickman)    **©COPY**

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is *"See Breach Below"* as of *April 4, 2008* and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in this paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: *Trust Deed Investments, Inc., 1255 Post Street, Suite 496, San Francisco, CA 94109, (415) 923-9061.*

1

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT: *Trust Deed Investments, Inc.,* is the original Trustee under a Deed of Trust dated *January 22, 2007*, executed by *Brenda Hickman, an unmarried woman,* as trustor, to secure obligations in favor of *Trust Deed Investments, Inc.,* as Beneficiary, recorded on *January 25, 2007*, Series No. *2007-I326314-00* of official records in the Office of the Recorder of *San Francisco* County, California, and that the Deed of Trust encumbers certain property more particularly described therein, and that the Deed of Trust secures the payment of and the performance of certain obligations, including but not limited to the obligations set forth in the note(s) for the sum of *$800,000.00* (together with any modifications thereto) and that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary and that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

    —*Failure to comply with or perform any term, obligation, covenant or condition of the CLA; specifically the breach of Para 8.f: "If construction ceases before completion regardless of any reason" Lender may accelerate the loan [CLA, Sect 13(b)];*

        —*Breach of construction contract; specifically the improvements appear not to have been constructed in accordance with the plans and specs or the terms of the construction contract; eg, defective roof [without regard to whether the fault for the defective work is the fault of the contractor or Borrower, Lender has the right to declare a Default; CLA, Sect 13(g)];*

        —*Cessation of construction for 10 days [CLA, Sect 13(h)]; and*

        —*Improvements not completed prior to the completion date represented to Lender by Borrower (May, 2007) [CLA, Sect 13 (h)]*

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATE:  *April 4, 2008*

*Trust Deed Investments, as Trustee*

By:  *Philip Goldstein, President*

2

# EXHIBIT "H"

Recording requested by and when recorded return to:

TRUST DEED INVESTMENTS, INC.
1255 Post Street, Suite 496
San Francisco, CA 94109

CONFORMED COPY of document recorded on,

**07/11/2008, 2008I610453**

This document has not been compared with original

SAN FRANCISCO ASSESSOR REC, RDER

T.S. No. 4218 (Hickman)

## NOTICE OF TRUSTEE'S SALE



On Tuesday, August 5, 2008, at 2:00 p.m. of said day at the Van Ness Avenue Entrance to the City Hall, located at 400 Van Ness Avenue, San Francisco, in the County of San Francisco, State of California, **Trust Deed Investments, Inc.**, as duly appointed trustee, will sell at public auction to the highest bidder, in lawful money of the United States, all payable at the time of sale, the following described real property situated in the City of San Francisco, County of San Francisco, State of California and described as follows:

Beginning at a point on the southerly line of Hill Street, distant thereon 110 feet easterly from the easterly line of Noe Street; running thence easterly along the southerly line of Hill Street 25 feet; thence at a right angle southerly 114 feet; thence at a right angle westerly 25 feet; and thence at a right angle northerly 114 feet to the southerly line of Hill Street and the point of beginning.

Being a portion of Mission Block No. 109.

Common Address: 473 Hill Street, San Francisco, CA 94114
Assessors Parcel Number: 24-3621-039-01

Said sale will be made without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the obligations secured by and pursuant to the Power of Sale conferred in a certain Deed of Trust executed by **Brenda Hickman, an unmarried woman,** as Trustor, dated **January 22, 2007,** and recorded **January 25, 2007,** as Document No. 2007-1326314-00, Reel J314, Image 0129, in the office of the San Francisco County Recorder.

The amount owing on subject obligation is: Principal **$701,429.51,** Interest **$5,582.61,** Late Charges **$2,104.29,** Legal Fees **$2,232.50,** Interest on Advances **$18.49,** Foreclosure Costs **$8,607.29**

# EXHIBIT "I"



MICHAEL E. STONE
ATTORNEY AT LAW

July 14, 2008

Via Fax, mail and email

(415) 440-9906

Phillip Goldstein
Trust Deed Investments
1255 Post St., #496
San Francisco, CA 94109
philgoldstein@pacbell.net

**Re:**   **Hickman and Henry vs. Trust Deed Investments, Inc.**
          **your loan # 4218**

Dear Mr. Goldstein:

The purpose of this letter is to see if we can avoid the necessity of litigation by your

causing a rescission of the pending foreclosure against my clients, Brenda Hickman and Betty

Henry.  I know that your initial reaction upon reading this is going to be something along the

lines of "to hell with them" and "full steam ahead" ( I am familiar with this response because I

have been specializing in real estate litigation for 39 years now, including representation of a

number of asset-based loan brokers [aka hard money lenders]).   But I ask you to consider

everything mentioned in this letter, review it with your own attorney, and try to make a pragmatic

business decision, because it is my experience that only lawyers win in lawsuits; everyone else

gets what they should have in the first place.

As you know, Ms. Hickman and her elderly mother, Betty Henry, are in the process of not

just refinancing the present loan, but obtaining enough this time to actually complete the remodel

of Ms. Henry's residence, 473 Hill Street, San Francisco, CA 94114.  For whatever reason, the

3425 South Bascom Avenue, Suite I
Campbell, California 95008
(408) 377-9899 Y Fax (408) 377-5270
email: mikeestone@yahoo.com

Phillip Goldstein
July 14, 2008
Page 2

loan arranged by you and Nikos Glimidakis for said purpose never was sufficient (whether that was intentional or negligent remains to be determined). Your attempted foreclosure is a serious impediment to that process, but before I file a complaint to enjoin and invalidate the foreclosure, I thought it might be worthwhile to propose a couple of possible non-litigation resolutions. And for these to be given serious consideration, a short review of some (not necessarily "all") of the legal problems with the loan and the pending non-judicial foreclosure proceeding, is in order.

The first thing I notice in reviewing the loan documentation is that the loan itself is in violation of the federal Truth-In-Lending-Act ("TILA"). And as a consequence, Ms. Hickman and Mrs. Henry have a legal right to rescind the loan and demand a cancellation of the deed of trust. Such a rescission would mean that they were not obligated to pay any interest on the loan (all such payments would be credited to the principal) and all broker's fees, commissions and other finance charges would be refunded (credited back against the principal, as well).

Now, before you brush this off as "puffing and posturing", I ask that you consider a few things: first, and foremost, is that the law does not favor *form over substance;* to the contrary. And the substance of this loan transaction, regardless of how you tried to characterize it in form, is that it was a personal loan (not a business loan) made to both Ms. Hickman and Mrs. Henry for the purpose of remodeling Mrs. Henry's principal residence. That makes it a covered loan under TILA, and as a result, the loan documents can not contain a default interest provision ( 15 U.S. C. §1639 d), the maximum points, fees, and other finance charges would be allowed 8% (15 U.S. C.

Phillip Goldstein
July 14, 2008
Page 3

§1602 aa); and there can be no prepaid payments or "interest reserve" (15 U.S. C. §1639 g). A

violation of any one of these provisions ( the subject loan violated all three) means that the lender

and the broker shall be deemed to have failed to deliver the requisite material disclosures for

purposes of § 1635 which gives the borrower the right to rescind the loan ( U.S. C. §1639 j). In

fact, once the lender is given notice of the violation and rescission ( as we have just now done),

the lender has 20 days to terminate the deed of trust or be liable for penalties.

I have handled a number of TILA cases, from all angles (lender's, broker's and

borrower's) and it has been my experience that the lender never comes out well. One of the

underlying policies of TILA cases is that all presumptions are made in favor of protecting the

borrowers.

Another problem I see with your foreclosure is that you neither complied with the

acceleration notice requirements of your own loan documents (before TDI can accelerate and

demand payment for a non-monetary "default", it must give a 10-day notice to cure, per

paragraph 12 of your Note), nor the provisions of Civil Code §2924 regarding non-judicial

foreclosure sales. Said provisions are strictly interpreted by the California courts, as the

summary process of a non-judicial foreclosure "is not a favored remedy" at law. In this case, you

gave the property owners, Brenda Hickman and Betty Henry, three months to cure the default,

but when they did cure it, you failed to cancel the Notice of Default. Your declared default was

the cessation of the construction on the remodeling; breach of construction contract (defective

work); and cessation of construction for 10 days. I am ignoring the "completion date" of May,

Phillip Goldstein
July 14, 2008
Page 4

2007 allegation, as T.D.I. long ago waived that completion date (look at your own funding

schedule and disbursements).

According to the correspondence I have read between you and Brenda Hickman, it seems

clear that T.D.I. was put on notice that a new contractor had been employed and that work on the

construction had re-commenced within the three months following the April 9, 2008 N.O.D.

Consequently, you had a statutory duty to cancel the Notice of Default.

While I am not very experienced in a relatively new area of law (having litigated only

two such cases), it does occur to me that there are some significant "financial elder abuse" issues

in this dispute, as well. Betty Henry is, I understand, is 89 years old, and your firm was well

aware of this before it charged the excessive fees that it did, and well before it began foreclosure

on her home (where she has lived for decades).

Finally, there is the accounting issue regarding the retained funds (construction reserve

and interest reserve); when the issue was raised of just how much remained on hand after your

N.O.D., your company provided contradictory accountings, none of which appear accurate to an

accountant I had review them.  Moreover, it appears from one of the reports received that the

"reserve" monies were not funded and put into a trust account at the time of the escrow closing.

Instead, they were being put into the trust account at the time of or shortly before each draw.

Perhaps a D.R.E. audit of the trust account is in order, if we cannot resolve these disputes

amicably.

Phillip Goldstein
July 14, 2008
Page 5

So, getting down to "brass tacks", as they say, here is how I calculate the monetary amount of the disputes involved: the principal that Ms. Hickman and her mother would have to pay you upon a full rescission (tender of which is hereby made) is $498,067.89. I calculated that by adding the $329,894.97 pay off on their prior loan (Preferred Financial Group), the $887.29 property tax payment at close of escrow, the $90,657.13 in construction payments at close of escrow, and the $76,628.50 in post-escrow construction disbursements.

The amount being claimed due by T.D. I. is approximately $720,000, as I understand the situation. That means that here is a total of $222,000 in interest, points, fees, foreclosure expense, and other finance charges, that is in dispute. It is this amount that we can either try to resolve now, litigate over, or find an alternate dispute resolution process to agree upon in an attempt to save money and time.

Taking the first, allow me to share this recognition from my litigation experience: no case is ever 100% certain. In fact, a mentor of mine (an appellate court justice) once advised me that the very best case has only an 80% odds of prevailing ( I did not state "winning" because even a prevailing party seldom recovers all the legal fees it costs "to prevail"). That being the premise, it is my opinion that my clients have a much better chance to prevail in a trial than T.D.I does, and I would guess that the odds were something like 70% to 30%. A mediator using that same analysis would then recommend a negotiated settlement whereby T.D.I. waives 70% of the disputed $222,000 and my clients pay 30% of it, or $66,600. That would make their payoff approximately $565,000. And in the unlikely event that you would be willing to settle for this

Phillip Goldstein
July 14, 2008
Page 6

sum, as a compromise that avoids the risks, expense and hassle of a lawsuit, I believe that my clients would so agree.

Assuming, however, that such an early compromise and settlement is not in the cards, I have an alternative to propose that will not instantly resolve the dispute, but should expedite resolution and reduce the legal expense. And that is that my clients pay off the undisputed portion of your loan (the $498,067.89) and deposit the disputed sum of $222,000 into a blocked account (interest bearing); T.D.I would reconvey the deed of trust upon receipt of the undisputed portion and evidence of deposit of the disputed portion. The parties would then arbitrate the dispute before a retired judge or magistrate that has T.I.L.A experience and foreclosure law experience (the selection to be agreed by the parties, and if no agreement reached, either can petition the San Francisco County Superior Court for appointment of such). In the arbitration, costs would be shared but the party that ultimately prevails will be entitled to recover not just their share of the arbitration costs but also their attorney's fees incurred.

For what it is worth, a recent T.I.L.A. case that I handled, wherein the primary issue was whether the loan was "business" or "personal" (exempt or not exempt) cost each side over $125,000 in legal fees and costs, of which the ultimate "winner" recovered only $50,000. So, who "won"? Obviously, the answer is "the lawyers".

Phillip Goldstein
July 14, 2008
Page 7


    Hoping to hear from you or your attorney by 5:00 PM next Monday (so I know whether

or not to go forward with the lawsuit and foreclosure injunction), I remain


                        Very truly yours,

                        LAW OFFICES OF MICHAEL E. STONE

                        Michael E. Stone


MES/td

cc: clients



DENNIS H. DOSS | GENERAL MANAGER | dennis@dosslaw.com
2020 MAIN STREET | SUITE 950 | IRVINE | CALIFORNIA 92614-8231
PH 949.757.8201 | FX 949.757.5741 | www.dosslaw.com

*(via fax)*

July 28, 2008

Michael Stone, Esq.
3425 South Bascom Avenue, Suite I
Campbell, CA 95008

Re:  Hickman Claim

Dear Mr. Stone:

I represent Trust Deed Investments, Inc., in connection with the various claims you have asserted on behalf of Brenda Hickman and Betty Henry.

As you well know, the right to cancel and the high-cost provisions of the Truth-in-Lending Act are only invoked when the collateral securing a consumer loan is owner-occupied residential property. I'm sure you will be able to confirm with your clients that 473 Hill Street had been vacant for at least two years. We have many papers in the file indicating that Ms. Hickman did not live there and in fact lived at 909 South Norfolk in San Mateo. In addition, her application indicates that the purpose of the loan was "investment," presumably to rehabilitate the property and to sell it.

Therefore, Trust Deed Investments declines your claims as without merit. My client intends to fully enforce the loan documents.

Your claims are in the nature of an attack on the security of the deed of trust and as such my client is entitled to recovery of his attorneys fees to date. However, fees will be added to the deed of trust only if you persist in pursuing these claims after receiving this letter.

If you have any questions, please feel free to contact me at (949) 757-8201.

Very truly yours,

*Dennis H. Doss*

Dennis H. Doss
General Manager

# EXHIBIT "2"

# NOTE SECURED BY A DEED OF TRUST

Loan Number: 4218      Date: Tuesday, January 22, 2007      SAN FRANCISCO, California

473 Hill Street, San Francisco, CA 94114
Property Address(es)

## 1. BORROWER'S PROMISE TO PAY

In Return for a loan that I have received (the "Loan"), I promise to pay U.S. $800,000.00 (this amount will be called "principal"), plus interest, to the order of TRUST DEED INVESTMENTS, INC., a California Corporation, C.F.L. License No. 6032536, (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Lender(s)."

## 2. INTEREST

I will pay interest at a yearly rate as described in Paragraph 3 below.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the below rate on the prepaid finance charges which are a part of the principal.

## 3. PAYMENTS

My payments are    [X] Interest Only    [ ] Fully Amortized      [ ] Other

I will make my payments each month as follows:

| | | | |
|---|---|---|---|
| 1 | Starting February 1, 2007 | 12.000% | * |
| 58 | Starting March 1, 2007 | 12.000% | * |
| 1 | Starting January 1, 2012 | 12.000% | ** |

*Interest only on the outstanding principal balance.

**Outstanding principal balance, plus interest and any other fees due pursuant to any loan documentation related to this loan.

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on Sunday, January 01, 2012, I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.

I will make my payments payable to Trust Deed Investments, Inc., 1255 Post Street, Suite 496, San Francisco, CA 94109, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

If Borrowers make payments under this note by check and one or more checks are returned by maker's bank, the holder may, upon 10 days' written notice to maker, require that all future payments be made by money order, cashier's check or certified funds."

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge of Overdue Payments

If I do not pay the full amount of each monthly payment by the end of ten calendar days after the date it is due, I will pay a late charge to the Note Lender. The amount of the charge will be 10.00% of my overdue payment or U.S. $5.00, which ever is more. I will pay this late charge only once on any late payment.

(B) Default and Acceleration

If I do not pay the full amount of each monthly payment due under this Note by the date stated in Section 3 above, or perform any other covenant of this Note and Deed of Trust, I will be in default, and the interest rate in paragraph 2 shall, without notice, increase FIVE (5) percentage points above the rate specified therein (the "Default Rate"). If I do not pay the full amount of the outstanding balance of the loan at maturity (the "balloon balance" referenced in Section 3 above), the Default Rate will automatically apply to all interest accrued thereafter without demand by the Note Lender.

Even if, at a time when I am in default, the Note Lender does not require me to pay immediately in full as described above, the Note Lender will still have the right to do so if I am in default at a later time.

(C) Payment of Note Lender's Costs and Expenses

If the Note Lender has required me to pay immediately in full as described above, the Note Lender will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees and other expenses and costs provided in this Note and/or Deed of Trust. A default upon any interest of any Note Lender shall be a default upon all interests.

(D) Interest On Late Payments and Advances

If for any reason Borrower fails to pay when due any interest, principal, late charge, other charges or other amount under the Note or any of the other documents executed by Borrower and Lender memorializing the Loan (the "Loan Documents"), then each such delinquent payment shall also bear interest at the rate stated in paragraph 2 of this Note, including the Default Rate, commencing on the date of the delinquent payment was due and continuing for so long as the delinquency continues.

## 5. BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment."

**6. BORROWER'S WAIVERS**

I waive my rights to require the Note Lender to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Lender if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**7. RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note has the same obligations as the Borrower. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Lender may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us shall be required to pay all of the amounts owed under this Note.

**8. THIS NOTE IS SECURED BY A DEED OF TRUST**

In addition to the protection given to the Note Lender under this Note, a Deed of Trust with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Lender from possible losses which might result if I do not keep the promises which I make in the Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, enter into a contract of sale, lease for a term as described in the Deed of Trust (including options to renew), lease with an option to purchase for any term, or transfer all or part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing.

**9. USURY SAVINGS CLAUSE**

The terms of this Loan are hereby expressly limited so that in no contingency or event whatsoever shall the amount paid or agreed to be paid to Lender for the use, forbearance, or detention of the money to be loaned exceed the maximum amount or rate permissible under applicable law. If, for any reason whatsoever, fulfillment of any provision of this Loan, at the time fulfillment of such provision shall be due, is prohibited by law, the obligation to be fulfilled shall be reduced to the maximum not so prohibited; and if for any reason whatsoever Lender should ever receive as interest an amount which would exceed the highest lawful rate, such amount as would be excessive interest shall be applied to the reduction of the principal of the Note and not to the payment of interest. This provision shall control every other provision contained in the Loan Documents.

**10. GENERAL PROVISIONS**

(A) Time is of the essence of this Note.

(B) This Note may not be changed, amended, or modified except by a further written agreement between Borrower and Lender.

(C) Any failure of Lender to exercise any of its rights under this Note shall not constitute a waiver of those rights by Lender or a waiver by Lender of any other rights.

(D) This Note and the rights and duties of Borrower and Lender shall be governed by the laws of the State of California for all purposes.

**11. PURPOSE OF LOAN**

Borrower represents and warrants that the proceeds of the Loan evidenced by this Note shall be used exclusively for the business and/or commercial purposes more particularly set forth in the Construction Loan Agreement and that no portion of the proceeds will be used for personal, family, or household purposes, unless authorized in writing by Lender.

**12. ADDITIONAL EVENTS OF DEFAULT AND ACCELERATION**

Beyond the default created by Borrower's failure to pay as required pursuant to paragraph 4 above, certain events may constitute additional defaults in Lender's sole discretion (a "Non-Monetary Default"). In the event Lender declares a Non-Monetary Default, all sums owed and to become owing under this Note are immediately due and payable and subject to the Default Rate of interest contained in paragraph 4(B). For purposes of this Note, a Non-Monetary Default shall mean:

(A) A breach or default in the performance of any other term, covenant, condition or agreement under this Note or the Deed of Trust, or the Construction Loan Agreement, or any of the other Loan Documents, when such breach or default is not cured within 10 days after notice of such breach or default, or if such breach or default is not reasonably capable of being cured within such date, if Borrower has not commenced in good faith the curing of such breach or default within such 10 day period or does not thereafter prosecute to completion with diligence and continuity the curing thereof, which cure must in any event be completed within 30 days after such notice to Borrower; or



(B) If Borrower applies for or consents to the appointment of a receiver, liquidator, custodian or trustee for it or any portion of its property, or if such receiver, liquidator, custodian or, trustee is appointed for Borrower or its property and is not discharged within ten (10) days after the date of such appointment, or Borrower makes an assignment for the benefit of creditors, or Borrower admits in writing its inability to pay its debts as they become due, or Borrower becomes insolvent, or a petition is filed by Borrower pursuant to any of the provisions of the Bankruptcy Code, 11 U.S.C. Sections 101 et seq., as amended, or any similar or successor statute, or such a petition is filed against Borrower and is not dismissed or vacated within ten (10) days after the date of such filing; or

(C) If there is an attachment or sequestration of any of the property of Borrower and the same is not discharged or bonded within thirty (30) days; or

(D) If Borrower is a partnership, corporation or limited liability company, Borrower shall cause or institute or there shall be instituted against Borrower any proceeding for the dissolution or termination of Borrower; or

(E) If any representation, warranty or disclosure made to Lender by Borrower proves to be materially false or misleading on the date as of which made.

| Borrower    Brenda Hickman | Date | Borrower | Date |
|---|---|---|---|

**DO NOT DESTROY THIS NOTE: When paid it must be surrendered to the Trustor, together with the Deed of Trust securing same for cancellation, before reconveyance will be made.**

# EXHIBIT "3"

May 08 2008 3:52PM    SOLAN & PARK LLP    (415)777-3301    p.6



# REPUBLIC TITLE COMPA.

265 Montgomery Street • San Francisco CA • 94104 • (415) 421-9770 • FAX (415) 788-4237

Brenda Hickman

Date: January 25, 2007
Escrow No.: 0224009660-NS
Escrow Officer: Nick Shanta
Closing Date: 1/25/2007

Property:    473 Hill Street, San Francisco, CA 94114-2918

## Borrower's Closing Statement

| Item | Debits | Credits |
|---|---|---|
| New 1st loan from Trust Deed Investments, Inc. | | 800,000.00 |
| Processing Fee | 100.00 | |
| Document Preparation Fee | 1,500.00 | |
| Interest Reserve | 118,000.00 | |
| Funds retained by lender for future draws | 175,286.51 | |
| Commission | 40,000.00 | |
| Loan payoff to Preferred Financial Group, Inc. ($329,994.97) | | |
| Current Principal | 322,285.77 | |
| Interest 01/26/07 through 01/27/07; 1 day @ $89.52 | | 89.52 |
| Interest from 12/1/06 thru 1/26/07 | 7,698.72 | |
| Demand Fee | 100.00 | |
| signing fee to TL Signing Service, Inc. | 150.00 | |
| Foundation work to Stephen Stack | 20,000.00 | |
| Wages to Stephen Stack | 9,240.00 | |
| Reimbursement for materials to Stephen Stack | 14,509.13 | |
| Permits & Inspections to Stephen Stack | 1,108.00 | |
| Plumbing work to Excellent Plumbing | 25,000.00 | |
| Glass work to Celtic Glass | 2,580.00 | |
| Engineer work to A & J Designs Structural Engineers | 2,350.00 | |
| Heating work to Guy Kubowitz Heating | 10,000.00 | |
| Architect work to Tom Davick - Architect | 1,250.00 | |
| Wages to Francis Lannane | 3,120.00 | |
| Roofing work to Kang's Roofing Co., Inc. | 1,500.00 | |
| Brokerage Commission to The Haskell Properties | 40,000.00 | |
| R.E. Taxes (Lot 038; Block 3621) | 887.29 | |
| All 2006-2007 | 845.04 | |
| Penalty | 42.25 | |
| Escrow Fees | | 843.60 |
| Additional Charges | | 350.00 |
| Loan Edoc/Processing Fee | 50.00 | |
| Wire Service Fee | 50.00 | |
| Overnight Service Fee | 50.00 | |
| Doc' Prep Deed | 100.00 | |
| Doc Prep Indemnity Agreement | 100.00 | |
| Notary Fees | | 50.00 |
| ALTA Loan Policy | | 1,802.00 |
| Endorsements: | | |
| Form 8.1 Environmental Protection Lien | | 25.00 |
| 122 Priority to Advance Over Inter | | 263.50 |
| 100 Restrictions, etc., 116 Designation of Improvements, L | | 0.00 |
| Recording Fees | | 90.00 |
| Deed | 18.00 | |
| Deed of Trust | 54.00 | |
| Deed | 18.00 | |
| Due To Borrower | | 0.00 |

Page 1

NS/ab



# OLD REPUBLIC TITLE COMPANY

265 Montgomery Street • San Francisco CA • 94104 • (415) 421-9770 • FAX (415) 765-4237

Brenda Hickman

Date: January 23, 2007
Escrow No.: 0224009660-NS
Escrow Officer: Nick Shanta
Closing Date: 1/25/2007

Property:    473 Hill Street, San Francisco, CA 94114-2918

## Borrower's Estimated Closing Statement

| Item | | Debits | Credits |
|---|---|---|---|
| Recording Fees | | 90.00 | |
| Deed | 18.00 | | |
| Deed of Trust | 54.00 | | |
| Deed | 18.00 | | |
| Due To Borrower (est.) | | 0.00 | |
| | | | |
| Total | | $800,089.52 | $800,089.52 |

Brenda Hickman

NS/ab

# EXHIBIT "4"

TRUST DEED INVESTMENTS, INC.
The Mortgage Office
Trust Account Register

Date: 5/20/2008
Time: 02:24 PM
Page: 1

Trust 1 City National Bank
4218-Brenda Hickman
City National Bank
0450013587

| Received Date | Check# or Reference | Source of Reference | From Whom Received or To Whom Paid | Clr | Amount Paid Out | Amount Received | Daily Balance |
|---|---|---|---|---|---|---|---|
| | | | | | | Balance Forward | 0.00 |
| 09/11/07 | 10312 | | Brenda Hickman | R | 12,500.00 | | -12,500.00 |
| 09/11/07 | 10313 | | Brenda Hickman & | R | | 0.00 | -12,500.00 |
| 09/11/07 | 10314 | | Brenda Hickman & | R | 4,500.00 | | -17,000.00 |
| 09/11/07 | 10315 | | Brenda Hickman & Manual Jimenez | R | 8,000.00 | | -25,000.00 |
| 09/11/07 | FUNDING | | Trust Deed Investments, Inc. | R | | 25,000.00 | 0.00 |
| 10/31/07 | 10323 | | Brenda Hickman | R | 10,000.00 | | -10,000.00 |
| 10/31/07 | FUNDDRAW | | Philip Goldstein | R | | 10,000.00 | 0.00 |
| 11/19/07 | 10326 | | Brenda Hickman | R | 21,750.00 | | -21,750.00 |
| 11/19/07 | LOANDRAW | | Philip Goldstein | R | | 21,750.00 | 0.00 |
| | | | | | 56,750.00 | 56,750.00 | |

(9) End of Report

monies
paid out

source
of
money paid out

# EXHIBIT "F"

/2008 1:20 PM    Page 1

TRUST DEED IN    ...ENTS, INC.

| Date Received | Date Due | Reference | Payment Code | Total Amount Received | Applied To Principal | Applied To Interest | Applied To Late Charges | Prepayment Penalty | Applied To Trust | Charges Principal | Charges Interest | Fees Paid To Broker |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/07/2007 | 02/01/2007 | CODDAYSNK | RegPmt | $0.00 | $0.00 | $1,843.31 | $0.00 | $0.00 | $1,843.31 | $0.00 | $0.00 | $0.00 |
| 03/09/2007 | 03/01/2007 | PAYMENT | RegPmt | $0.00 | $0.00 | $5,248.03 | $0.00 | $0.00 | $5,248.03 | $0.00 | $0.00 | $0.00 |
| 04/04/2007 | 04/01/2007 | PAYMENT | RegPmt | $0.00 | $0.00 | $6,248.03 | $0.00 | $0.00 | $5,248.03 | $0.00 | $0.00 | $0.00 |
| 04/25/2007 | | | Manual | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 05/04/2007 | 05/01/2007 | PAYMENT | RegPmt | $0.00 | -$19,976.55 | $6,281.22 | $0.00 | $0.00 | -$5,281.22 | $0.00 | $0.00 | $0.00 |
| 06/01/2007 | 06/01/2007 | PAYMENT | RegPmt | $0.00 | $0.00 | $5,446.80 | $0.00 | $0.00 | -$5,446.80 | $0.00 | $0.00 | $0.00 |
| 07/05/2007 | 07/01/2007 | PAYMENT | RegPmt | $0.00 | $0.00 | $5,446.80 | $0.00 | $0.00 | -$5,446.80 | $0.00 | $0.00 | $0.00 |
| 08/07/2007 | 08/01/2007 | | RegPmt | $0.00 | $0.00 | $5,446.80 | $0.00 | $0.00 | -$5,446.80 | $0.00 | $0.00 | $0.00 |
| 09/11/2007 | 09/01/2007 | | RegPmt | $0.00 | $0.00 | $5,446.80 | $0.00 | $0.00 | -$5,446.80 | $0.00 | $0.00 | $0.00 |
| 09/11/2007 | 09/11/2007 | FUND ADVAN | Funding | $0.00 | -$25,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/09/2007 | 10/01/2007 | TRACCTTRAI | RegPmt | $0.00 | $0.00 | $8,613.53 | $0.00 | $0.00 | -$8,613.53 | $0.00 | $0.00 | $0.00 |
| 10/31/2007 | 10/31/2007 | | Funding | $0.00 | -$10,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/31/2007 | 11/01/2007 | | RegPmt | $0.00 | $0.00 | $5,700.76 | $0.00 | $0.00 | -$6,700.76 | $0.00 | $0.00 | $0.00 |
| 11/19/2007 | 11/19/2007 | LOANDRAW | Funding | $0.00 | -$71,750.00 | $0.00 | $0.00 | $0.00 | -$0.00 | $0.00 | $0.00 | $0.00 |
| 12/07/2007 | 12/01/2007 | | RegPmt | $0.00 | $0.00 | $8,882.61 | $0.00 | $0.00 | -$5,882.61 | $0.00 | $0.00 | $0.00 |
| 12/17/2007 | 12/17/2007 | | Funding | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 01/04/2008 | 01/01/2008 | | Funding | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 02/07/2008 | 02/01/2008 | | RegPmt | $0.00 | $0.00 | $7,014.30 | $0.00 | $0.00 | -$7,014.30 | $0.00 | $0.00 | $0.00 |
| 02/29/2008 | 03/01/2008 | | RegPmt | $0.00 | $0.00 | $7,014.30 | $0.00 | $0.00 | -$7,014.30 | $0.00 | $0.00 | $0.00 |
| 03/11/2008 | 03/11/2008 | | Funding | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 04/01/2008 | 04/01/2008 | | RegPmt | $0.00 | $0.00 | $7,014.30 | $0.00 | $0.00 | -$7,014.30 | $0.00 | $0.00 | $0.00 |
| | | | | $0.00 | -$76,626.55 | $94,461.88 | $0.00 | $0.00 | -$34,451.88 | $0.00 | $0.00 | $0.00 |

# EXHIBIT "6"

RECORDING REQUESTED BY

Trust Deed Investments, Inc.

AND WHEN RECORDED MAIL TO

Trust Deed Investments, Inc.
1255 Post Street, Suite 496
San Francisco, CA 94109

CONFORMED COPY of document recorded on.

04/09/2008, 20081563797

as No._____
This document has not been compared with the original

SAN FRANCISCO ASSESSOR RECORDER

Trustee Sale No.     4218 (Hickman)

Space above this line for recorder's use only

**COPY**

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is *"See Breach Below"* as of *April 4, 2008* and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in this paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: *Trust Deed Investments, Inc., 1255 Post Street, Suite 496, San Francisco, CA 94109, (415) 923-9061.*

1

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT: *Trust Deed Investments, Inc.*, is the original Trustee under a Deed of Trust dated *January 22, 2007*, executed by *Brenda Hickman, an unmarried woman*, as trustor, to secure obligations in favor of *Trust Deed Investments, Inc.*, as Beneficiary, recorded on *January 25, 2007*, Series No. *2007-I326314-00* of official records in the Office of the Recorder of *San Francisco* County, California, and that the Deed of Trust encumbers certain property more particularly described therein, and that the Deed of Trust secures the payment of and the performance of certain obligations, including but not limited to the obligations set forth in the note(s) for the sum of *$800,000.00* (together with any modifications thereto) and that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary and that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

    —*Failure to comply with or perform any term, obligation, covenant or condition of the CLA; specifically the breach of Para 8.f: "If construction ceases before completion regardless of any reason" Lender may accelerate the loan [CLA, Sect 13(b)];*

    —*Breach of construction contract; specifically the improvements appear not to have been constructed in accordance with the plans and specs or the terms of the construction contract; eg, defective roof [without regard to whether the fault for the defective work is the fault of the contractor or Borrower, Lender has the right to declare a Default; CLA, Sect 13(g)];*

    —*Cessation of construction for 10 days [CLA, Sect 13(h)]; and*

    —*Improvements not completed prior to the completion date represented to Lender by Borrower (May, 2007) [CLA, Sect 13 (h)]*

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATE: *April 4, 2008*

*Trust Deed Investments, as Trustee*

By:  Philip Goldstein, President

2

# EXHIBIT "7"

Recording requested by and when recorded return to:

TRUST DEED INVESTMENTS, INC.
1255 Post Street, Suite 496
San Francisco, CA 94109

CONFORMED COPY of document recorded on,

07/11/2008, 2008I510453

This document has not been compared with the original
SAN FRANCISCO ASSESSOR-RECORDER

T.S. No. 4218 (Hickman)

## NOTICE OF TRUSTEE'S SALE



On Tuesday, August 5, 2008, at 2:00 p.m. of said day at the Van Ness Avenue Entrance to the City Hall, located at 400 Van Ness Avenue, San Francisco, in the County of San Francisco, State of California, **Trust Deed Investments, Inc.**, as duly appointed trustee, will sell at public auction to the highest bidder, in lawful money of the United States, all payable at the time of sale, the following described real property situated in the City of San Francisco, County of San Francisco, State of California and described as follows:

**Beginning at a point on the southerly line of Hill Street, distant thereon 110 feet easterly from the easterly line of Noe Street; running thence easterly along the southerly line of Hill Street 25 feet; thence at a right angle southerly 114 feet; thence at a right angle westerly 25 feet; and thence at a right angle northerly 114 feet to the southerly line of Hill Street and the point of beginning.**

**Being a portion of Mission Block No. 109.**

**Common Address: 473 Hill Street, San Francisco, CA 94114
Assessors Parcel Number: 24-3621-039-01**

Said sale will be made without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the obligations secured by and pursuant to the Power of Sale conferred in a certain Deed of Trust executed by **Brenda Hickman, an unmarried woman,** as Trustor, dated **January 22, 2007,** and recorded **January 25, 2007,** as Document No. 2007-1326314-00, Reel J314, Image 0129, in the office of the San Francisco County Recorder.

The amount owing on subject obligation is: Principal **$701,429.51,** Interest **$5,582.61** Late Charges **$2,104.29,** Legal Fees **$2,232.50,** Interest on Advances **$18.49,** Foreclosure Costs **$8,607.29**

# EXHIBIT "8"



MICHAEL E. STONE
ATTORNEY AT LAW

July 14, 2008

Via Fax, mail and email

(415) 440-9906

Phillip Goldstein
Trust Deed Investments
1255 Post St., #496
San Francisco, CA 94109
philgoldstein@pacbell.net

Re:    **Hickman and Henry vs. Trust Deed Investments, Inc.
       your loan # 4218**

Dear Mr. Goldstein:

The purpose of this letter is to see if we can avoid the necessity of litigation by your

causing a rescission of the pending foreclosure against my clients, Brenda Hickman and Betty

Henry. I know that your initial reaction upon reading this is going to be something along the

lines of "to hell with them" and "full steam ahead" ( I am familiar with this response because I

have been specializing in real estate litigation for 39 years now, including representation of a

number of asset-based loan brokers [aka hard money lenders]).   But I ask you to consider

everything mentioned in this letter, review it with your own attorney, and try to make a pragmatic

business decision, because it is my experience that only lawyers win in lawsuits; everyone else

gets what they should have in the first place.

As you know, Ms. Hickman and her elderly mother, Betty Henry, are in the process of not

just refinancing the present loan, but obtaining enough this time to actually complete the remodel

of Ms. Henry's residence, 473 Hill Street, San Francisco, CA 94114. For whatever reason, the

Phillip Goldstein
July 14, 2008
Page 2

loan arranged by you and Nikos Glimidakis for said purpose never was sufficient (whether that was intentional or negligent remains to be determined). Your attempted foreclosure is a serious impediment to that process, but before I file a complaint to enjoin and invalidate the foreclosure, I thought it might be worthwhile to propose a couple of possible non-litigation resolutions. And for these to be given serious consideration, a short review of some (not necessarily "all") of the legal problems with the loan and the pending non-judicial foreclosure proceeding, is in order.

The first thing I notice in reviewing the loan documentation is that the loan itself is in violation of the federal Truth-In-Lending-Act ("TILA"). And as a consequence, Ms. Hickman and Mrs. Henry have a legal right to rescind the loan and demand a cancellation of the deed of trust. Such a rescission would mean that they were not obligated to pay any interest on the loan (all such payments would be credited to the principal) and all broker's fees, commissions and other finance charges would be refunded (credited back against the principal, as well).

Now, before you brush this off as "puffing and posturing", I ask that you consider a few things: first, and foremost, is that the law does not favor *form over substance;* to the contrary. And the substance of this loan transaction, regardless of how you tried to characterize it in form, is that it was a personal loan (not a business loan) made to both Ms. Hickman and Mrs. Henry for the purpose of remodeling Mrs. Henry's principal residence. That makes it a covered loan under TILA, and as a result, the loan documents can not contain a default interest provision ( 15 U.S.C. §1639 d), the maximum points, fees, and other finance charges would be allowed 8% (15 U.S.C.

Phillip Goldstein
July 14, 2008
Page 3

§1602 aa); and there can be no prepaid payments or "interest reserve" (15 U.S.C. §1639 g). A violation of any one of these provisions (the subject loan violated all three) means that the lender and the broker shall be deemed to have failed to deliver the requisite material disclosures for purposes of § 1635 which gives the borrower the right to rescind the loan (U.S.C. §1639 j). In fact, once the lender is given notice of the violation and rescission (as we have just now done), the lender has 20 days to terminate the deed of trust or be liable for penalties.

I have handled a number of TILA cases, from all angles (lender's, broker's and borrower's) and it has been my experience that the lender never comes out well. One of the underlying policies of TILA cases is that all presumptions are made in favor of protecting the borrowers.

Another problem I see with your foreclosure is that you neither complied with the acceleration notice requirements of your own loan documents (before TDI can accelerate and demand payment for a non-monetary "default", it must give a 10-day notice to cure, per paragraph 12 of your Note), nor the provisions of Civil Code §2924 regarding non-judicial foreclosure sales. Said provisions are strictly interpreted by the California courts, as the summary process of a non-judicial foreclosure "is not a favored remedy" at law. In this case, you gave the property owners, Brenda Hickman and Betty Henry, three months to cure the default, but when they did cure it, you failed to cancel the Notice of Default. Your declared default was the cessation of the construction on the remodeling; breach of construction contract (defective work); and cessation of construction for 10 days. I am ignoring the "completion date" of May,

Phillip Goldstein
July 14, 2008
Page 4

2007 allegation, as T.D.I. long ago waived that completion date (look at your own funding

schedule and disbursements).

    According to the correspondence I have read between you and Brenda Hickman, it seems

clear that T.D.I. was put on notice that a new contractor had been employed and that work on the

construction had re-commenced within the three months following the April 9, 2008 N.O.D.

Consequently, you had a statutory duty to cancel the Notice of Default.

    While I am not very experienced in a relatively new area of law (having litigated only

two such cases), it does occur to me that there are some significant "financial elder abuse" issues

in this dispute, as well.  Betty Henry is, I understand, is 89 years old, and your firm was well

aware of this before it charged the excessive fees that it did, and well before it began foreclosure

on her home (where she has lived for decades).

    Finally, there is the accounting issue regarding the retained funds (construction reserve

and interest reserve); when the issue was raised of just how much remained on hand after your

N.O.D., your company provided contradictory accountings, none of which appear accurate to an

accountant I had review them.  Moreover, it appears from one of the reports received that the

"reserve" monies were not funded and put into a trust account at the time of the escrow closing.

Instead, they were being put into the trust account at the time of or shortly before each draw.

Perhaps a D.R.E. audit of the trust account is in order, if we cannot resolve these disputes

amicably.

Phillip Goldstein
July 14, 2008
Page 5

So, getting down to "brass tacks", as they say, here is how I calculate the monetary amount of the disputes involved: the principal that Ms. Hickman and her mother would have to pay you upon a full rescission (tender of which is hereby made) is $498,067.89. I calculated that by adding the $329,894.97 pay off on their prior loan (Preferred Financial Group), the $887.29 property tax payment at close of escrow, the $90,657.13 in construction payments at close of escrow, and the $76,628.50 in post-escrow construction disbursements.

The amount being claimed due by T.D. I. is approximately $720,000, as I understand the situation. That means that here is a total of $222,000 in interest, points, fees, foreclosure expense, and other finance charges, that is in dispute. It is this amount that we can either try to resolve now, litigate over, or find an alternate dispute resolution process to agree upon in an attempt to save money and time.

Taking the first, allow me to share this recognition from my litigation experience: no case is ever 100% certain. In fact, a mentor of mine (an appellate court justice) once advised me that the very best case has only an 80% odds of prevailing ( I did not state "winning" because even a prevailing party seldom recovers all the legal fees it costs "to prevail"). That being the premise, it is my opinion that my clients have a much better chance to prevail in a trial than T.D.I does, and I would guess that the odds were something like 70% to 30%. A mediator using that same analysis would then recommend a negotiated settlement whereby T.D.I. waives 70% of the disputed $222,000 and my clients pay 30% of it, or $66,600. That would make their payoff approximately $565,000. And in the unlikely event that you would be willing to settle for this

Phillip Goldstein
July 14, 2008
Page 6

sum, as a compromise that avoids the risks, expense and hassle of a lawsuit, I believe that my clients would so agree.

Assuming, however, that such an early compromise and settlement is not in the cards, I have an alternative to propose that will not instantly resolve the dispute, but should expedite resolution and reduce the legal expense. And that is that my clients pay off the undisputed portion of your loan (the $498,067.89) and deposit the disputed sum of $222,000 into a blocked account (interest bearing); T.D.I would reconvey the deed of trust upon receipt of the undisputed portion and evidence of deposit of the disputed portion. The parties would then arbitrate the dispute before a retired judge or magistrate that has T.I.L.A experience and foreclosure law experience (the selection to be agreed by the parties, and if no agreement reached, either can petition the San Francisco County Superior Court for appointment of such). In the arbitration, costs would be shared but the party that ultimately prevails will be entitled to recover not just their share of the arbitration costs but also their attorney's fees incurred.

For what it is worth, a recent T.I.L.A. case that I handled, wherein the primary issue was whether the loan was "business" or "personal" (exempt or not exempt) cost each side over $125,000 in legal fees and costs, of which the ultimate "winner" recovered only $50,000. So, who "won"? Obviously, the answer is "the lawyers".

Phillip Goldstein
July 14, 2008
Page 7

Hoping to hear from you or your attorney by 5:00 PM next Monday (so I know whether or not to go forward with the lawsuit and foreclosure injunction), I remain

Very truly yours,

LAW OFFICES OF MICHAEL E. STONE

Michael E. Stone

MES/td

cc: clients

**DOSS LAW**

| DENNIS H. DOSS | GENERAL MANAGER | dennis@dosslaw.com
2020 MAIN STREET | SUITE 950 | IRVINE | CALIFORNIA 92614-8231
| PH 949.757.8201 | FX 949.757.5741 | www.dosslaw.com

*(via fax)*

July 28, 2008

Michael Stone, Esq.
3425 South Bascom Avenue, Suite I
Campbell, CA 95008

Re:  Hickman Claim

Dear Mr. Stone:

I represent Trust Deed Investments, Inc., in connection with the various claims you have asserted on behalf of Brenda Hickman and Betty Henry.

As you well know, the right to cancel and the high-cost provisions of the Truth-in-Lending Act are only invoked when the collateral securing a consumer loan is owner-occupied residential property. I'm sure you will be able to confirm with your clients that 473 Hill Street had been vacant for at least two years. We have many papers in the file indicating that Ms. Hickman did not live there and in fact lived at 909 South Norfolk in San Mateo. In addition, her application indicates that the purpose of the loan was "investment," presumably to rehabilitate the property and to sell it.

Therefore, Trust Deed Investments declines your claims as without merit. My client intends to fully enforce the loan documents.

Your claims are in the nature of an attack on the security of the deed of trust and as such my client is entitled to recovery of his attorneys fees to date. However, fees will be added to the deed of trust only if you persist in pursuing these claims after receiving this letter.

If you have any questions, please feel free to contact me at (949) 757-8201.

Very truly yours,

*Dennis H. Doss*

Dennis H. Doss
General Manager

JS 44 (Rev. 12/07) (cand rev 1-16-08)   **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

**I. (a) PLAINTIFFS**

BRENDA HICKMAN and BETTY HENRY

**DEFENDANTS** Trust Deed Investments, Inc., a California corporation; PHILIP B. GOLDSTEIN; THE HASKELL PROPERTIES; JEROME M. BOSCOE; NIKOS GLIMIDAKIS; et al.

**(b)** County of Residence of First Listed Plaintiff   San Mateo
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   San Francisco
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Michael E. Stone, Esq. SBN 46016  Leo B. Siegel, Esq. SBN 116841
LAW OFFICE OF MICHAEL E. STONE
3425 S. Bascom Ave., Ste. I
Campbell, CA 95008
(408) 377-9899

Attorneys (If Known)

Dennis H. Doss, Esq.
2020 Main St., suite 950
Irvine, CA 92614
(949) 727-8201

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☒ 220 Foreclosure | ☐ 442 Employment | | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities— Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities— Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus— Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15. U.S.C.§§1601 et seq
Brief description of cause:
Violation of Truth In Lending Act

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 223,000 and rescission of deed of trust
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)**
(PLACE AND "X" IN ONE BOX ONLY)
☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE

DATE
July 31, 2008

SIGNATURE OF ATTORNEY OF RECORD

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.    **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.    **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**    Example:    U.S. Civil Statute: 47 USC 553
                                                            Brief Description: Unauthorized reception of cable service

VII.    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.    **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

Brenda Hickman and Betty Henry

**SUMMONS IN A CIVIL CASE**   **SC**

CASE NUMBER:

V.

Trust Deed Investments, Inc., a California
corporation; Philip B.Goldstein;
See Attachment For Additional Defendants

**CV 08    3686**

TO:

*above defendants*

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY

Michael E. Stone, Esq. SBN 46016
Leo B. Siegel, Esq. SBN  116841
LAW OFFICE OF MICHAEL E. STONE
3425 S. Bascom Ave., Ste. I
Campbell, CA  95008

an answer to the complaint which is herewith served upon you, within *20* days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

AUG — 1 2008

RICHARD W. WIEKING

_____
CLERK

_____
DATE

_____
(BY) DEPUTY CLERK
ANNA SPRINKLES

**ATTACHMENT**
**LIST OF ADDITIONAL DEFENDANTS**

THE HASKELL PROPERTIES; NIKOS GLIMIDAKIS; PENSCO TRUST COMPANY,
CUSTODIAN FBO JERRY ANGEL IRA; PENSCO TRUST COMPANY, CUSTODIAN
FBO BARBARA SULLICAN IRA; STERLING TRUST COMPANY, CUSTODIAN FBO
GLEN SHAPIRO, ACCOUNT #095011; BARRY BERKOWITZ; DAVID N. RICHMAN M.D.
401-K PROFIT SHARING PLAN; JOHN DELLAR AND JOBYNA DELLAR
REVOCABLE TRUST; ROSLYN COHN; PATTI ENGLANDER; THE GILL 1995
TRUST; PATTI ENGLANDER; STERLING TRUST COMPANY, CUSTODIAN FBO
VICKI W. SHAPIRO, ACCOUNT #095114; THE GILL 1995 TRUST, and DOES 1-20,
inclusive,

## RETURN OF SERVICE

|  | DATE |
|---|---|
| Service of the Summons and Complaint was made by me [1] | |

| Name of SERVER (PRINT) | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐     Served Personally upon the Defendant. Place where served: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

☐     Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and  . . . . .
discretion then residing therein.
Name of person with whom the summons and complaint were left

☐     Returned unexecuted:

☐     Other *(specify)*:

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing
information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
             *Date*                                     *Signature of Server*

                                           _____
                                           *Address of Server*

(1)     As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

```
1   Michael E. Stone, Esq. SBN: 46016
    Leo B. Siegel, State Bar No. 116841
2   LAW OFFICE OF MICHAEL E. STONE
    3425 S. Bascom Avenue, Suite I
3   Campbell, California 95008
    408/377-9899 Telephone
4   408/377-5270 Facsimile
    Email: mikeestone@yahoo.com
5       K9esq@flash.net
```

ORIGINAL
FILED

AUG - 1 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6  Attorneys for Plaintiffs, BRENDA HICKMAN
   and BETTY HENRY

SC

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11                 CV   08   NO.   3686

12  BRENDA HICKMAN and BETTY HENRY,    CASE NO.

13           Plaintiffs,      ~~PROPOSED~~ ORDER TO SHOW
                               CAUSE RE PRELIMINARY
14      vs.      INJUNCTION AND TEMPORARY
                               RESTRAINING ORDER
15  TRUST DEED INVESTMENTS, INC.,
    a California corporation; PHILIP B. GOLDSTEIN;
16  THE HASKELL PROPERTIES; JEROME M.
    BOSCOE; NIKOS GLIMIDAKIS; et al.,

17           Defendants.

18

19

20      Upon considering the Motion and Memorandum of Points and Authorities In Support

21  submitted by plaintiffs, the accompanying declarations, and any opposition submitted thereto, and it

22  appearing to the satisfaction of the Court that this is a proper case for issuance of an order to show

23  cause and temporary restraining order, and that, unless the temporary restraining order is granted as

24  requested, immediate and irreparable loss, damage or injury will result to plaintiffs before the matter

25  can be heard on notice,

26      IT IS HEREBY ORDERED that the above-named defendants, and each of them, appear in

27  Courtroom ___ of this Court, located at 450 Golden Gate Avenue, San Francisco, California, on

28

---

1

[PROPOSED] ORDER TO SHOW CAUSE RE PRELIMINARY JUNCTION AND TEMPORARY
RESTRAINING ORDER

1   August 4 _____, 2008 at 2:00 p.m., or as soon thereafter as the matter may be heard,

2 then and there to show cause, if any they have, why they, and each of them, and their agents,

3 employees, successors, attorneys and all persons in active concert and participation with them, should

4 not be enjoined and restrained during the pendency of this action from engaging in, committing or

5 performing, directly or indirectly, selling or attempting to sell or causing to be sold that real property

6 commonly known as 473 Hill Street, San Francisco, California, either under a power of sale contained

7 in a deed of trust or by a judicial foreclosure action.

8       IT IS FURTHER ORDERED that, pending the hearing and determination of the order to show

9 cause, the above-named defendants, and each of them, and their agents, employees, successors,

10 attorneys and all persons in active concert and participation with them, shall be, and they hereby are,

11 enjoined and restrained from engaging in, committing or performing, directly or indirectly, selling

12 or attempting to sell or causing to be sold that real property commonly known as 473 Hill Street, San

13 Francisco, California, either under a power of sale contained in a deed of trust or by judicial

14 foreclosure action.

15 Dated: August _1_, 2008

16

17                        _Samuel Conti_
                         JUDGE OF THE UNITED STATES

18                          DISTRICT COURT

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER TO SHOW CAUSE RE PRELIMINARY JUNCTION AND TEMPORARY