1  Michael E. Stone, Esq. SBN: 46016
   Leo B. Siegel, State Bar No. 116841
2  LAW OFFICE OF MICHAEL E. STONE
   3425 S. Bascom Avenue, Suite I
3  Campbell, California 95008
   408/377-9899 Telephone
4  408/377-5270 Facsimile
   Email: mikeestone@yahoo.com
5      K9esq@flash.net

6  Attorneys for Plaintiffs, BRENDA HICKMAN
   and BETTY HENRY

7

8

           IN THE UNITED STATES DISTRICT COURT
9
         FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
                 SAN FRANCISCO DIVISION
11

12

BRENDA HICKMAN and BETTY HENRY,          CASE NO.    **3686**
13
          Plaintiffs,                    MOTION AND MEMORANDUM
14                                       OF POINTS AND AUTHORITIES
      vs.                                IN SUPPORT OF A TEMPORARY
15                                       RESTRAINING ORDER AND A
TRUST DEED INVESTMENTS, INC.,            PRELIMINARY INJUNCTION
16 a California corporation; PHILIP B. GOLDSTEIN;
   THE HASKELL PROPERTIES; JEROME M.
17 BOSCOE; NIKOS GLIMIDAKIS; et al.,

18          Defendants.
                                    /
19

20       Plaintiffs Brenda Hickman and Betty Henry hereby move the Court for a Temporary

21 Restraining Order and Preliminary Injunction and hereby submit the following points and authorities

22 in support therefore.

23
                         1. **INTRODUCTION**
24
       Plaintiffs Brenda Hickman and Betty Henry (hereinafter "Plaintiffs") hereby request that this
25
   Court restrain the foreclosure sale of Mrs. Henry's home, now scheduled for August 5, 2008, and
26
   order the Defendants to show cause, if any they have, why they should not be further enjoined from
27
   foreclosing on said home pending resolution of this action. Absent such an order, Mrs. Henry, an
28

                                         1

1  elderly widow in her eighties, would lose her home, a unique property whose loss cannot be

2  compensated for by monetary damages.

3      The grounds for the temporary restraining order are that the sale is scheduled to be held before

4  a fully noticed hearing could be scheduled for a pende lite injunction, and the order is necessary to

5  preserve the status quo and prevent irreparable loss prior to a decision on the merits.

6      The grounds for the preliminary injunction thereafter are that Plaintiffs have both a probable

7  success in the merits of their action and the possibility of irreparable harm if the foreclosure sale

8  proceeds prior to a judgment in the case; and even if that were not so, Plaintiffs have raised serious

9  questions of law and the balance of hardships tips sharply in their favor.

10  ## 2. FACTUAL BASIS

11      The application for a temporary restraining order and preliminary injunction is based on

12  the following facts:

13      1.    The subject property is a Single Family Residential Dwelling commonly known as

14  473 Hill Street, San Francisco, California, and more particularly described in the Deed of Trust

15  attached to the Complaint as Exhibit "C" and to this Memorandum as Exhibit "1".

16      2.    Said property has been the principal residence of Plaintiff Betty Henry for over

17  60 years. Mrs. Henry is an 89 year old widow and over the years raised her family in the home.

18      3.    In or about 2004, because Mrs. Henry had been unable to adequately maintain the

19  property, the City and County of San Francisco declared it "unsafe" and a "public nuisance" and

20  ordered Mrs. Henry to abate the nuisance by making repairs.

21      4.    On or about November 17, 2005, Mrs. Henry's daughter, Plaintiff Brenda

22  Hickman, helped her mother obtain a $325,000 loan for the purpose of repairing and remodeling

23  Mrs. Henry's residence. At the request of the lender (or loan agent), Brenda Hickman was added

24  to the title of the property in November of 2005, and co-signed the note and deed of trust. That

25  loan, however, was for a short term period and turned out to be insufficient to provide enough

26  funds to accomplish the purpose.

27      5.    In January of 2007, Ms. Hickman and Mrs. Henry sought to refinance the 2005

28  loan and to obtain sufficient funds to complete the repairs and remodeling of the subject property.

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF A TEMPORARY
RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

1  They contacted Defendant Nikos Glimidakis, a licensed real estate agent, for said purpose and he

2  introduced them to Defendant Philip Goldstein of Trust Deed Investments (hereinafter "TDI"), the

3  eventual lender.

4       6.    At all times mentioned herein, the Defendants were made aware and had

5  knowledge of the fact that the intended purpose of the loan Plaintiffs were seeking was to

6  complete the repairs and remodeling of Mrs. Henry's home so that she could continue to occupy it

7  as her principal residence.

8       7.    Nevertheless, when Defendants wrote up the loan documentation, for reasons not

9  understood by Plaintiffs, they designated only Brenda Hickman as "the borrower" and wrote in

10  that the purpose of the loan was "for investment". That, they explained, was to help Plaintiffs

11  "qualify" for the necessary loan amount, but Mrs. Henry was still to put up her ownership interest

12  in her principal dwelling as security for the loan.

13       8.    On or about January 25, 2007, Plaintiffs did sign the loan documents and

14  Defendant TDI purported to make an $800,000 loan to Brenda Hickman. However, on said date

15  only $421,439.39 was actually loaned to Plaintiffs, paying off the $329,894.97 on their prior loan,

16  $887.29 on the property taxes, and $90,659.13 to their contractor doing the repairs and

17  remodeling at that time.

18       9.    Defendants purported to have also funded, as part of the loan, the sum of

19  $118,000 to be held in a trust account for "interest reserve", and the sum of $175,286.51 also to

20  be held in a trust account to be used as construction funds to complete repairs and remodeling of

21  Mrs. Henry's home. Plaintiffs have since been informed, and on said information and belief

22  allege, that said reserve monies were not funded and deposited into a trust account in January of

23  2007 as represented.

24       10.    From January 25, 2007 to November 19, 2007, Defendants did make further

25  construction disbursements totaling $76,628.50. Since November 19, 2007, no further monies

26  have been released or paid by Defendants for the construction.

27       11.    The balance of the $800,000 loan amount consisted of some $85,274.10 in finance

28  charges that Defendants imposed on Plaintiffs, $40,000 of which was a loan commission to

1  Defendant Nikos Glimidakis and his broker, The Haskell Properties, and $40,000 of which was a

2  commission to Defendants Philip Goldstein and TDI.  On the $800,000 total, if Plaintiffs had ever

3  received it, those finance charges would be equal to 10.6% of the principal; but on the actual

4  principal paid to or for the benefit of Plaintiffs, the total being $498,067.28, said finance charges

5  were even more excessive, being 17.1% of the principal.

6       12.    Attached hereto as Exhibit "1" and made a part hereof by reference is a true copy

7  of the deed of trust executed by Plaintiffs.

8       13.    Attached hereto as Exhibit "2" and made a part hereof by reference is a true copy

9  of the Note executed by Plaintiff Brenda Hickman.

10       14.    Attached hereto as Exhibit "3" and made a part hereof by reference is

11  a true copy of the escrow closing statement provided to Plaintiffs on or about January 25, 2007.

12       15.    In late 2007, Plaintiffs were having construction difficulties with their then

13  contractor and by early 2008 had terminated his services.

14       16.    In April of 2008, Plaintiffs requested an accounting of the reserve funds

15  purportedly held by Defendants Philip Goldstein and TDI.  And on or about May 20, 2008, they

16  were given a wholly inaccurate and incomplete "accounting", a copy of which is attached hereto

17  as Exhibit "4" and incorporated by reference.

18       17.    After Plaintiffs objected to the sufficiency and accuracy of that "accounting", on

19  or about May 28, 2008, Defendant TDI provided another "accounting", a true copy of which is

20  attached hereto as Exhibit "5" and incorporated by reference.  But even that "accounting" was

21  incomplete and inaccurate, and did not inform Plaintiffs of what the balance was in the reserve

22  trust nor the total amount of actual indebtedness on the loan.

23       18.    On or about April 9, 2008, without giving Plaintiffs the 10-day prior notice

24  required by the terms of the Note for non-monetary defaults, Defendants Philip Goldstein and TDI

25  declared the loan accelerated, instituted nonjudicial foreclosure proceedings, and recorded a

26  Notice of Default against the subject property.  A true copy of said Notice is attached hereto as

27  Exhibit "6" and incorporated by reference.

28       19.    Per said Notice of Default, Plaintiffs were given three months to cure the declared

4

1  default, which was stated to be *inter alia* the cessation of labor on the repairs and remodeling that

2  resulted from the contractor difficulties stated above.

3       20.    During the three month period, Plaintiffs cured said "default" by engaging a new

4  contractor, causing the construction labor to be recommenced, and the deficient construction of

5  the prior contractor repaired or replaced.  Plaintiffs gave Defendants written notice of the same

6  during that period.

7       21.    Despite said cure of the nonmonetary default claimed by Defendants, on or about

8  July 11, 2008, Defendants Goldstein and TDI caused a Notice of Trustee's Sale to be recorded and

9  published, setting a foreclosure sale of the subject property for Tuesday, August 5, 2008 at 2:00

10  p.m. at the Van Ness Ave. entrance to San Francisco City Hall.  A true copy of said Notice is

11  attached hereto as Exhibit "7" and made a part hereof by reference.

12       22.    On July 14, 2008, Plaintiffs, through their counsel, gave notice to Defendants that

13  among other problems the subject loan was in violation of the Truth In Lending Act ("TILA"),

14  that Plaintiffs had the statutory right to rescind the loan, and that Plaintiffs were exercising that

15  right to rescind the loan and tendered a return to Defendants of the monies received by Plaintiffs

16  in the sum of $498,067.89.  A true copy of said notice is attached hereto as Exhibit "8" and

17  incorporated hereat by reference.

18       23.    On July 28, 2008, Defendant TDI, through its counsel, gave Plaintiffs notice that

19  it declined the tender and "intends to fully enforce the loan documents".  A true copy of that

20  notice is attached hereto as Exhibit "9" and incorporated by reference.

21                        **3. LEGAL DISCUSSION**

22       *A. Status Quo*

23       A temporary restraining order is a provisional remedy designed to preserve the status quo

24  and prevent irreparable loss of rights prior to judgment.  Sierra On-Line, Inc. v. Phoenix Software,

25  Inc., 739 F.2d 1415, 1422 (9th Cir. 1984), A party seeking temporary injunctive relief under Rule

26  65 bears the burden of showing either (1) a combination of probably success on the merits and the

27  possibility of irreparable harm, or (2) that serious questions are raised and the balance of

28  hardships tips sharply in the moving party's favor.  Walczak v. EPL Prolong, Inc., 198 F.3d 725,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF A TEMPORARY RESTRAINING
ORDER AND A PRELIMINARY INJUNCTION

1  730-31 (9th Cir. 1999); Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir.

2  1987).

3       In the case at hand, each of these requirements are satisfied. While the dollar value of

4  Mrs. Henry's home might be measurable, the inherit value to her is not. She has lived there for

5  decades and has a personal attachment. It is unique in ways far beyond just being the home in

6  which she lived and raised her family. If it were sold in foreclosure, her loss would be irreparable.

7     *B. Merits*

8       As to the probable success on the merits of the underlying causes of action, there can be

9  little question that the loan was covered by TILA and that it contained prohibited provisions.

10 While Defendants may argue that the *form* of the loan should take precedence over the *substance*

11 (i.e. that the "borrower" was only Brenda Hickman, that the property was not the "borrower's"

12 residence, that the loan was made for "business purposes"; and that it was therefore exempt from

13 TILA), those arguments will not avail them. First, there is the fact that the law favors substance

14 over form; and the substance of this transaction is that it was a loan to both of the Plaintiffs, that it

15 was secured by the principal residence of Mrs. Henry, that the purpose was "personal" in nature,

16 not "business.". The purpose of the loan was to complete the repairs and remodeling so that Mrs.

17 Henry could continue to reside in the house.

18      As the court stated in Riviere et al v. Banner Chevrolet (5th Cir. 1999) 184 F 3d 457) "We

19 have found it necessary when classifying a loan to examine the transaction as a whole paying

20 particular attention to the purpose for which credit was extended in order to determine whether the

21 transaction was primarily consumer or commercial in nature. In making this determination, we

22 have elevated *substance over form* holding that 'neither the lender's motives nor the fashion in

23 which the loan is memorialized are dispositive of this inquiry.' We must therefore 'look to the

24 substance of the transaction and the borrower's purpose in obtaining the loan, rather than the form

25 alone.'" (at page 462, with cites of quotes omitted).

26      Thus, looking at the substance, not the form, of the subject loan, it was a consumer or

27 personal loan (not business or commercial) made to both Betty Henry and her daughter for the

28 purpose of repairing and remodeling the principal residence of Mrs. Henry.

1    Morever, even if Defendants could convince the court otherwise, the loan is still covered

2   under TILA. Regulation Z at §2262.2(a) provides that for purposes of rescission, a "consumer"

3   includes any natural person who's ownership interest in her principal dwelling is subject to risk of

4   loss, even if she was not liable personally on the underlying secured debt, either primarily or

5   secondarily.  and there can be no dispute that Betty Henry signed the subject deed of trust putting

6   her interest in the subject property at risk.  That property is, and has been for years, her principal

7   dwelling, absent only the short period of time she has to vacate it during the construction.

8   Consequently, she is a "consumer" who had the right to rescind the loan if it contained any

9   prohibited provisions, and it did.

10    A loan covered by TILA cannot contain a default interest clause; 15 U.S.C. §1639(d) and

11   Reg Z §226.32(d).  Defendants' Note contained such a clause at paragraph 4(B); see Exhibit "2".

12    A loan covered by TILA cannot provide for finance charges (points, fees, etc.) in excess

13   of eight percent (8%); 15 U.S.C. §1602 (a) and Reg Z §226.32 (a)(1).  As noted above, Plaintiffs

14   were charged either 10.6% or 17.1%, depending how one calculates them, in total finance charges.

15    A loan covered by TILA cannot have prepaid interest in excess of two months; 15 U.S.C.

16   §1639(g) and Reg Z §226.32(d)(3).  As pointed out above, Defendants held back $118,000 in

17   prepaid interest (the "interest reserve") which is 15 months interest on the full $800,000, and a

18   while lot more months when calculated on the actual money disbursed under the loan.

19    A loan covered by TILA cannot have a balloon payment if the term is less than five years.

20   15 U.S.C. §1639(e) and Reg Z §226.32(d)(2). The term of the subject loan was less than five

21   years and it does have a balloon payment provision; see paragraph 3 of the Note, Exhibit "2".

22    The inclusion of any one of these prohibited terms (the subject loan includes four) is clear.

23   15U.S.C. §1639 (j) and Reg Z §226§1639 provide : "any mortgage that contains a provision

24   prohibited by this section shall be deemed a failure to deliver the material disclosures required

25   under this subchapter, for the purpose of section 1635 of this title".  And that section, 11

26   U.S.C.§1635, provides that the obligor has a right to rescind the loan and that when the obligor

27   exercises that right "he is not liable for any finance or other charge", and any security interest

28   given "becomes void upon rescission".  Reg Z §226.15(d)(1) provides the same.

1     As the court stated in <u>Farley v. Turan-Foley Imports, Inc.</u> (5th Cir. 1995) 65 F 3d 475, the

2 Truth In Lending Act is to be enforced strictly against creditors and construed liberally in favor of

3 consumers. It is a remedial statute.

4     Applying that standard to the facts at hand, there is more than just a "probable validity" to

5 the merits of Plaintiffs' claims. Plaintiffs should most certainly prevail on their claims.

6     *C. Balance Of Hardships*

7     As pointed out above, when serious questions are raised (and Plaintiffs submit that they

8 have raised such serious questions), then a court requested to issue a temporary restraining order

9 should do so if the balance of hardships tips in the moving party's favor; <u>Rodeo Collection Ltd.</u>

10 IBID. And in the case at hand, even if the court is not yet convinced of the probable likelihood of

11 Plaintiffs' succeeding on the merits, it should still issue the temporary restraining order.

12     The hardship to Betty Henry of losing the home she has lived in for many, many years, and

13 the home in which she raised her family during those years; that hardship far outweighs any

14 hardship of TDI, a commercial lender that has not only not suffered *any* monetary loss to date

15 (having been paid over $40,000 in finance charges and holding prepaid interest of $118,000) but

16 also holds an undistributed balance of construction funds in the amount of $98,658.01. How TDI

17 can argue any hardship to it by being restrained from foreclosing pending the resolution of this

18 case is difficult to imagine.

### 4. CONCLUSION

19

20     As stated above, when a violation of the Truth In Lending Act or the Regulation Z

21 provision occurs, the borrower is entitled to rescind the transaction and the security interest

22 thereafter becomes legally void. Plaintiffs did exercise their right to rescind and as a result,

23 Defendants have absolutely no right to continue with their foreclosure. The deed of trust is void

24 and unenforceable. However, if Defendants are not restrained from their attempt to sell the

25 property, a bona fide purchaser could acquire title at the foreclosure auction; and then that bell

26 could not be unrung.

27     Plaintiffs respectfully request that the scheduled foreclosure sale be restrained until such

28 time as a full hearing can be held; that Defendants ordered to show cause why a preliminary

1  injunction should not be issued pending resolution of Plaintiffs' case; and that such a preliminary

2  injunction then be granted.

3

4                                                              Respectfully submitted,

5  Dated: July 31, 2008                                        LAW OFFICE OF MICHAEL E. STONE

6

7                                              By:    _____

8                                                     Michael E. Stone, Attorney for Plaintiffs,
                                                       BRENDA HICKMAN and BETTY HENRY
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF A TEMPORARY RESTRAINING
ORDER AND A PRELIMINARY INJUNCTION

# EXHIBIT "1"

**Recording Requested By**
TRUST DEED INVESTMENTS, INC.
1255 POST STREET
SUITE 496
SAN FRANCISCO CA 94109

**When Recorded Mail To**
TRUST DEED INVESTMENTS, INC.
1255 POST STREET
SUITE 496
SAN FRANCISCO CA 94109

APN #                                    Space above this line for recorder's use

# CONSTRUCTION DEED OF TRUST
## ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

Loan No. 4218

THIS DEED OF TRUST (herein "Instrument") is made this date **January 22, 2007**, among the Trustor/Grantor, **Brenda Hickman, an unmarried woman**, whose address is **909 South Norfolk, San Mateo, CA 94411** (herein "Borrower"), **TRUST DEED INVESTMENTS, INC.** (herein "Trustee"), and the Beneficiary, **TRUST DEED INVESTMENTS, INC.,** a **California Corporation, C.F.L. License No. 6052536, 1255 Post Street, Suite 496, San Francisco, CA  94109** (herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in San Francisco County, State of California, which has the address of **473 Hill Street, San Francisco, CA 94114** ('Property Address'), described as follows: SEE EXHIBIT "A".

TOGETHER with all buildings, improvements and tenements now or hereafter erected on the property, and all heretofore or hereafter vacated alleys and streets abutting the property, and all easements, rights, appurtenances, rents (subject however to the assignment of rents to Lender herein), royalties, mineral, oil and gas rights and profits, water, water rights, and water stock appurtenant to the property, and all fixtures, machinery, equipment, engines, boilers, incinerators, building materials and appliances, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light; and all elevators, and related machinery and equipment, fire prevention and extinguishing apparatus, security equipment and dishwashers, disposals, awnings, storm windows, storm doors, screens, mirrors, cabinets, paneling, attached floor coverings, antennas and trees; all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the real property covered by this Instrument; and all of the foregoing, together with said property (or the leasehold estate in the event this Instrument is on a leasehold) are herein referred to as the "Property":

TO SECURE TO LENDER (a) the repayment of the indebtedness evidenced by Borrower's note dated **January 22, 2007** (herein "Note") in the principal sum of U.S. **$800,000.00**, with interest thereon, and all renewals, extensions and modifications thereof; (b) the repayment of any future advances, with interest thereon, made by Lender to Borrower (herein "Future Advances"); (c) the performance of the covenants and agreements of Borrower contained in a Construction Loan Agreement between Lender and Borrower dated January 22, 2007, if any, as provided in paragraph 25 hereof; (d) the payment of all other sums, with interest thereon advanced in accordance herewith to protect the security of this Instrument; and (e) the performance of the covenants and agreements of Borrower herein contained.

May 08 2008 4:16PM   HAN & PARK LLP   p. 11

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant, convey and assign the Property (and, if this instrument is on a leasehold, that the ground lease is in full force and effect without modification except as noted above and without default on the part of either lessor or lessee thereunder), and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

## UNIFORM COVENANTS.

Borrower and Lender covenant and agree as follows:

1. **PAYMENT OF PRINCIPAL AND INTEREST.** Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, any prepayment and late charges provided in the Note, and all other sums secured by this Instrument or any other obligation secured by a lien which is senior in priority to this Instrument.

2. **FUNDS FOR TAXES, INSURANCE AND OTHER CHARGES—Not Applicable.**

3. **APPLICATION OF PAYMENTS.** Unless applicable law provides otherwise, all payments received by Lender from Borrower under the Note or this Instrument shall be applied by Lender in the following order of priority: (i) any late charges (ii) amounts payable to Lender by Borrower under paragraph 2 hereof if applicable; (iii) interest payable on the Note; (iv) principal of the Note; (v) interest payable on advances made pursuant to paragraph 8 hereof; (vi) principal of advances made pursuant to paragraph 8 hereof; (vii) interest payable on any Future Advance, provided that if more than one Future Advance is outstanding, Lender may apply payments received among the amounts of interest payable on the Future Advances in such order as Lender, in Lender's sole discretion, may determine; (viii) principal of any Future Advance, provided that if more than one Future Advance is outstanding, Lender may apply payments received among the principal balances of the Future Advances in such order as Lender, in Lender's sole discretion, may determine; and (ix) any other sums secured by this Instrument in such order as Lender, at Lender's option, may determine; provided, however, that Lender may, at Lender's option, apply any sums payable pursuant to paragraph 8 hereof prior to interest on and principal of the Note, but such application shall not otherwise affect the order of priority or application specified in this paragraph 3.

4. **CHARGES; LIENS.** Borrower shall promptly discharge any lien which has, or may have, priority over or equality with, the lien of this Instrument, and Borrower shall pay, when due, the claims of all persons supplying labor or materials to or in connection with the Property. Without Lender's prior written permission, Borrower shall not allow any lien inferior to this Instrument to be perfected against the Property.

5. **HAZARD INSURANCE.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured by carriers at all times satisfactory to Lender against loss by fire, hazards included within the term "extended coverage", rent loss and such other hazards, casualties, liabilities and contingencies as Lender (and, if this Instrument is on a leasehold, the ground lease) shall require and in such amounts and for such periods as Lender shall require.

All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender. Lender shall have the right to hold the policies, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums. At least thirty days prior to the expiration date of a policy, Borrower shall deliver to Lender a renewal policy in form satisfactory to Lender.

In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to Lender. Borrower hereby authorizes and empowers Lender as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Lender's expenses incurred in the collection of such proceeds; provided however, that nothing contained in this paragraph 5 shall require Lender to incur any expense or take any action hereunder. Borrower further authorizes Lender, at Lender's option, (i) to hold the balance of such proceeds to be used to reimburse Borrower for the cost of reconstruction or repair of the Property if, in its sole discretion, Lender determines that its security will not be materially

impaired, or (ii) to apply the balance of such proceeds to the payment of the sums secured by this Instrument, whether or not then due, in the order of application set forth in paragraph 3 hereof (subject, however, to the rights of the lessor under the ground lease if this Instrument is on a leasehold).

If the insurance proceeds are held by Lender to reimburse Borrower for the cost of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition or such other condition as Lender may approve in writing. Lender may, at Lender's option, condition disbursement of said proceeds on Lender's approval of plans and specifications of an architect satisfactory to Lender, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen and such other evidence of costs, percentage completion of construction, application of payments, and satisfaction of liens as Lender may reasonably require. If the insurance proceeds are applied to the payment of the sums secured by this Instrument, any such application of proceeds to principal shall not extend or postpone the due dates of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amounts of such installments. If the Property is sold pursuant to paragraph 27 hereof or if Lender acquires title to the Property, Lender shall have all of the right, title and interest of Borrower in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Property prior to such sale or acquisition.

If Borrower obtains earthquake, flood, or any other hazard insurance or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall : (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. PRESERVATION AND MAINTENANCE OF PROPERTY; LEASEHOLDS.** Borrower (i) shall not commit waste or permit impairment or deterioration of the Property, (ii) shall not abandon the Property, (iii) shall restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, in the event of any damage, injury or loss thereto, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair, (iv) shall keep the Property, including improvements, fixtures, equipment, machinery and appliances thereon, in good repair and shall replace fixtures, equipment, machinery and appliances on the Property when necessary to keep such items in good repair, (v) shall comply with all laws, ordinances, regulations and requirements of any governmental body which are applicable to the Property, (vi) shall provide, if it is a multifamily dwelling, for professional management of the Property by a residential rental property manager satisfactory to Lender pursuant to a contract approved by Lender in writing, unless such requirement shall be waived by Lender in writing, (vii) shall generally operate and maintain the Property in a manner to ensure maximum rentals, if it is a multifamily dwelling, and (viii) shall give notice in writing to Lender of and, unless otherwise directed in writing by Lender, appear in and defend any action or proceeding purporting to affect the Property, the security of this Instrument or the rights or powers of Lender. Neither Borrower nor any tenant or other person shall remove, demolish or alter any improvement now existing or hereafter erected on the Property or any fixture, equipment, machinery or appliance in or on the Property except when incident to the replacement of fixtures, equipment, machinery and appliances with items of like kind.

If this Instrument is on a leasehold, Borrower (i) shall comply with the provisions of the ground lease, (ii) shall give immediate written notice to Lender of any default by lessor under the ground lease or of any notice received by Borrower from such lessor of any default under the ground lease by Borrower, (iii) shall exercise any option to renew or extend the ground lease and give written confirmation thereof to Lender within thirty days after such option becomes exercisable, (iv) shall give immediate written notice to Lender of the commencement of any remedial proceedings under the ground lease by any party thereto and, if required by Lender, shall permit Lender as Borrower's attorney-in-fact to control and act for Borrower in any such remedial proceedings and (v) shall within thirty days after request by Lender obtain from the lessor under the ground lease and deliver to Lender the lessor's estoppel certificate required thereunder, if any. Borrower hereby expressly transfers and assigns to Lender the benefit of all covenants contained in the ground lease, whether or not such covenants run with the land, but Lender shall have no liability with respect to such covenants nor with respect to any other covenants contained in the ground lease.

Borrower shall not surrender the leasehold estate and interests herein conveyed nor terminate or cancel the ground lease creating said estate and interests, and Borrower shall not, without the express written consent of Lender, alter or amend said ground lease. Borrower covenants and agrees that there shall not be a merger of the ground lease, or of the leasehold estate created thereby, with the fee estate covered by the ground lease by reason of said leasehold estate or said fee estate, or any part

of either, coming into common ownership, unless Lender shall consent in writing to such merger; if Borrower shall acquire such fee estate, then this Instrument shall simultaneously and without further action be spread so as to become a lien on such fee estate.

7. USE OF PROPERTY. Unless required by applicable law or unless Lender has otherwise agreed in writing, Borrower shall not allow changes in the use for which all or any part of the Property was intended at the time this Instrument was executed. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Property without Lender's prior written consent.

8. PROTECTION OF LENDER'S SECURITY. If Borrower fails to perform any of the covenants and agreements contained in this Instrument, or if any action or proceeding is commenced which affects the Property or title hereto or the interest of Lender therein, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such action as Lender deems necessary, in its sole discretion, to protect Lender's interest, including, but not limited to, (i) disbursement of attorney's fees, regardless of whether any action or proceeding is filed , (ii) costs for entry upon the Property to inspect its condition, or to inspect, supervise, or do repairs or maintenance, (iii) procurement of satisfactory insurance as provided in paragraph 5 hereof, (iv) if this Instrument is on a leasehold, exercise of any option to renew or extend the ground lease on behalf of Borrower and the curing of any default of Borrower in the terms and conditions of the ground lease, (v) to pay taxes, senior liens or other liens, and (vi) any costs and expenses to investigate or implement any workout, modification, compromise, or total or partial refinancing of the indebtedness.

Any amounts disbursed by Lender pursuant to this paragraph 8, with interest thereon, shall become additional indebtedness of Borrower secured by this Instrument. Unless Borrower and Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from Borrower of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law. Borrower hereby covenants and agrees that Lender shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the indebtedness secured hereby. Nothing contained in this paragraph 8 shall require Lender to incur any expense or take any action hereunder.

9. INSPECTION. Lender may make or cause to be made reasonable entries upon and inspections of the Property.

10. BOOKS AND RECORDS. Borrower shall keep and maintain at all times at Borrower's address stated below, or at such other place as Lender may approve in writing, complete and accurate books of account and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases and other instruments which affect the Property. Such books, records, contracts, leases and other instruments shall be subject to examination and inspection at any reasonable time by Lender. Upon Lender's request, Borrower shall furnish to Lender, within one hundred twenty days after the end of each fiscal year of Borrower, a balance sheet, a statement of income and expenses of the Property and a statement of changes in financial position, each in reasonable detail and certified by Borrower and, if Lender shall require, by an independent certified public accountant. Borrower shall furnish, together with the foregoing financial statements and at any other time upon Lender's request, a rent schedule for the Property, certified by Borrower, showing the name of each tenant, and for each tenant, the space occupied, the lease expiration date, the rent payable and the rent paid.

11. CONDEMNATION. Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Lender in writing. Borrower authorizes Lender, at Lender's option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Lender subject, if this Instrument is on a leasehold, to the rights of lessor under the ground lease.

Borrower authorizes Lender to apply such awards, payments, proceeds or damages, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to restoration or repair of the Property or to payment of the sums secured by this Instrument, whether or not then due, in the order of application set forth in paragraph 3 hereof, with the balance, if any, to Borrower. Unless Borrower and Lender otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amount of such installments. Borrower agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Lender may require.

**12. BORROWER AND LIEN NOT RELEASED.** From time to time, Lender may, at Lender's option, without giving notice to or obtaining the consent of Borrower, Borrower's successors or assigns or of any junior lienholder or guarantors, without liability on Lender's part and notwithstanding Borrower's breach of any covenant or agreement of Borrower in this Instrument, extend the time for payment of said indebtedness or any part thereof, reduce the payments thereon, release anyone liable on any of said indebtedness, accept a renewal note or notes therefor, modify the terms and time of payment of said indebtedness, release from the lien of this Instrument any part of the Property, take or release other or additional security, reconvey any part of the Property, consent to any map or plan of the Property, consent to the granting of any easement, join in any extension or subordination agreement, and agree in writing with Borrower to modify the rate of interest or period of amortization of the Note or change the amount of the monthly installments payable thereunder. Any actions taken by Lender pursuant to the terms of this paragraph 12 shall not affect the obligation of Borrower or Borrower's successors or assigns to pay the sums secured by this Instrument and to observe the covenants of Borrower contained herein, shall not affect the guaranty of any person, corporation, partnership or other entity for payment of the indebtedness secured hereby, and shall not affect the lien or priority of lien hereof on the Property. Borrower shall pay Lender a reasonable service charge, together with such title insurance premiums and attorney's fees as may be incurred at Lender's option, for any such action if taken at Borrower's request.

**13. FORBEARANCE BY LENDER NOT A WAIVER.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by Lender of payment of any sum secured by this Instrument after the due date of such payment shall not be a waiver of Lender's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Instrument, nor shall Lender's receipt of any awards, proceeds or damages under paragraphs 5 and 11 hereof operate to cure or waive Borrower's default in payment of sums secured by this Instrument.

**14. ESTOPPEL CERTIFICATE.** Borrower shall within ten days of a written request from Lender furnish Lender with a written statement, duly acknowledged, setting forth the sums secured by this Instrument and any right of set-off, counterclaim or other defense which exists against such sums and the obligations of this Instrument.

**15. UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.** This Instrument is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and Borrower hereby grants Lender a security interest in said items. Borrower agrees that Lender may file this Instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Instrument or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, upon Lender's request, any financing statements, as well as extensions, renewals and amendments thereof, and reproductions of this Instrument in such form as Lender may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto.

Upon Borrower's breach of any covenant or agreement of Borrower contained in this Instrument, including the covenants to pay when due all sums secured by this Instrument, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in paragraph 27 of this Instrument as to such items. In exercising any of said remedies, Lender may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in paragraph 27 of this Instrument.

**16. LEASES OF THE PROPERTY.** As used in this paragraph 16, the word "lease" shall mean "sublease" if this Instrument is on a leasehold. Borrower shall comply with and observe Borrower's obligations as landlord under all leases of the Property or any part thereof. Borrower will not lease any portion of the Property for non-residential use except with the prior written approval of Lender. Borrower, at Lender's request, shall furnish Lender with executed copies of all leases now existing or hereafter made of all or any part of the Property, and all leases now or hereafter entered into will be in form and substance subject to the approval of Lender. All leases of the Property shall specifically provide that such leases are subordinate to this Instrument; that the tenant attorns to Lender, such attornment to be effective upon Lender's acquisition of title to the Property; that the tenant agrees to execute such further evidences of attornment as Lender may from time to time request; that the attornment of the tenant shall not be terminated by foreclosure; and that Lender may, at Lender's option, accept or reject such attornments. Borrower shall not, without Lender's written consent, execute, modify, surrender or terminate, either orally or in writing, any lease now existing or hereafter made of all or any part of the Property providing for a term of three years or more, permit an assignment or sublease of such a lease without Lender's written consent, or request or consent to the subordination of any lease of all or any part of the Property to any lien subordinate to this Instrument. If Borrower becomes aware that any tenant proposes to do, or is doing, any act or thing which may give rise to any right of set-off against rent, Borrower shall (i) take such steps as shall be reasonably calculated to prevent the accrual of any right to a set-off against rent, (ii) notify Lender thereof and of the amount of said set-off, and (iii) within ten days after such accrual, reimburse the tenant who shall have acquired such right to set-off or take such other steps as shall effectively discharge such set-off and as shall assure that rents thereafter due shall continue to be payable without set-off or deduction.

Upon Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all leases now existing or hereafter made of all or any part of the Property and all security deposits made by tenants in connection with such leases of the Property. Upon assignment by Borrower to Lender of any leases of the Property, Lender shall have all of the rights and powers possessed by Borrower prior to such assignment and Lender shall have the right to modify, extend or terminate such existing lease and to execute new leases, in Lender's sole discretion.

**17. REMEDIES CUMULATIVE.** Each remedy provided in this Instrument is distinct and cumulative to all other rights or remedies under this Instrument or afforded by law or equity, and may be exercised concurrently, independently, or successively, in any order whatsoever.

**18. ACCELERATION IN CASE OF BORROWER'S INSOLVENCY.** If Borrower shall voluntarily file a petition under the Federal Bankruptcy Act, as such Act may from time to time be amended, or under any similar or successor Federal statute relating to bankruptcy, insolvency, arrangements or reorganizations, or under any state bankruptcy or insolvency act, or file an answer in an involuntary proceeding admitting insolvency or inability to pay debts, or if Borrower shall fail to obtain a vacation or stay of involuntary proceedings brought for the reorganization, dissolution or liquidation of Borrower, or if Borrower shall be adjudged a bankrupt, or if a trustee or receiver shall be appointed for Borrower or Borrower's property, or if the Property shall become subject to the jurisdiction of a Federal bankruptcy court or similar state court, or if Borrower shall make an assignment for the benefit of Borrower's creditors, or if there is an attachment, execution or other judicial seizure of any portion of Borrower's assets and such seizure is not discharged within ten days, then Lender may, at Lender's option, declare all of the sums secured by this Instrument to be immediately due and payable without prior notice to Borrower, and Lender may invoke any remedies permitted by paragraph 27 of this Instrument. Any attorney's fees and other expenses incurred by Lender in connection with Borrower's bankruptcy or any of the other aforesaid events shall be additional indebtedness of Borrower secured by this Instrument pursuant to paragraph 8 hereof.

**19. TRANSFERS OF THE PROPERTY OR BENEFICIAL INTERESTS IN BORROWER; ASSUMPTION.**
On sale or transfer of (i) all or any part of the Property, or any interest therein, or (ii) beneficial interests in Borrower (if Borrower is not a natural person or persons but is a corporation, partnership, trust or other legal entity), Lender may, at Lender's option, declare all of the sums secured by this Instrument to be immediately due and payable, and Lender may invoke any remedies permitted by paragraph 27 of this Instrument. This option shall not apply in the event of the following:

(a) transfers by devise or descent or by operation of law upon the death of a joint tenant or a partner;

(b) sales or transfers when the transferee's creditworthiness and management ability are satisfactory to Lender and the transferee has executed, prior to the sale or transfer, a written assumption agreement containing such terms as Lender may require, including, if required by Lender, an increase in the rate of interest payable under the Note or an assumption fee to be determined by Lender;

(c) the grant of a leasehold interest in a part of the Property of three years or less (or such longer lease term as Lender may permit by prior written approval) not containing an option to purchase (except any interest in the ground lease, if this Instrument is on a leasehold);

(d) sales or transfers of beneficial interests in Borrower, provided that such sales or transfers, together with any prior sales or transfers of beneficial interests in Borrower, but excluding sales or transfers under paragraphs (a) and (b) above, do not result in more than 49% of the beneficial interests in Borrower having been sold or transferred since commencement of interest payments under the Note; and

(e) sales or transfers of fixtures or any personal property pursuant to the first paragraph of paragraph 6 hereof.

**20. NOTICE.** Except for any notice required under applicable law to be given in another manner, any notice to Borrower provided for in this Instrument or in the Note shall be given by mailing such notice by certified mail addressed to Borrower at Borrower's address stated above or at such other address as Borrower may designate by notice to Lender as provided herein, and any notice to Lender shall be given by certified mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Instrument or in the Note shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**21. SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; AGENTS; CAPTIONS.**
The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 19 hereof. All covenants and agreements of Borrower shall be joint and several. In exercising any rights hereunder or taking any actions provided for herein, Lender may act through its employees, agents or independent contractors, as authorized by Lender. The captions and headings of the paragraphs of this Instrument are for convenience only and are not to be used to interpret or define the provisions hereof.

**22. DEED OF TRUST; GOVERNING LAW; SEVERABILITY.** This form of instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property and related fixtures and personal property. This Instrument shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision of this Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Instrument or the Note which can be given effect without the conflicting provisions, and to this end the provisions of this Instrument and the Note are declared to be severable. In the event that any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any charge provided for in this Instrument or in the Note, whether considered separately or together with other charges levied in connection with this Instrument and the Note, violates such law, and Borrower is entitled to the benefit of such law, such charge is hereby reduced to the extent necessary to eliminate such violation. The amounts, if any, previously paid to Lender in excess of the amounts payable to Lender pursuant to such charges as reduced shall be applied by Lender to reduce the principal of the indebtedness evidenced by the Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all indebtedness which is secured by this Instrument or evidenced by the Note and which constitutes interest, as well as all other charges levied in

connection with such indebtedness which constitute interest, shall be deemed to be allocated and spread over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest computed thereby is uniform throughout the stated term of the Note.

**23. WAIVER OF STATUTE OF LIMITATIONS.** Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce the Note or any other obligation secured by this Instrument.

**24. ORDER OF REMEDIES AND SATISFACTION OF INDEBTEDNESS; WAIVER OF MARSHALING.** Notwithstanding the existence of any other security interests in the Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. Lender shall have the right to determine the order in which any or all portions of the indebtedness secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein. Borrower, any party who consents to this Instrument, and any party who now or hereafter acquires a security interest in the Property and who has actual or constructive notice hereof hereby waive any and all right to require the marshaling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

**25. CONSTRUCTION LOAN PROVISIONS.** Borrower agrees to comply with the covenants and conditions of the Construction Loan Agreement, if any, which is hereby incorporated by reference in and made a part of this Instrument. All advances made by the Lender pursuant to the Construction Loan Agreement shall be indebtedness of Borrower secured by this Instrument, and such advance may be obligatory as provided in the Construction Loan Agreement. All sums disbursed by Lender prior to completion of the improvements to protect the security of this Instrument up to the principal amount of the Note shall be treated as such disbursements pursuant to the Construction Loan Agreement. All such sums shall bear interest from the date of disbursement at the rate stated in the Note, unless collection from Borrower of interest at such rate would be contrary to applicable law in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law and shall be payable upon notice from Lender to Borrower requesting payment therefor.

From time to time as Lender deems necessary to protect Lender's interests, Borrower shall, upon request of Lender, execute and deliver to Lender, in such form as Lender shall direct, assignments of any and all rights or claims which relate to the construction of the Property and which Borrower may have against any party supplying or who has supplied labor, materials or services in connection with construction of the Property. In case of breach by Borrower of the covenants and conditions of the Construction Loan Agreement, Lender, at Lender's option, with or without entry upon the Property, (i) may invoke any of the rights or remedies provided in the Construction Loan Agreement, (ii) may accelerate the sums secured by this Instrument and invoke those remedies provided in paragraph 27 hereof, or (iii) may do both. If, after the commencement of interest payments due under the Note, the Note and this Instrument are sold by Lender, from and after such sale the Construction Loan Agreement shall cease to be a part of this Instrument and Borrower shall not assign any right of set-off, counterclaim or other claim or defense arising out of or in connection with the Construction Loan Agreement against the obligations of the Note and this Instrument.

**26. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues of the Property, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Property, regardless of to whom the rents and revenues of the Property are payable. Borrower hereby authorizes Lender or Lender's agents to collect the aforesaid rents and revenues and hereby agrees to direct each tenant of the Property to pay such rents to Lender or Lender's agents; provided, however, that prior to written notice given by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower, to apply the rents and revenues so collected to the sums secured by this Instrument in the order provided in paragraph 3 hereof with the balance, so long as no such breach has occurred, to the account of Borrower, it being intended by Borrower and Lender that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only. Upon delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, and without the necessity of Lender entering upon and taking and maintaining full control of the Property in

person, by agent or by a court appointed receiver, Lender shall immediately be entitled to possession of all rents and revenues of the Property as specified in this paragraph 26 as the same become due and payable, including but not limited to rents then due and unpaid, and all such rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Lender only; provided, however, that the written notice by Lender to Borrower of the breach by Borrower shall contain a statement that Lender exercises its rights to such rents. Borrower agrees that commencing upon delivery of such written notice of Borrower's breach by Lender to Borrower, each tenant of the Property shall make such rents payable to and pay such rents to Lender or Lender's agents on Borrower's or Lender's written demand to each tenant therefor, delivered to each tenant personally, by mail or by delivering such demand to each rental unit, without any liability on the part of said tenant to inquire further as to the existence of a default by Borrower.

Borrower hereby covenants that Borrower has not executed any prior assignment of said rents, that Borrower has not performed, and will not perform, any act or has not executed, and will not execute, any instrument which would prevent Lender from exercising its rights under this paragraph 26, and that at the time of execution of this Instrument there has been no anticipation or prepayment of any of the rents of the Property for more than two months prior to the due dates of such rents. Borrower covenants that Borrower will not hereafter collect or accept payment of any rents of the Property more than two months prior to the due dates of such rents. Borrower further covenants that Borrower will execute and deliver to Lender such further assignments of rents and revenues of the Property as Lender may from time to time request.

Upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Lender may in person, by agent or by a court appointed receiver, regardless of the adequacy of Lender's security, enter upon and take and maintain full control of the Property in order to perform all acts necessary and appropriate for the operation and maintenance thereof including, but not limited to, the execution, cancellation or modification of leases, the collection of all rents and revenues of the Property, the making of repairs to the Property and the execution or termination of contracts providing for the management or maintenance of the Property, all on such terms as are deemed best to protect the security of this Instrument. In the event Lender elects to seek the appointment of a receiver for the Property upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Borrower hereby expressly consents to the appointment of such receiver. Lender or the receiver shall be entitled to receive a reasonable fee for so managing the Property.

All rents and revenues collected subsequent to delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument shall be applied first to the costs, if any, of taking control of and managing the Property and collecting the rents, including, but not limited to, attorneys' fees, receivers' fees, premiums on receivers' bonds, costs of repairs to the Property, premiums on insurance policies, taxes, assessments and other charges on the Property, and the costs of discharging any obligation or liability of Borrower as lessor or landlord of the Property, and then to the sums secured by this Instrument. Lender or the receiver shall have access to the books and records used in the operation and maintenance of the Property and shall be liable to account only for those rents actually received. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Property, by reason of anything done or left undone by Lender under this paragraph 26.

If the rents of the Property are not sufficient to meet the costs, if any, of taking control of and managing the Property and collecting the rents, any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by this Instrument pursuant to paragraph 8 hereof. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law.

Any entering upon and taking and maintaining of control of the Property by Lender or the receiver and any application of rents as provided herein shall not cure or waive any default hereunder or invalidate any other right or remedy of Lender under applicable law or provided herein. This assignment of rents of the Property shall terminate at such time as this Instrument ceases to secure indebtedness held by Lender.

**NON-UNIFORM COVENANTS.**

May 08 2008 4:26PM    ' AN & PARK LLP

Borrower and Lender further covenant and agree as follows:

### 27. DEFAULT; RIGHTS AND REMEDIES; TRUSTEE

A. **DEFAULT.** Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Deed of Trust:

(1) **Default on Indebtedness.** Failure of Trustor to make any payment when due on the indebtedness secured by this Instrument ("Indebtedness").

(2) **Default on Other Payments.** Failure of Trustor within the time required by this Instrument to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

(3) **Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Instrument, the Note or in any of the other agreements between Trustor and Lender relating to this Instrument and the indebtedness secured hereunder, including without limitation, any applicable Construction Loan Agreement ("Related Documents").

(4) **Breaches.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Trustor under this Instrument, the Note or the Related Documents is, or at the time made or furnished was, false in any material respect.

(5) **Insolvency.** The insolvency of Trustor, appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor, or the dissolution or termination of Trustor's existence as a going business (if Trustor is a business). Except to the extent prohibited by federal law or California law, the death of Trustor (if Trustor is an individual) also shall constitute an Event of Default under this Instrument.

(6) **Foreclosure, Forfeiture, etc.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any of the Property. However, this subsection shall not apply in the event of a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the foreclosure or forfeiture proceeding, provided that Trustor gives Lender written notice of such claim and furnishes reserves or a surety bond for the claim satisfactory to Lender.

(7) **Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

(8) **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or such Guarantor dies or becomes incompetent or any Guarantor revokes any guaranty of the Indebtedness.

B. **RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Trustee or Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

[421&/Hickman]

(1) **Foreclosure by Sale.** Upon an Event of Default under this Instrument, Beneficiary (Lender) may declare the entire Indebtedness secured by this Instrument immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all unpaid sums secured by this Instrument in such order as Beneficiary, in Beneficiary's sole discretion, directs, with accrued interest at the amount established under the Note or, if less, such amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(2) **Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclosure by judicial foreclosure in accordance with and to the full extent provided by California Law.

(3) **Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (a) pay a reasonable rental for the use of the Property, or (b) vacate the Property immediately upon the demand of the Lender.

(4) **Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Instrument or the Note or by law.

(5) **Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Instrument, Lender shall be entitled to recover reasonable attorneys' fees incurred in the trial court and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Lender which in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of expenditure until repaid. Actions shall include actions in court, any other enforcement action, arbitration, and Lender's participation in any other alternative dispute resolution. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees whether or not there is a lawsuit, including attorneys' fees and costs for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), any action between and among claimants to the title and/or possessions of the real property where Lender is named as a party regardless of whether any claimant disputes Lender's interest, appeals and any anticipated post-judgment collection services, the cost of searching records obtaining title reports (including foreclosure reports), surveyors' reports, inspection fees, appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

(6) **Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**C. POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust.

(1) **Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

(2) **Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

(3) **Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**28. RECONVEYANCE.** Upon payment of all sums secured by this Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Instrument and all notes evidencing indebtedness secured by this Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled thereto. Such person or persons shall pay Trustee's reasonable costs incurred in so reconveying the Property.

**29. SUBSTITUTE TRUSTEE.** Lender, at Lender's option, may from time to time, by an instrument in writing, appoint a successor trustee to any Trustee appointed hereunder, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. Said

instrument shall contain the name of the original Lender, Trustee and Borrower hereunder, the book and page where this Instrument is recorded, and the name and address of the successor trustee. If notice of default has been recorded, this power of substitution cannot be exercised until after the costs, fees and expenses of the then acting Trustee have been paid to such Trustee who shall endorse receipt thereof upon such instrument of substitution. The procedure herein provided for substitution of trustee shall govern to the exclusion of all other provisions for substitution, statutory or otherwise.

**30. REQUEST FOR NOTICES.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower at Borrower's address stated above.

**31. STATEMENT OF OBLIGATION.** Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California

**32. SPOUSE'S SEPARATE PROPERTY.** Any Borrower who is a married person expressly agrees that recourse may be had against his or her separate property.

Borrower and Lender further covenant and agree as follows:

**33. RIDERS TO THIS SECURITY INSTRUMENT.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

**34. MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**A. Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**B. Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**C. Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**E. Applicable Law.** This Deed of Trust has been delivered to Lender and accepted by Lender in the State of California. This Deed of Trust shall be governed by and construed in accordance with the laws of the State of California.

**F. Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**G. Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**H. Multiple Parties; Corporate Authority.** All obligations of Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor. This means that each of the persons signing below is responsible for all obligations in this Deed of Trust.

**I. Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of the Deed of Trust in all other respects shall remain valid and enforceable.

**J. Successors and Assigns.** Subject to the limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the indebtedness by way of forbearance or extension without releasing Trustor from the obligations of the Deed of Trust or liability under the indebtedness.

**K. Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**L. Waivers and Consents.** Lender shall not be deemed to have waived any rights under this Deed of Trust (or under the Related Documents) unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Deed of Trust shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or any of Trustor's obligations as to any future transactions. Whenever consent by Lender is required in this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants by contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.**

| | | |
|---|---|---|
| Borrower   **Brenda Hickman** | Date | Borrower                                           Date |

State of California
County of
On                                     before me,                                          , personally appeared

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) subscribed to the within instrument and acknowledged to me that                  executed the same in                  authorized capacity(ies), and that by                  signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____                    (Seal)

Signature

# RIDER TO DEED OF TRUST

**APPRAISAL AND PROPERTY VALUATION COSTS.** Trustor acknowledges that Beneficiary has a legitimate business need to remain apprised of the value of the real property (the "Property") described in the foregoing Deed of Trust and, in order to keep its information on the value of the property current, Beneficiary or Trustee from time to time in its sole discretion may order a valuation of the Property. Trustor shall cooperate in allowing Beneficiary or Trustee or its agents reasonable access to the Property for the purposes of performing any such valuation, whether it is in the form of an appraisal, reappraisal, updated appraisal, property evaluation, or any other method of valuing the Property. Trustor shall pay Beneficiary or Trustee, on the next Note payment due date which is at least ten (10) Business Days after Beneficiary's or Trustee's demand, the cost of a maximum of one such valuation annually.

**MAINTENANCE OF LOAN-TO-VALUE RATIO.** Borrower hereby covenants and agrees that, throughout the term of the Loan, the then outstanding principal balance of the Loan shall not exceed the percentage of the original loan to the fair market value of the Property (the "Loan-To-Value Ratio"). Trustee may, at any time and from time to time, determine the fair market value of the Property by appraisal, using an appraiser or appraisers reasonably selected by Trustee. If, as a result of any such appraisal, the Trustee determines that the Loan-To-Value Ratio exceeds the original Loan-To-Value Ratio, the Borrower shall, within thirty (30) days after receipt of written notice by Trustee accompanied by a copy of any such appraisal, pay the amount stated in such notice as being the amount necessary to reestablish the Loan to Value Ratio at the original loan percentage. Borrower's failure to make payment within the thirty (30) day period shall be deemed a material default under this Agreement.

**BORROWER'S INITIALS:**

_____          _____

Brenda Hickman

_____          _____

ORDER NO. : 0224009660-NS

# EXHIBIT A

The land referred to is situated in the County of SAN FRANCISCO, City of SAN FRANCISCO, State of California, and is described as follows:

BEGINNING at a point on the Southerly line of Hill Street, distant thereon 110 feet Easterly from the Easterly line of Noe Street; running thence Easterly along the Southerly line of Hill Street 25 feet; thence at a right angle Southerly 114 feet; thence at a right angle Westerly 25 feet; and thence at a right angle Northerly 114 feet to the Southerly line of Hill Street and the point of beginning.

BEING a portion of Mission Block No. 109.

APN: Lot 038, Block 3621